IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HENRY C. MORRIS, an Individual, | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| vs. | * | CIVIL NO. 2:06 CV 349 M |
| | * | |
| PFIZER INC., a Delaware Corporation; | * | |
| PHARMACIA CORPORATION, | * | |
| a Delaware Corporation; MONSANTO | * | |
| COMPANY, a Delaware Corporation; | * | |
| G.D. SEARLE, LLC, a Delaware | * | |
| Corporation; ROBERT VANDELUNE; | * | |
| SAMUEL KLEMENT; JAMIE PEACOCK; | * | |
| BEN MCCLURKIN, ROD MCWHORTER; | * | |
| AND TIFFANY GUCKENBERY, | * | |
| | * | |
| **Defendants.** | * | |

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO REMAND

Plaintiff hereby moves the Court to remand this case to the Circuit Court of Barbour County, Alabama. Federal subject matter jurisdiction is not present.

The citizenship of the parties is not diverse as required by 28 U.S.C. § 1332. Plaintiff is a resident of Alabama. (Compl. ¶ 2.). Defendant Robert Vandelune is a resident of Alabama (Compl. ¶ 7.). Defendant Samuel Klement is a resident of Alabama (Compl. ¶ 8.). Jamie Peacock is a resident of Alabama (Compl. ¶ 9.). Ben McClurkin is a resident of Alabama (Compl. ¶ 10.). Rod McWhorter is a resident of Alabama (Compl. ¶ 11.). Tiffany Guckenbery is a resident of Alabama (Compl. ¶ 12.). (hereinafter "Alabama Sales Representative Defendants" or "Resident Defendants"). Defendant G.D. Searle, LLC is an Illinois corporation with its principal place of business in Skokie, Illinois. (Compl. ¶ 3.) Defendant Pharmacia Corporation is a Delaware

1

Corporation with its principal place of business in New Jersey. (Compl. ¶ 4.) Defendant Monsanto Company is a Delaware Corporation with its principle place of business in Missouri. (Compl. ¶ 5.) Defendant Pfizer, Inc. is a Delaware Corporation with its principle place of business in New York. (Compl. ¶ 6.) Plaintiff asserts valid claims under Alabama law against each Defendant. Each party to this action is properly joined.

Because the Court does not have subject matter jurisdiction, Plaintiff respectfully urges the Court to grant his Motion to Remand this action to the Circuit Court of Barbour County.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

This product liability action arises from the injuries sustained by Henry C. Morris, the Plaintiff, as a result of taking the prescription drug known as Celebrex (Celecoxib). (Compl. ¶¶ 1, 2.) Celebrex is a Cox-2 selective non-steroidal anti-inflammatory agent (NSAID) commonly prescribed to treat pain by reducing inflammation. (Compl. ¶ 17.) Plaintiff was prescribed and used Celebrex. (Compl. ¶ 1.)

G.D. Searle, LLC, Pharmacia Corporation, Pfizer, Inc. and Monsanto Company (Removing Defendants) designed, developed, manufactured, packaged, labeled, promoted, marketed, advertised, sold, supplied and otherwise distributed Celebrex. (Compl. ¶¶ 4-7.)

Furthermore, the Alabama Sales Representative Defendant(s) called on Plaintiff's physician on numerous occasions to present false and misleading information regarding the safety and efficacy of Celebrex and suppressed material information regarding the safety and efficacy of Celebrex and its harmful side effects, and placed Celebrex in the stream of commerce. (Compl. ¶¶ 16.) At all times relevant to Plaintiff's Complaint, all

Defendants actually knew of the defective and unreasonably dangerous nature of Celebrex, yet the Defendants continued to develop, manufacture, package, label, promote, market, advertise, sell, and distribute Celebrex in such a way as to maximize sales and profits at the expense of public health and safety. Defendants did so with complete disregard of the foreseeable harm that Celebrex would cause in the lives of those who took it. (Compl. ¶¶ 19-20.)

Plaintiff Henry C. Morris was given Celebrex by his physician and after ingesting Celebrex, Plaintiff suffered a stroke on November 14, 2004. On March 10, 2006, Plaintiff filed suit in the Circuit Court of Barbour County, Alabama. Plaintiff asserted several causes of action against Defendants, including strict products liability for design and failure to warn, negligence, breach of express and implied warranty, fraud, and negligent misrepresentation. The Removing Defendants filed a Notice of Removal on April 17, 2006. Plaintiff urges the Court to remand this action to state court in accordance with 28 U.S.C. § 1447(c).

## ARGUMENT

It is well-settled that federal courts are courts of limited jurisdiction and are "empowered to hear only cases within the judicial power of the United States as defined by Article III of the Constitution," or authorized by Congress. *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).

28 U.S.C. § 1447(c) provides, in relevant part, that after a case has been removed to federal district court, but "at any time before final judgment," the plaintiff may move for remand; and that "the case *shall* be remanded [if] it appears that the district court

lacks subject matter jurisdiction." (emphasis added). The statutes governing removal are jurisdictional; for that reason, and because removal jurisdiction raises significant federalism concerns, removal statutes must be strictly construed in favor of state court jurisdiction and against removal. *E.g., Shamrock Oil & Gas v. Sheets*, 313 U.S. 100, 108-09, 61 S.Ct. 868 (1941); *see Clay v. Brown & Williamson Tobacco Corp.*, 77 F.Supp.2d 1220, 1221 (M.D.Ala. 1999) (De Ment, J.). On a motion to remand, Defendants, as the removing parties, bear the burden of establishing federal subject matter jurisdiction. *E.g., Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). Because federal courts are courts of limited jurisdiction, all doubts about federal subject matter jurisdiction on removal should be resolved in favor of remand to state court. *E.g., University of S. Alabama*, 168 F.3d at 411; *Pacheco de Perez*, 139 F.3d at 1373; *Diaz*, 85 F.3d at 1505; *Seroyer v. Pfizer, Inc.*, 991 F.Supp. 1308, 1312 (M.D.Ala. 1997). All questions of fact and controlling law should be resolved in favor of Plaintiff. *University of S. Ala.*, 168 F.3d at 411; *see also Shamrock Oil*, 313 U.S. at 108-09.

"An action is not properly removable if it consists of a non-separable controversy involving both resident and nonresident Defendants." *Coker v. Amoco Oil Co., Inc.*, 709 F.2d 1433, 1439 (11th Cir. 1983). Thus, where, as here, the removing defendant asserts federal subject matter jurisdiction based on an amount in controversy over $75,000 and the diversity of citizenship of the parties, 28 U.S.C. § 1332, the defendant must show there is actually complete diversity. *Triggs*, 154 F.3d at 1287 (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996)).

## I.      Diversity Jurisdiction Is Not Present

In the present case, Plaintiff is a resident of Alabama, and the Alabama Sales Representative Defendants is a resident of Alabama. The citizenship of the parties is not diverse as required by 28 U.S.C. § 1332. In his Complaint, Plaintiff states valid state law claims against all Defendants.

Defendants do not dispute that complete diversity is missing on the face of Plaintiff's Complaint, but contend that the Alabama Sales Representative Defendant's citizenship can be disregarded on the ground that they were fraudulently joined, improperly joined and/or misjoined. (Notice of Removal, ¶ 11.) The Removing Defendants have utterly failed to carry their burden on this issue, and thus cannot show the existence of federal subject matter jurisdiction.

### A.      Standard for Fraudulent Joinder

The party seeking to remove a case claiming that the federal court has subject matter jurisdiction bears a heavy burden. This burden is especially high when the defendant alleges fraudulent joinder as the basis for subject matter jurisdiction. *Frontier Air Lines, Inc. v. United Air Lines, Inc.*, 758 F.Supp. 1399, 1404 (D. Colo. 1989) (quoting *Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146, 152 (1914)). The Eleventh Circuit has recognized three situations where a joinder could be deemed fraudulent:

> 1.    There is no possibility that the Plaintiff can prove a cause of action against any resident defendant;
>
> 2.    There is outright fraud in the Plaintiff's pleading of jurisdictional facts; and
>
> 3.    Where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant.

*Triggs*, 154 F.3d at 1287 (citations omitted).

Defendants do not argue that Plaintiff fraudulently pled jurisdictional facts to bring this case in state court. Neither do Defendants argue that the Alabama Sales Representative Defendant has no connection to this action. Rather, Defendants argue that there is no reasonable possibility that Plaintiff can establish any cause of action against the Alabama Sales Representative Defendants. (Notice of Removal, ¶ 11, 14.) Defendants mistake the appropriate standard in the Eleventh Circuit. To defeat all allegations of fraudulent joinder, Plaintiff need only prove a possibility of recovery.

> If there is ***even a possibility*** that a state court would find that the Complaint states a cause of action against any one of the resident Defendants, the federal court must find that the joinder was proper and remand the case to state court. *Coker v. Amoco Oil Co.*, 709 F.2d at 1440-1441 (emphasis added). The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a ***possibility*** of stating a valid cause of action in order for the joinder to be legitimate.

*Triggs*, 154 F.3d at 1287.

As the removing parties, the Defendants bear the heavy burden of showing that the Alabama Sales Representative Defendant was fraudulently joined. *Pacheco de Perez*, 139 F.3d at 1380; (11th Cir. 1997). This Court's inquiry is limited to determining whether Plaintiff has a *possibility* of stating a valid cause of action against the Alabama Sales Representative Defendant under state law. *Triggs*, 154 F.3d at 1287; *Crowe*, 113 F.3d at 1538. In making this determination, this Court must evaluate all factual allegations in the Complaint in the light most favorable to Plaintiff, resolving all contested issues of substantive fact in his favor and must resolve any uncertainties as to the current state of

the controlling substantive law in Plaintiff's favor as well. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1536, 1561 (11th Cir. 1989).

Consistent with the above-mentioned authority, various federal courts have entered orders of remand under circumstances nearly identical to the case at hand, rejecting fraudulent joinder arguments and holding that Plaintiff had stated valid claims against the resident Defendant. *Barlow v. Merck & Co., Inc., et al*, CV-02-T-1227-N (M.D. Ala.) (Thompson, J.); *Lauderdale v. Merck & Co., Inc., et al.*, Civil Action No.: 1:01cv418-EMB (N.D. Miss.) (Gardner, J).

In fact, the Court in *Faulk v. SmithKline Beechman Corp., et al.*, rejected Defendant's contentions of fraudulent joinder in a similar case by concluding:

> The Court has carefully reviewed the claims against the resident Defendants [Alabama Sales Representatives] and the arguments of the parties, and it must conclude that in this case there **is a possibility** that the Plaintiff can establish at least one of his causes of action against at least one of the resident Defendants. Accordingly, this Court must find that the joinder is proper and remand the case to the Circuit Court of Barbour County, Alabama.
>
> (*Faulk*, No. 2:05-cv-85-F (M.D. Ala. Sept. 7, 2005) (Fuller, J.) (attached hereto as Exhibit "1")

Similarly, Alabama District Courts have recently remanded identical COX-2 pharmaceutical drug cases where the Plaintiff alleged identical claims resulting in either a stroke or heart attack as a result of ingesting either Celebrex or Vioxx. *Ware v. G.D. Searle, LLC, et al.* 2:05-cv-659-T (M.D. Ala. Aug. 26, 2005) (Thompson, J.) (See Exhibit "2") *Turner v. Merck & Company, Inc.*, 2:05-cv-702-MHT (M.D. Ala., Sept. 21, 2005), (See Exhibit "3"); *Slatton v. Merck & Company, Inc.*, 05-VEH-1056-S (N.D. Ala., July 21, 2005), (Hopkins, J) (See Exhibit "4"); *Crook v. Merck & Company, Inc.*, 05-VH-

1054-S (N.D. Ala., July 21, 2005) (Hopkins, J.) (See Exhibit "5");*Struthers v. Merck & Company, Inc.*, 2:06-cv-127-MHT (M.D. Ala. Mar. 13, 2006)(see Exhibit "6"), *Leverett v. Merck & Company, Inc.*, 3:06-cv-128-MHT (M.D. Ala. March 15, 2006) (see Exhibit "7"). These Courts ruled that valid negligence, fraud, negligent misrepresentation, breach of express and implied warranties, strict products liability design and failure to warn claims were made against the Alabama Sales Representative Defendants and remanded the case back to the Circuit Court of Barbour County. (Id.)

Additionally, the Court has previously remanded numerous cases asserting similar claims, such as, negligence, breach of warranty, fraud, and negligent misrepresentation against sales representatives and territory managers. *See Travis Walker, et al., v. Warner-Lambert Company, et al.*, Civil Action No. 02-T-230-N; *Bessie B. Caldwell v. Warner-Lambert Company, et al.*, Civil Action No. 01-T-486-N; *Wayne Roughton v. Warner-Lambert Company, et al.*, Civil Action No. 00-T-1239-N; *Letisha Bennett, et al., v. Warner-Lambert Company, et al.*, Civil Action No. 02-T-343-N; *Stella Johnson, et al. v. Warner-Lambert Company, et al.*, Civil Action No. 02-T-830-N; *Debbie Osbourne, et al. v. Warner-Lambert Company, et al.*, Civil Action No. 02-T-828-N; *Sara Rush, et al. v. Warner-Lambert Company, et al.*, Civil Action No. 02-T-829-N; *Helen Boswell v. Wyeth, et al.* Civil Action No. 03-T-1256-N; *Valerie Ballard, et al. v. Wyeth, et al.*, Civil Action No. 03-T-1255-N; *Rita Brunson v. Wyeth, et al.*, Civil Action No. 03-T-1167-S; *Sara Blair, et al. v. Wyeth, et al.*, Civil Action No. 03-T-251-S; and *Sharon C. Crittenden, et al. v. Wyeth, et al.*, Civil Action No. 03-T-920-N; Other federal courts in Alabama have also remanded cases involving claims against sales representatives and territory managers, *see Lavaughn Hales v. Merck & Co., Inc., et al.* U.S.D.C., Northern

8

District of Alabama, Civil Action No. 03-AR -1028-M; *Catherine Armstrong, et al. v. Wyeth, et al.* U.S.D.C., Northern District of Alabama, Civil Action No. 04-S-247-NW; *Martha M. Davis v. Wyeth, et al.,* U.S.D.C., Northern District of Alabama, Civil Action No. 03-J-3167-J; *Ann McGowan, et al., v. Wyeth, et al.,* U.S.D.C., Northern District of Alabama, Civil Action No. 04-TMP-298-S; *M. Rebecca Cross, et al. v. Wyeth, et al.,* U.S.D.C., Northern District of Alabama, Civil Action No. 03-0882-BH-M; *Marcia Carlisle, et al. v. Wyeth, et al.,* U.S.D.C., Northern District of Alabama, Civil Action No. 04-HGD-0394-S; *Wanda Campbell, et al., v. Wyeth, et al.,* U.S.D.C., Northern District of Alabama, Civil Action No. 03-HGD-3364-M; *Yolanda Carter, et al., v. Wyeth, et al.,* U.S.D.C., Northern District of Alabama, Civil Action No. 04-AR-0446-S; *Jevenari Marshall et al., v. Wyeth, et al.,* 04-TMP-179-S; *Sandra Storey v. Wyeth, et al.,* U.S.D.C., Northern District of Alabama, Civil Action No. 04-BE-27-E; *Sandra Cash v. Wyeth, et al.,* U.S.D.C., Northern District of Alabama, Civil Action No. 03-RRA-3378-E and *Michael Hall, et al. v. Wyeth, et al.,* U.S.D.C., Northern District of Alabama, Civil Action No. 04-J-0434-NE.

This Court, in determining whether Plaintiff's claims are valid, must evaluate all factual allegations in the light most favorable to Plaintiff, resolving all contested issues of substantive fact in their favor, and resolving uncertainties as to the current state of controlling substantive law in Plaintiff's favor as well. *E.g., B., Inc.,* 663 F.2d at 549; *Accord, e.g., Pacheco de Perez,* 139 F.3d at 1380; *Crowe,* 113 F.3d at 1538; *Coker,* 709 F.2d at 1440.

**B.    Plaintiff Has Stated a Valid Product Liability (AEMLD) Claim Against the Alabama Sales Representative Defendants**

To establish liability under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), a plaintiff must demonstrate that:

(1)    He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

(a)    the seller is engaged in the business of selling such a product, and

(b)    it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2)    Showing these elements, the plaintiff has proved a prima facie case although

(a)    the seller has exercised all possible care in the preparation and sale of his product, and

(b)    the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.

*E.g., Casrell v. Altec Industries, Inc.,* 335 So.2d 128, 132-33 (Ala. 1976); *Atkins v. American Motors Corp.,* 335 So.2d 134, 141 (Ala. 1976); *accord, e.g., Clay,* 77 F.Supp.2d at 1223; *Judson v. Nissan Motor Co.,* 52 F.Supp.2d 1352, 1360 (M.D.Ala. 1999) (De Ment, J.). Stated differently, to establish a *prima facie* case for an AEMLD claim, a plaintiff need only show that (1) Defendants are engaged in the business of manufacturing, supplying, or selling the product in question; (2) the product was in a defective condition unreasonably dangerous when applied to its intended use in the usual manner; and (3) the plaintiff was injured as a proximate result of Defendants' placing the product on the market.

Plaintiff has alleged that Defendants, including the Alabama Sales Representative Defendants, designed, developed, manufactured, packaged, labeled, marketed, advertised, misrepresented, sold, and otherwise distributed Celebrex. (Compl. ¶¶ 18-20.) Celebrex is defective and unreasonably dangerous as designed,[1] due to inadequate testing, and due to inadequate warnings or instructions. The Alabama Sales Representative Defendants inadequately warned or instructed Plaintiff and the medical community of the dangers of Celebrex and failed to provide timely and adequate post-marketing. (Id.) As a direct and proximate consequence, Plaintiff was prescribed and used Celebrex, and suffered a stroke. (Compl. ¶ 21-22.) Plaintiff has stated a valid claim against all Defendants, non-resident and resident alike.

Defendants incorrectly assert that the Alabama Sales Representative Defendants cannot be "sellers" within the meaning of the AEMLD and cannot be held individually liable under the AEMLD. Defendants have failed to satisfy their burden of showing there is no possibility that Plaintiff states a cause of action under AEMLD claim against the Alabama Sales Representative Defendants.

Under Alabama law, the Alabama Sales Representative Defendant may properly be held liable for their individual participation in the tortuous acts and omissions that harmed Plaintiff. *Ex parte Charles Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So.2d 774, 775 (Ala. 1986). Generally, a sales representative's duty is to promote their company's drug by providing product information and distributing a supply of that drug to multiple physicians. (See Exhibit "8".) After meeting with each physician, the sales representative then transcribes "call notes", which briefly describe what the sales representative told the

---

[1] The question of whether or not a product is unreasonably dangerous is a question of fact for the jury to decide. *Koehring Cranes & Excavators, Inc v Livingston,* 597 So 2d 1354, 1355 (1992); *Casrell,* 335 So 2d at 133.

physician about Celebrex (and Bextra, another COX-2 drug the Removing Defendants' manufactured), what issues/concerns the physician had with Celebrex and Bextra, and/or what the sales representative has done to further promote Celebrex and Bextra. As evidenced by the "call notes" from the Removing Defendants' sales representatives, which contain notes from some of the Resident Defendants, the Plaintiff has alleged and anticipates he will be able to show that the present Alabama Sales Representative Defendants, fraudulently suppressed material information regarding the safety and efficacy of Celebrex and misrepresented the safety and efficacy of Celebrex. (See Exhibit "9")(call note between a Pfizer sales representative and a physician where the sales representative is emphasizing a favorable Celebrex article in an attempt to misrepresent that thrombus/clot causing cardio vascular events are not a COX-2 class effect, in order to distinguish Celebrex from its COX-2 competitor Vioxx.); (Exhibit "10") (call note between a Pfizer sales representative and a physician where the sales representative is discussing a favorable COX-2 article in order to misrepresent the cardiovascular safety of Bextra and/or Celebrex); (Exhibit "11") (call note between a Pfizer sales representative and a physician where the sales representative presents only favorable COX-2 studies each visit to the physician and representing that the cardiovascular issues with COX-2's are not a class effect); (Exhibit "12")(call note where a Pfizer sales representative is falsely stating that there is only one negative study concerning Celebrex in an attempt to suppress the known dangers of Bextra and Celebrex); (Exhibit "13")(call note where a Pfizer representative is misrepresenting Celebrex and Bextra as having unsurpassed efficacy and safety in arthritis patients); (See Exhibit "14") (call note where a sales representative is discussing a "hotline" for physician to call for Celebrex cardiovascular

safety information, which acknowledges that the sales representatives knew about the cardiovascular risks associated with Celebrex.)    These call notes illustrate how the Defendants widely and successfully marketed Celebrex throughout the United States by, among other things, conducting promotional campaigns that misrepresented the efficacy of Celebrex in order to induce a widespread use and consumption.    The Defendants continuously made representations by statements and sales literature provided to Plaintiff's physician by the Resident Defendants.

Plaintiff also anticipates that he will be able to show that the Alabama Sales Representative Defendants participated in an aggressive marketing campaign by comparing the efficacy of Celebrex to other pain relievers, distinguished Celebrex from other COX-2 class of drugs already on the market, and worked to persuade physicians to prescribe Celebrex to patients who were the most at risk for heart attacks and/or strokes. (See Exhibit "11") (call note from a Pfizer representative misrepresenting to a physician that the cardiovascular issues within the COX-2 class of drugs is not a class effect); (See Exhibit "15") (call note from a Pfizer representative indicating that physician thought Defendant speaker did a great job promoting safety); (See Exhibit "16") (call note indicating the distribution of a cardiovascular materials for speaking purposes and using favorable Bextra/Celebrex articles to clarify unfavorable media information); (See Exhibit "17") (call note where Pfizer's sales representative uses three favorable COX-2 articles to explain away negative cardiovascular results from the CABG trial to persuade physician that Celebrex and Bextra were a safe drugs); (See Exhibit "18")(call note where Pfizer's sales representative discusses at risk patients for cardiovascular events and comparing Bextra to other pain relievers). Despite years of studies on selective COX-2

inhibitors, as well as the disturbing new studies specifically analyzing the risk of Celebrex, the Defendants continuously failed to take any action to protect the health and welfare of patients, but instead, continued to promote Celebrex as a safe drug in order to increase profits.

Plaintiff also anticipates that discovery will show that the present Alabama Sales Representative Defendants' knowledge concerning Celebrex was superior to the knowledge held by the physicians to whom they made sales calls. Additionally, Plaintiff also anticipates that discovery will show that the Plaintiff's physician relied on information provided by the Resident Defendants, which was incorrect, misleading, or incomplete information (such as inadequate warnings of risks of harm and adverse effects from the use of Celebrex – and that Plaintiff took Celebrex based on this misleading and incomplete information.) Plaintiff relied on such information through the representations of the Resident Defendants. If these allegations are proven to be true, which Plaintiff expects they will be considering the communication between Plaintiff's physician and the Resident Defendants and the evidence from "call notes" of various Alabama Sales Representative Defendants' as demonstrated in the exhibits above, a finding of individual liability against the Alabama Sales Representative Defendants under the AEMLD would be consistent with the "general rule" under Alabama law that "officers and employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity." *Ex parte Charles Bell Pontiac*, 496 So.2d at 775 (citing *Candy H. v. Redemption Ranch, Inc.*, 563 F.Supp. 505, 513 (M.D.Ala. 1983); *see Chandler v. Hunter*, 340 So.2d 818, 822 (Ala.Civ.App. 1976).

Various federal courts have <u>rejected</u> arguments that defendants who distribute unreasonably dangerous products, as well as individual employees of manufacturer defendants, cannot be held liable under AEMLD. *E.g.*, *Clay*, 77 F.Supp.2d at 1224 (De Ment, J.); S*eaborn v. R.J. Reynolds Tobacco Co.*, 1996 WL 943621 (M.D.Ala. Dec. 30, 1996) (Thompson, J.); *Jenkins v. R.J. Reynolds Tobacco Co.*, No. 96-T-1489-N (M.D.Ala. Dec. 30, 1996) (Thompson, J.); *Acton v. R.J. Reynolds Tobacco Co.*, No. 96-C-2737-W (N.D.Ala. Oct. 23, 1996) (Clemon, J.). The decisions in *Clay, Seaborn, Jenkins* and *Acton* are instructive regarding the joinder of in-state distributor and corporate employee Defendants. In each of these cases, the defendant tobacco companies claimed plaintiff's joinder of the local distributors and the manufacturer's sales representative as Defendants was fraudulent. Relying on the general principle noted above that officers or employees of a corporation are liable for torts in which they have personally participated, *e.g., Ex parte Charles Bell Pontiac*, 496 So.2d at 775, each court noted that, to the extent the manufacturer defendant allegedly violated the AEMLD, "it acted through its employees; the company does not employ ghosts." *E.g., Clay*, 77 F.Supp.2d at 1224; *Seaborn*, 1996 WL 943621, *3. Each court accordingly deemed it appropriate to allow plaintiff to pursue the distributors and employee sales representatives individually -- even in the absence of any personal contact with the plaintiff -- and to substitute new individual defendants in the event plaintiff had named the wrong individuals at the outset. *Id.* Finding it "conceivable" that plaintiff's AEMLD claims against the in-state employee "may be viable," *Clay*, 77 F.Supp.2d at 1224, or that such claims satisfied the Rule 11 standard, *e.g., Seaborn*, 1996 WL 943621, *4, each court rejected defendants' claim of fraudulent joinder and remanded plaintiff's complaint

to state court. Similarly, in *Acton*, Judge Clemon entered an order of remand under circumstances nearly identical to those in *Seaborn*, finding plaintiff's complaint against non-resident cigarette manufacturers and resident retailers of the manufacturers' cigarettes was improvidently removed.

Other United States District Courts also have consistently rejected arguments that in-state defendant sales representatives are fraudulently joined in the context of an AEMLD action involving a defective drug. Judge Inge P. Johnson remanded the case of *Barry Pace, et al v. Parke-Davis,* No. 3:00-3046 (N.D. Ala. Nov. 21, 2000). Judge Robert Propst remanded the case of *Donald McCaffery v. Warner-Lambert Co.,* et al., No. 4:00-2848 (N.D. Ala. Dec. 8, 2000).

Defendants who distribute dangerous products, as well as their employees, may be held liable under AEMLD. Plaintiff has stated valid claims against the present Alabama Sales Representative Defendant under AEMLD.

### C. <u>Legg v. Wyeth</u> is Not Controlling or Dispositive of the Issues in this Matter.

The Pfizer Defendants contend that the recent decision of the United States Court of Appeals for the Eleventh Circuit, <u>Legg v. Wyeth</u>, 428 F.3d 1317 (11th Cir. 2005), justifies removal of this matter. However, it is clear that <u>Legg v. Wyeth</u> does not alter the remand proceedings, as indicated below, and removing Defendants' argument to the contrary must fail.

### 1. <u>Legg v. Wyeth</u> is not controlling on the issue of subject matter jurisdiction and any language in <u>Legg</u> relative to the remand proceedings is dictum.

In <u>Legg</u>, the issue before the appellate court was whether the district court abused its discretion by awarding attorney's fees and costs to the plaintiffs as a result of the

16

removal petition filed by the defendant, a drug company manufacturer. Contrary to the position urged by the Pfizer Defendants in the present cause, the issue was <u>not</u> whether the district court abused its discretion by remanding the case, after finding that the defendant failed to meet its burden of establishing fraudulent joinder. Indeed, the Eleventh Circuit noted that "28 U.S.C. § 1447 (d) bars our review of a remand such as this one based upon the lack of subject matter jurisdiction," but "the statute does not 'exclude the district court's assessment of costs from appellate review.'" <u>Legg</u>, 428 F.3d at 1319-20 (<u>quoting</u> <u>Fowler v. Safeco Ins. Co.</u>, 915 F.2d 616, 617 (11th Cir. 1990)). The Court in <u>Legg</u> did not state that the trial court's remand order was in error, nor did the Court rule that the standard of review in such cases should be changed.

Since the language of <u>Legg</u> relied upon by the Pfizer Defendants is not essential to the issue in that case, it is merely dictum and should not be given *stare decisis* effect by this Court. Nevertheless, assuming *arguendo* that this Court should defer to <u>Legg</u> on this issue, the <u>Legg</u> court's holding is in contravention of well-settled Alabama law, which provides that misrepresentations of material fact, even if made by mistake or innocently, constitute legal fraud. <u>See</u> Ala. Code § 6-5-101 (1975). <u>See also</u> <u>Thomas v. Halstead</u>, 605 So.2d 1181 (Ala. 1993). As discussed above, Alabama law is well-established that individual employees can be held liable for torts in which they participate.

The Court in <u>Legg</u> cites <u>Fisher v. Comer Plantation</u>, 772 So. 2d 455, 463 (Ala. 2000), for the proposition that "mere conduits" cannot be held liable for participating in a tort unless bad faith can be shown. <u>Fisher</u>, however, dealt with independent contractors.

The Defendant sales representative here, were not "mere conduits" of information, but was instead an integral part of the false and fraudulent marketing and selling of Celebrex.

Since the Eleventh Circuit did not have within its jurisdiction the ability to address the merits of the remand order in Legg, any discussion of the merits of the district court's order remanding the case back to state court is dictum and has no legal, precedential value. As a result, this Court should disregard that aspect of the Legg decision.

> **2. Even if the Eleventh Circuit's substantive discussion of removal and remand proceedings in Legg v. Wyeth should be considered, the "evidence" before the Court in this cause is more than sufficient to establish that there is a "possibility" of recovery against the Alabama Sales Representative Defendant.**

The Eleventh Circuit, in determining that Wyeth's removal efforts were "reasonable," as a basis to determine whether the attorney's fees were wrongfully awarded, appeared to be critical of the lower court's remand order, because there did not appear to be any refutation of the affidavits of the sales representatives, other than the allegations in the complaint. Such is not the case here.

In the Affidavits of the Resident Defendants, submitted by the Removing Defendants, the Alabama Sales Representative Defendants contend in conclusory fashion that they were not active participants in any wrongdoing to the extent that they would be subject to liability under Alabama law for the claims asserted by the Plaintiff in his complaint. However, it is not their contentions in their Affidavits that bear the most attention; rather, it is the absence of a critical contention that the Resident Defendants make, which should be the focus of this Court's attention. Nowhere in the Declarations do the Resident Defendants assert that they lacked specific knowledge about the

dangerous propensities of Celebrex, particularly with respect to the increased risk of cardiovascular and cerebrovascular events, prior to the time the drug was given to Plaintiff, Henry C. Morris. (See Exhibit "19", Resident Defendants' Affidavits attached collectively.) The reason why they do not make such a claim is because, if they had done so, they would have clearly perjured themselves, based on the evidence that is expected to be found in this case, some of which was averred with in the Complaint and submitted in the Plaintiff's motion to remand brief.

Specifically, the Removing Defendants went through great lengths to hide the increased risk of heart attacks and strokes associated with Celebrex. (Compl ¶¶ 57-73.) These efforts were accomplished primarily by the Removing Defendants instructing its sales representatives on how to respond to physicians inquiries concerning the safety of Celebrex. An illustration of how the Removing Defendants instructed their sales representatives to suppress material facts when addressing safety concerns are demonstrated in the "call notes" of the Removing Defendants sales representatives in Alabama, which include some of the Resident Defendants.

For example, according to Adenoma Prevention with Celecoxib ("APC") trial, the number of deaths from cardiovascular causes was significantly higher in the Celebrex group when compared to placebo (Compl. ¶¶39-41). Specifically, this efficacy and safety study showed a 2-3 fold increased risk of serious adverse cardiovascular events for Celebrex compared to Placebo. Id. Additionally, even a Pfizer sponsored meta-analysis for coronary artery bypass graph (CABG) surgery study included data showing an increased cardiovascular risk in patients treated with Bextra after the surgery. The CABG study observed events including heart attack, stroke, and blood clots in the leg and

lungs. The results were particularly relevant and striking as each of the study participants who as a post-bypass surgery were taking anti-clotting agents at the time their exposure to Bextra was being tracked. Along with the two above mentioned studies, the Alabama Sales Representative Defendants had knowledge of several other COX-2 studies that showed an increased risk of heart attacks and strokes. Nonetheless, call notes from Pfizer's sales representatives in Alabama consistently downplayed and/or misrepresented the results of these safety studies when promoting Celebrex to physicians. (See Exhibit "20") (call note where a Pfizer sales representative is attempting to downplay the media coverage of the "APC" trial, which showed an increased risk of cardiovascular events for patients using Celebrex). (See e.g. Exhibit "21") (call note from sales representative downplaying the results from the CABG trials); (See Exhibit "22") (call note by sales representative acknowledging that the CABG trial was negative for Bextra).

Additionally, based on the studies performed on Celebrex, Vioxx, Bextra and other COX-2 inhibitors, and basic research on this type of selective inhibitor which has been widely conducted, Defendants knew when Celebrex was being developed and tested that selective COX-2 inhibitors posed serious cardiovascular risks for anyone who took them, and presented a specific additional threat to anyone with existing heart disease or cardiovascular risks. (Compl. ¶¶ 28.) The Defendants were aware of studies that indicated that selective COX-2 inhibitors, including Celebrex, decreased blood levels of prostacyclin. (Compl. ¶¶ 28.) When those levels fall, the arteries are more vulnerable to clotting, high blood pressure, heart attack, and stroke.

However, the Removing Defendants' sales representatives failed to communicate to physicians studies that showed an increased risk in heart attack and strokes for the

COX-2 inhibitor drug users.  Additionally, the Removing Sales representatives misrepresented to physicians that the cardiovascular risks of COX-2 inhibitors were not a class effect, in efforts to distinguish Pfizer's COX-2 inhibitors Celebrex and Bextra, from Merck's COX-2 inhibitor Vioxx. (See Exhibit "23") (call note where sales representative is downplaying cardiovascular dangers of Vioxx by presenting physicians with favorable COX-2 inhibitor literature); (See Exhibit "24") (call note where sales representative uses favorable COX-2 study to off set physicians' belief that cardiovascular risks is a class effect); (See Exhibit "25")(call note acknowledging cardiovascular thrombotic events). The scientific data available during and after Celebrex's approval process made it clear to Defendants' that their formation of Celebrex would cause a higher risk of blood clots, stroke and/or heart attacks among Celebrex consumers, alerting them to the need of properly informing physicians and/or consumers of the cardiovascular risks associated with Celebrex.  Nonetheless, as shown in the above "call notes", the Resident Defendants consistently failed to inform physicians of this risk.

To provide examples of all "call notes" for the Resident Defendants in Alabama for the purpose of demonstrating how the Resident Defendants suppressed material information would take hundreds of pages of briefing.  Suffice it to say, as it relates to the issue before the Court, the focus is whether the Resident Defendant knew or had reason to know of the cardiovascular risks associated with Celebrex and whether there is a reasonable "possibility" that the Plaintiff can prove his claims that the Defendants are liable under Alabama law.  As set forth in this Remand Brief, the Resident Defendants are liable for their active role in promoting, selling, and distributing a dangerous product,

Celebrex.  As a result, they were not fraudulently joined, and this cause is due to be remanded back to State Court.

### 3. Evidence Found Against Sales Representative Defendants in Similar Litigation is Expected to be Found in this Present Celebrex Lawsuit, Which Will Establish That There is a "Possibility" of Recovery Against the Resident Defendants.

Minimal discovery has taken place nationwide in Celebrex cases.  Therefore, very little discovery concerning marketing documents and/or evidence has been available to any Plaintiff nationwide besides the various Removing Defendants' Sales Representatives' call notes addressed above.  However, Plaintiff expects to find similar sales materials found in other pharmaceutical drug litigation in order to prove liability against the present Alabama Sales Representative Defendants.

The sales materials found in the Vioxx litigation are comparable to what Plaintiff expects to find in the current Celebrex litigation. The infamous "dodge ball training" where sales representatives were told to dodge or avoid the questions or suspecting physicians was found during the Vioxx discovery process.  Questions from physicians became known as "obstacles" to sales of the drug, Vioxx – sales which were used to determine sales representatives' commissions.  Some of the "obstacles" specifically identified the cardiovascular risk issues to the sales representatives.  In response to these perceived "obstacles," or questions from physicians, the sales representatives were trained to respond in a fashion to downplay or suppress the seriousness of the cardiovascular risks associated with Defendant Merck's blockbuster drug, Vioxx.  The training materials then directed the sales representatives to transition back to other benefits of the drug, no doubt as a way to avoid further questions.

Furthermore, Defendant Merck would routinely submit bulletins to its sales force, telling them what they could and could not discuss with physicians, which was also found in the Vioxx discovery process.  In one such "bulletin for VIOXX" the sales representatives were directed: **"DO NOT INITIATED DISCUSSIONS ON THE FDA ARTHRITIS ADVISORY COMMITTEE (ADVISORY COMMITTEE) REVIEW OR THE RESULTS OF THE VIOXX GI OUTCOMES RESEARCH (VIGOR) STUDY)** [a Vioxx study which showed  an increased risk of heart attacks and strokes]. **YOU MAY RESPOND TO CONSUMER INQUIRIES ONLY AS OUTLINED BELOW."**  The bulletin goes on to direct the sales representatives to "stay focus on efficacy ," and encourages the sales representatives to direct the physician's attentions away from the dangers of the drug and get them focused back on the drugs efficacy.

These two examples of marketing documents for Vioxx illustrated above, establishes that there is more than a mere possibility that the Vioxx sales representatives were active participants in providing misinformation to physicians, in suppressing the known dangers of the drug, and in encouraging physicians to sell a dangerous and deadly product.  These documents also debunk the concern of Legg court.  Likewise, Plaintiff expects that he will be able to obtain similar documents in the present case once he has had an opportunity to conduct discovery.  Taking into consideration the Removing Defendants sales representatives' "call notes" attached to this Remand Brief, along with the additional sales/marketing materials that Plaintiff expects to find once he has had an opportunity to conduct discovery, Plaintiff has clearly established a reasonable "possibility" that he can prove his claims against the Resident Defendants.

**D.    Plaintiff Has Stated Valid Claims of Negligence, Failure to Warn, Fraud, and Negligent Misrepresentation Against the Alabama Sales Representative Defendants**

Plaintiff has asserted viable negligence, failure to warn, fraud, and negligent misrepresentation claims against the Alabama Sales Representative Defendant.[2] According to the Removing Defendants, the Alabama Sales Representative Defendant owed no duty to Plaintiff, made no representations to Plaintiff, and generally had no dealings with Plaintiff. (See e.g. Notice of Removal ¶ 22). However, the Defendants are clearly misguided since the Resident Defendants provided false and/or misleading information concerning the safety of Celebrex to Plaintiff's physician. By making representations concerning Celebrex as the Resident Defendants marketed it to physicians, the Alabama Sales Representative Defendants *voluntarily assumed* such a duty to warn of the drug's dangerous side effects. *See, e.g., J.B. Bowden v. E. Ray Watson Co., Inc.*, 587 So.2d 944, 946 (Ala. 1991); *King v. National Spa and Pool Institute, Inc.*, 570 So.2d 612, 614 (Ala. 1990). The Resident Defendants even admit that it is their job to make physicians aware of the risk and benefits of the products that they detail, so that the physician will know what patients can use the drug. (See, e.g., Resident Defendants' Affidavits) (Exhibit "19"). Clearly, the Resident Defendants were negligent by directly providing Celebrex to Plaintiff's physician, in addition to having a duty to warn ultimate consumers and physicians with whom they met of the potential dangers associated with the use of Celebrex.

---

[2] Contrary to the Defendant's contentions, any negligence claims stated in Plaintiff's Complaint were NOT brought pursuant to the AEMLD. Therefore, Defendant's have failed to state a reason why the Alabama Sales Representative Defendants were fraudulently joined in the context of the negligence based allegations. As such, this case is due to be remanded for failure of the Defendant's to meet its heavy burden of proving fraudulent joinder on the negligence issue alone, not to mention all other allegations stated in Plaintiff's Complaint.

Defendants argue that Plaintiff failed to plead allegations of fraud and negligent misrepresentation with the specificity required by Rule 9, *Ala. R. Civ. P.* (Notice of Removal, ¶25). Plaintiff alleged in the Complaint facts sufficient to satisfy the requirements of Rule 9. For example, Plaintiff has plead the following:

> 123. Defendants recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff the safety and efficacy of the drug and/or recklessly, knowingly, intentionally, and fraudulently concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, material, adverse information regarding the safety and efficacy of Bextra (Valdecoxib).

> 124. Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, with the intent that they reach users and/or consumers of the drug, including Plaintiff.

> 125. Defendants either knew or should haven known that the representations were false.

> 126. Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of the drug with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff's, would rely on such in selecting Celebrex(Celecoxib) as a pain reliever.

(Comp.¶ 123-126)

Additionally, Rule 9(b) requires that although "the circumstances constituting the fraud be pleaded, it does not require that each element of fraud be delineated." *Spry Funeral Homes, Inc. v. Deaton,* 363 So.2d 786 (Ala. 1978). The committee comments state, "(the) special requirement(s) as to fraud... (do) not require every element... To be

stated with particularity…" *Id.* When, as here, the Defendants are reasonably apprised that the claim against them are ones for fraud and the claim is more than a generalized or conclusory statement of the fraud complained of, the pleading satisfies the rule's requirements.

Plaintiff has stated valid claims for fraud and negligent misrepresentation in his Complaint with the specificity required by Rule 9. The Alabama Sales Representative Defendant is a properly joined party to this action. Consequently, federal diversity jurisdiction is not present and the case should be remanded to state court.

## CONCLUSION

In all of its efforts, the Pfizer Defendants have failed to cite any direct applicable or controlling authority and consequently have failed in its burden of proving that there is no possibility that Plaintiff can establish a cause of action against the Resident Defendants. For the reasons outlined above, this Court lacks subject matter jurisdiction. Therefore, Plaintiff respectfully urges the Court to remand this action in its entirety to the Circuit Court of Barbour County, Alabama.

Respectfully submitted this the 20th day of April, 2006.


/s/Navan Ward, Jr.
JERE L. BEASLEY (BEA020)
ANDY D. BIRCHFIELD, JR. (BIR006)
PAUL SIZEMORE (SIZ004)
NAVAN WARD, JR. (WAR062)
GERALD B. TAYLOR, JR. (TAY026)

Attorneys for Plaintiff

**OF COUNSEL:**
BEASLEY, ALLEN, CROW, METHVIN,
   PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 telephone
(334) 954-7555 facsimile

PENN & SEABORN
Shane Seaborn
Post Office Box 668
Clayton, Alabama 36106

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon the parties as listed below by filing via the CM/ECF electronic filing system on this the 20th day of April, 2006.

Lawrence B. Clark
M. Jason Asbell
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
SouthTrust Tower, Suite 1600
420 Twentieth Street North
Birmingham, Alabama  35203

/s/NavanWard, . Jr.
                OF COUNSEL