JUN  3 2005

# C A D W A L A D E R

Cadwalader, Wickersham & Taft LLP
New York London Charlotte Washington Beijing

One World Financial Center, New York, NY 10281
Tel 212 504 6000  Fax 212 504 6666
www.cadwalader.com

June 2, 2005

Michael J. Beck
Clerk of the Judicial Panel on
Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, NE
Room G-225, North Lobby
Washington, D.C. 20002-9004

Re:   In re Bextra and Celebrex Products Liability Litigation, MDL Docket No. 1691
      In re Bextra Marketing and Sales Practices Litigation, MDL Docket. No. 1693
      In re Celebrex Marketing and Sales Practices Litigation, MDL Docket No. 1694
      In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation,
      MDL Docket No. 1699

Dear Mr. Beck:

This firm represents defendants Pfizer Inc., Pharmacia Corp. and G.D. Searle LLC in the cases
that comprise the above referenced litigation. Enclosed herein for filing are originals plus
eleven copies of the following documents, along with a disk containing the documents in pdf
format:

  1.   Pfizer Inc.'s Response to Motions to Transfer and Consolidate Pursuant to 28
       U.S.C. § 1407; and

  2.   Certificate of Service.

Respectfully,

Gregory A. Markel /pem

Gregory A. Markel

cc:   All Counsel of Record

PLAINTIFF'S
EXHIBIT
6

Gregory A. Markel  Tel 212 504 6112  Fax 212 504 6666  gregory.markel@cwt.com
NYLIB2 259061.1

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1691 |
| IN RE BEXTRA MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 1693 |
| IN RE CELEBREX MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 1694 |
| IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1699 |

### DEFENDANT PFIZER INC.'S RESPONSE TO MOTIONS
### TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407

CADWALADER, WICKERSHAM & TAFT LLP
Gregory A. Markel
Jason M. Halper
One World Financial Center
New York, NY 10281
Tel. (212) 504-6000
Attorneys for Defendants Pfizer Inc., Pharmacia
Corporation and G.D. Searle LLC

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

HISTORICAL BACKGROUND ......................................................................... 3

PETITIONS AT ISSUE ....................................................................................... 6

    The Consumer Actions ................................................................................. 6

    The Products Liability Actions ................................................................... 7

ARGUMENT ......................................................................................................... 8

POINT I    THE CONSUMER ACTIONS SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK FOR COORDINATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407 ...................... 9

    A.    Section 1407 Transfer And Coordination Of The Consumer Actions Will Promote Considerations Of Convenience And Judicial Economy .................................................................................. 9

    B.    The Consumer Actions Should Be Transferred To The Southern District Of New York For Coordinated Pre-trial Proceedings ................... 11

POINT II    THE PRODUCTS LIABILITY ACTIONS SHOULD NOT BE TRANSFERRED FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS ........................................................................ 13

    A.    Transfer And Coordination Of The Products Liability Actions Will Not Promote The Convenience Of Parties Or Witnesses Or Considerations Of Judicial Economy .......................................................... 13

    B.    If The Panel Orders Transfer And Coordination Of The Products Liability Actions, The Southern District Of New York Is The Appropriate Transferee Forum ................................................................... 15

    CONCLUSION ............................................................................................. 17

# TABLE OF AUTHORITIES

PAGE(S)

## CASES:

Barnes v. American Tobacco Co.,
    161 F.3d 127 (3d Cir. 1998), cert. denied,
    526 U.S. 1114 (1999) .........................................................................................2

Grant v. AOL Time Warner Inc. (In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.),
    Nos. MDL 1500, 02 Civ. 8853, 2003 WL 22227945 (S.D.N.Y. Sept. 26, 2003) ...................16

In re Allegheny Energy, Inc., Sec. Litig.,
    259 F. Supp. 2d 1368 (J.P.M.L. 2003) .........................................................................9

In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.,
    130 F.R.D. 475 (J.P.M.L. 1990) .................................................................................11

In re AOL Time Warner Inc. Sec. Litig.,
    235 F. Supp. 2d 1380 (J.P.M.L. 2002) ........................................................................12

In re Asbestos & Asbestos Insulation Material Prods. Liab. Litig.,
    431 F. Supp. 906 (J.P.M.L. 1977) .........................................................................13-14

In re Asbestos Sch. Prods. Liab. Litig.,
    606 F. Supp. 713 (J.P.M.L. 1985) .............................................................................14

In re Electronic Data Sys. Corp. Sec. & "ERISA" Litig.,
    254 F. Supp. 2d 1375 (J.P.M.L. 2003) ........................................................................10

In re Enron Corp. Sec., Deriv. & "ERISA" Litig.,
    196 F. Supp. 2d 1375 (J.P.M.L. 2002) ....................................................................9, 10

In re Food Fair Sec. Litig.,
    465 F. Supp. 1301 (J.P.M.L. 1979) ............................................................................10

In re Global Crossing, Ltd. Sec. & "ERISA" Litig.,
    223 F. Supp. 2d 1384 (J.P.M.L. 2002) ........................................................................12

In re Omnitrition Int'l, Inc. Sec. Litig.,
    No. 965, 1993 WL 52634 (J.P.M.L. Feb. 27, 1993) ........................................................9

In re Royal Ahold N.V. Sec. & "ERISA" Litig.,
    269 F. Supp. 2d 1362 (J.P.M.L.), transferred,
    219 F.R.D. 343 (D. Md. 2003) .........................................................................9, 11, 13

PAGE(S)

In re Salomon Bros. Treas. Sec. Litig.,
    796 F. Supp. 1537 (J.P.M.L. 1992).............................................................................11

In re WorldCom, Inc., Sec. & "ERISA" Litig.,
    226 F. Supp. 2d 1352 (J.P.M.L. 2002)...................................................................11

**STATUTES & OTHER AUTHORITIES:**

28 U.S.C. § 1407(a) ...........................................................................................2, 8

## PRELIMINARY STATEMENT

Pursuant to Rule 7.2(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Panel") and an order of the Panel dated May 13, 2005 (attached hereto as Exhibit A), defendants Pfizer Inc. ("Pfizer"), Pharmacia Corporation ("Pharmacia") and G.D. Searle LLC (f/k/a G.D. Searle & Co.) ("Searle") submit this response to five separate motions for transfer and consolidation submitted to the Panel by the following parties: (i) plaintiffs Gloria Ward, Carol Aiola and Ronald Babin (collectively, "Ward") on April 13, 2005 (MDL Docket No. 1691); (ii) plaintiffs Kenneth Kaye and Irene Bailey, et al. (collectively, "Kaye") on April 27, 2005 (MDL Docket No. 1691); (iii) plaintiff ASEA/AFSCME Local 52 Health Benefits Trust ("Local 52") on April 22, 2005 (MDL Docket No. 1693); (iv) plaintiffs Health Care for All, Wisconsin Citizen Action, United Senior Action of Indiana, Judith C. Meredith, Michelle Madoff, Rose Lohman and Cavalier Homes, Inc. (collectively, "HCA") on April 22, 2005 (MDL Docket No. 1694); and (v) plaintiffs Betty Alexander and Allied Services Division Welfare Fund (collectively, "Alexander") on May 10, 2005 (MDL Docket No. 1699).

The actions at issue in the Local 52 and HCA motions (MDL Nos. 1693 and 1694, respectively) assert claims for violations of state consumer protection laws (the "Consumer Actions"). In contrast, the actions subject to the Ward and Kaye motions (MDL No. 1691) assert personal injury claims against Pfizer (the "Products Liability Actions"). The Alexander motion seeks to consolidate both the Consumer and Products Liability Actions (although the vast majority of the actions subject to that motion assert either consumer or personal injury claims, but not both).

- As explained in detail below, the Consumer Actions satisfy the criteria established by 28 U.S.C. § 1407 for transfer and coordination in a single

proceeding.[1] First, they involve "one or more common questions of fact," being substantially similar actions filed in different districts; second, transfer will further the convenience of the parties and witnesses; and third, transfer will promote the just and efficient conduct of these actions by ensuring centralized oversight of pretrial discovery and, in the process, minimize judicial waste and inefficiency. See 28 U.S.C. § 1407(a). The Consumer Actions should, however, be coordinated in the Southern District of New York with the securities, ERISA and derivative actions subject to MDL Docket Number 1688. See Point I.

- The normal benefits derived from a Section 1407 transfer are not available in the Products Liability Actions. The plaintiffs in the Products Liability Actions allegedly sustained various personal injuries as a result of using Pfizer's pain relief medication. An individual plaintiff's ability to establish that their particular injury was caused by Celebrex or Bextra, as well as the amount of damages, if any, associated with such physical injuries will depend on considerations that will vary with each individual. Each plaintiff will need separately to establish, for example, that the cause of his or her alleged cardiovascular event was Pfizer's pain relief medication as opposed to one of many other available pain relief medications, some other type of medication, or a host of other potential causes, including diet, medical history, genetics, smoking, use of alcohol or illegal drugs, weight, or age. For each plaintiff these factual issues will have to be litigated and determined separately. See Point II.A.

- On the other hand, consolidation and transfer of the Products Liability Actions will impose significant burdens on individual plaintiffs who will be forced to litigate in a forum that is far from both their home and the relevant evidence of their medical condition and injury. Any very small benefit that might be gained from Section 1407 transfer of these actions is clearly outweighed by the inefficiencies and burdens created by doing so.[2]

- If the Products Liability Actions are transferred and coordinated pursuant to Section 1407, then — as with the Consumer Actions — the Southern District of New York stands out as the appropriate transferee forum. Pfizer is headquartered in that District, and many of its employees with relevant knowledge (who therefore are possible witnesses) likewise work and/or reside there. In addition, the Southern District of New York also is the focus of COX-2 related litigation. There are already twenty-six COX-

---

[1] A schedule of the Consumer Actions Pfizer seeks to transfer and consolidate in the Southern District of New York is attached hereto as Exhibit B.

[2] Six of the personal injury actions subject to the Ward, Kaye and/or Alexander motions purport to be brought as class actions. It is extremely unlikely, however, that a class will be certified in light of the predominance of individual issues. See Barnes v. American Tobacco Co., 161 F.3d 127, 143 n 19 (3d Cir. 1998) (citing cases), cert. denied, 526 U.S. 1114 (1999).

2 related actions pending in that District, which can be classified into four types of cases – i.e., those asserting claims for: violations of the federal securities laws (the "Securities Actions"); violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq., (the "ERISA Actions"); violations of state consumer protections laws; or derivatively against Pfizer's directors for breach of fiduciary duty (the "Derivative Actions"). Twenty-three of these actions (i.e., the Securities, ERISA and Derivative Actions) are subject to Pfizer's Section 1407 motion for transfer and coordination in the Southern District of New York (MDL No. 1688). For the reasons explained below, however, the Products Liability Actions should be assigned to a different judge in the Southern District of New York than the one to whom is assigned the MDL in connection with the Consumer, Securities, ERISA and Derivative Actions. See Point II.B.

All of the actions at issue in these motions arise out of the sale and/or alleged use of Pfizer's prescription drugs, Celebrex and Bextra. Celebrex and Bextra are COX-2 selective inhibitor drugs, a type of non-steroidal anti-inflammatory medicine prescribed in the treatment of rheumatoid arthritis and osteoarthritis.[3] The plaintiffs in these cases allegedly suffered pecuniary or physical injuries as a result of the purchase or use of Celebrex and Bextra. While the complaints in these actions name as defendants Pfizer, Pharmacia or Searle, Pfizer is the real party in interest because it acquired Pharmacia in 2003, and Pharmacia had previously acquired Searle three years earlier in 2000.

## HISTORICAL BACKGROUND

Non-steroidal anti-inflammatory medicines have been available for many years and are important in the treatment of arthritis and other painful conditions. One disadvantage of anti-inflammatory medicines is their potential to cause stomach and gastrointestinal side effects. COX-2 selective inhibitors such as Celebrex and Bextra were developed in the late 1990s, in part to offer relief from painful conditions associated with rheumatoid arthritis and osteoarthritis pain

---

[3]    Pfizer's first COX-2 inhibitor was Celebrex, or celecoxib. Celebrex received FDA approval in 1999 and remains available today as a treatment for arthritis pain. Pfizer's second COX-2 inhibitor, Bextra, or valdecoxib, received FDA approval in April 2002 and was available until April 2005, when it was withdrawn.

with reduced gastrointestinal side effects often associated with older "non-selective" non-steroidal anti-inflammatory drugs ("NSAIDs"), such as ibuprofen or naproxen.

On September 30, 2004, Merck & Co. announced the withdrawal from the market of its COX-2 medicine, Vioxx, following the release of long-term safety data indicating an increased cardiovascular risk for Vioxx compared to placebo. At that time, the available safety data for both Celebrex and Bextra did not demonstrate any increased cardiovascular risk compared to either placebo or alternative treatment therapies in approved indications.[4]

On December 16, 2004, Pfizer was notified by the Data Safety Monitoring Board for the Adenoma Prevention with Celecoxib ("APC") trial, a long-term cancer prevention trial, that the study results indicated an increase in cardiovascular risk for Celebrex compared to placebo. This finding conflicted with the large body of data accumulated for Celebrex to that point, which showed no increased cardiovascular risk. In addition, the APC results conflicted with the results of two contemporaneous prevention trials—the Prevention of Spontaneous Adenomatous Polyps ("PreSAP") trial and the Alzheimer's Disease and Prevention Trial (ADAPT). Neither PreSAP nor ADAPT showed an increase in cardiovascular risk for Celebrex compared to placebo.

On February 16-18, 2005, the FDA convened a joint meeting of the Arthritis and Drug Safety and Risk Management Advisory Committees to review the cardiovascular safety data for all COX-2 medicines, as well as non-selective NSAIDs. The Advisory Committees, which consist of non-FDA affiliated experts (i.e., academicians, clinicians, consumers, etc.) and

---

[4]    Bextra has been associated with an increase in cardiovascular events in patients undergoing coronary artery bypass graft surgery (a use for which Bextra is not approved), but the finding is limited to this high-risk procedure and has not been seen in other general surgery settings or otherwise.

have a mandate to provide independent advice that will contribute to the quality of the FDA's decision-making process, voted to keep both Celebrex and Bextra on the market.

A memorandum dated April 6, 2005 provides the FDA's analysis and recommendations for the Agency's actions regarding all NSAIDs, which were announced publicly on April 7. Significantly, the FDA did not find any increase in cardiovascular risk associated with non-chronic use of Celebrex or Bextra in approved indications. The FDA also stated that it is not possible to conclude that either Celebrex or Bextra confer greater cardiovascular risks than any of more than 20 non-selective NSAIDs on the market, including popular over-the-counter pain relievers such as ibuprofen and naproxen.

Although the FDA found that the data is best interpreted as being consistent with a class effect of an increased cardiovascular risk for all COX-2 selective and non-selective NSAIDs—"at least at some dose, with reasonably prolonged use"—the FDA stated that it was unable to estimate the magnitude of the increased cardiovascular risk or to determine the effect of dose on any increased risk for Celebrex, Bextra or the other NSAIDs.

With respect to Bextra, the FDA also concluded that it is associated with an additional risk of rare, but serious skin reactions compared to other NSAIDs. Based on this additional skin reaction risk, and in the absence of a demonstrated therapeutic advantage over other NSAIDs, the FDA determined that Bextra currently has an unfavorable benefit/risk profile compared to other NSAIDs and that it should be withdrawn from the U.S. market in light of available treatment alternatives. In deference to the FDA's views, Pfizer suspended sales of Bextra pending further discussions with the Agency about options for a return of Bextra to the market. [5]

---

[5]    The FDA has stated that it remains open to allowing limited access to Bextra for those patients who believe it is their best option.

With respect to Celebrex and all other NSAIDs, the FDA recommended that the professional labeling be revised to include a boxed warning highlighting the potential increased cardiovascular risk and the risk of serious, gastrointestinal bleeding.

Following the FDA's actions, leading arthritis organizations have questioned whether those actions are in the best interest of patients. For example, the Arthritis Foundation, the leading advocacy group for patients suffering from arthritis pain, believes that the FDA's actions "failed to take into account the potential benefits from these drugs and their contribution to improving the lives of millions of people with arthritis." According to the Arthritis Foundation, "[p]eople with arthritis have the right to make their own decisions about treatments to alleviate their pain and minimize the risk of serious limitations from arthritis—the nation's number one cause of disability."

PETITIONS AT ISSUE

**The Consumer Actions**

Local 52's motion (No. 1693) seeks to transfer and consolidate in the Southern District of New York two class actions asserting violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., and various state consumer protection laws in connection with the sale of Bextra. HCA's motion (No. 1694) seeks to transfer and consolidate in the District of Massachusetts four class actions relating to Celebrex, one asserting a RICO violation and all asserting violations of state consumer protection statutes. Alexander's motion (No. 1699) seeks to transfer and consolidate in the Eastern District of Louisiana the six actions subject to Local 52 and HCA's motions as well as three additional actions asserting RICO and/or claims for violations of state consumer protection laws.[6]

---

[6]    The two Consumer Fraud actions subject to Local 52's motion are pending in the Southern District of New York and the District of Delaware. The four actions subject to HCA's motion are pending in the

Case 2:06-cv-00349-MEF-VPM    Document 4-7    Filed 04/21/2006    Page 12 of 22

## ARGUMENT

Section 1407 specifies that the Panel may transfer two or more civil cases for coordinated pretrial proceedings where (1) the "actions involve one or more common questions of fact"; (2) coordination will further "the convenience of [the] parties and witnesses"; (3) coordination "will promote the just and efficient conduct of the actions"; and (4) coordination will prevent duplicative discovery and conflicting pretrial rulings. 28 U.S.C. § 1407(a). Here, each of these considerations weighs heavily in favor of transferring the Consumer Actions for coordinated pre-trial proceedings to the Southern District of New York. In contrast, applying these factors makes clear that transfer and coordination of the Products Liability Actions is not warranted.

In particular, while each of the plaintiffs in the Consumer Actions matters raise individualized issues not susceptible to class certification, their economic injury claims are sufficiently similar to those in the Securities Actions to warrant centralization. Overlap of issues will result in overlapping discovery and supports consolidation of these actions with the Securities, ERISA and Derivative Actions. The balance tips differently with regard to the Product Liability Actions. In those cases, the issues of personal injury will be so varied and individual as to make consolidated discovery not beneficial.

POINT I

THE CONSUMER ACTIONS SHOULD BE TRANSFERRED
TO THE SOUTHERN DISTRICT OF NEW YORK FOR
COORDINATED PRETRIAL PROCEEDINGS PURSUANT
TO 28 U.S.C. § 1407

A.    Section 1407 Transfer And Coordination Of The Consumer Actions Will
Promote Considerations Of Convenience And Judicial Economy

Transfer and coordination of the Consumer Actions is appropriate (albeit in the

Southern District of New York) because these actions "involve one or more common questions

of fact" and transfer will serve "the convenience of the parties and witnesses" and "promote the

just and efficient conduct of the actions" by preventing duplicative discovery. See In re Royal

Ahold N.V. Sec. & "ERISA" Litig, 269 F. Supp. 2d 1362, 1363 (J.P.M.L.) (transfer and

coordination appropriate to avoid duplicative discovery), transferred, 219 F.R.D. 343 (D. Md.

2003); In re Allegheny Energy, Inc.. Sec. Litig., 259 F. Supp. 2d 1368, 1369 (J.P.M.L. 2003)

(same); In re Omnitrition Int'l, Inc. Sec. Litig., No. 965, 1993 WL 52634, at *1 (J.P.M.L. Feb.

27, 1993) (same); In re Enron Corp. Sec.. Deriv. & "ERISA" Litig., 196 F. Supp. 2d 1375, 1376

(J.P.M.L. 2002).

Here, the Consumer Actions involve overlapping factual issues concerning the

safety of Bextra and Celebrex and the purported knowledge thereof on the part of Pfizer. The

Consumer Actions, as well as the Securities, ERISA and Derivative Actions, involve common

questions, including: (i) the cardiovascular and overall safety of Bextra and Celebrex;

(ii) Pfizer's knowledge of safety risks, if any, associated with these drugs; (iii) when and how it

acquired that knowledge; (iv) Pfizer's advertising, labeling and other public statements regarding

the safety of Bextra and Celebrex; and (v) the decisions and actions that Pfizer and its directors

and officers made in light of the available information concerning the safety of Bextra and

Celebrex. Because of these common issues, the plaintiffs asserting consumer claims will likely

call many of the same witnesses and seek the production of the same documents as each other, and as will be called or sought by the plaintiffs in the Securities, ERISA and Derivative Actions. Thus, efficiency would be served by coordinating discovery so as to avoid duplicative depositions and document productions.

In view of the "common events, defendants, and/or witnesses" in the Consumer Actions, Section 1407 transfer is appropriate, even though certain of the Consumer Actions assert RICO claims in addition to state consumer protection law violations, whereas others do not. See In re Enron Corp., 196 F. Supp. 2d at 1376 (coordinating securities class actions, derivative actions and ERISA actions because the cases involved common issues of fact, and as such, centralization was necessary to "eliminate duplicative discovery, prevent inconsistent pretrial rulings . . . and conserve the resources of the parties, their counsel and the judiciary"); see also In re Electronic Data Sys. Corp. Sec. & "ERISA" Litig., 254 F. Supp. 1375, 1376 (J.P.M.L. 2003) (coordinating securities class actions with other cases where the "actions share factual questions arising out of alleged misrepresentations or omissions concerning the financial condition of [the company]" and "all actions can be expected to focus on a significant number of common events, defendants, and witnesses"); In re Food Fair Sec. Litig., 465 F. Supp. 1301, 1303 (J.P.M.L. 1979) (securities class actions coordinated with other actions where "actions involve common issues of fact" and transfer "will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation").

In light of the foregoing, transfer and coordination of the Consumer Actions listed on Exhibit B will promote considerations of judicial economy and the convenience of parties and witnesses by protecting Pfizer, its corporate representatives or other defendants and witnesses from having to appear at numerous depositions to answer the same questions and to comply with document production obligations in separate actions involving similar facts and issues.

Moreover, as discussed below, such considerations of judicial economy and convenience are clearly and substantially enhanced if these actions are coordinated in the Southern District of New York with the Securities, ERISA and Derivative Actions.

B.    **The Consumer Actions Should Be Transferred To The Southern District Of New York For Coordinated Pre-trial Proceedings.**

The Southern District of New York is far and away the preferable transferee forum for the Consumer Actions. Pfizer's corporate headquarters is situated in the Southern District of New York, as are many of the documents and employees pertinent to the Consumer Actions. Most of the witnesses, documents, and evidence are therefore already located in or around the Southern District of New York, making it the most efficient and convenient forum. See In re Royal Ahold, 269 F. Supp. 2d at 1364 (transferring the litigation to the district where relevant documents and witnesses were located); In re Salomon Bros. Treas. Sec. Litig., 796 F. Supp. 1537, 1538 (J.P.M.L. 1992) (same); In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig., 130 F.R.D. 475, 476 (J.P.M.L. 1990) (transferring the litigation to the district where defendant corporation and a majority of the individual defendants, witnesses and documents were located).

To the extent that any of the witnesses are not located in New York, the resources available in New York also favor the Southern District of New York. As the MDL Panel recognized in In re WorldCom, a litigation of this scope will benefit from centralization in a major metropolitan center like New York City because it is "well served by major airlines, provides ample hotel and office accommodations, and offers a well developed support system of legal services." In re WorldCom, Inc., Sec. & "ERISA" Litig., 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002).

Moreover, the United States District Court for the Southern District of New York has well established expertise in complex litigation, as the MDL Panel has recognized in transferring complex multidistrict litigations there. See In re Global Crossing, Ltd. Sec. & "ERISA" Litig., 223 F. Supp. 2d 1384, 1385-86 (J.P.M.L. 2002) (selecting the Southern District of New York as the forum for fifty-two securities and ERISA class actions and derivative actions); In re AOL Time Warner Inc. Sec. Litig., 235 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002) (the Southern District of New York has the resources to devote "substantial time and effort" to complex securities litigation).

In contrast to the Southern District of New York, where Pfizer maintains its world headquarters, Pfizer has no personnel or facilities in Louisiana and only a single research facility in the District of Massachusetts, and because personnel at that facility were not involved in research or other COX-2 related activities, few if any of the relevant witnesses or documentary evidence are located in or around that venue. Rather, the location of the parties and the expertise of the Southern District of New York make it the most convenient and efficient forum for the Consumer Actions.

In addition, the Local 52 action, as well as two additional Consumer Actions subject to the Alexander motion (the Steamfitters' Industry Welfare Fund action and the Sheet Metal Workers' action), already are pending in the Southern District of New York. Also pending in that forum are nine class actions against Pfizer asserting claims for violations of the federal securities laws, six class actions asserting violations of ERISA, and eight shareholder derivative actions asserting claims for breach of fiduciary duty. All of these actions involve common factual issues relating to Pfizer's COX-2 inhibitor drugs.[9]

---

[9]    On March 24, 2005, Pfizer filed a motion with the Panel (MDL No. 1688) to transfer three securities class actions and three additional ERISA class actions pending in other federal courts to the Southern

Accordingly, for all these reasons, the Southern District of New York unquestionably "stands out" as the most convenient and efficient forum. See In re Royal Ahold, 269 F. Supp. 2d at 1364. Further, there is no need to create separate MDL proceedings for the Consumer Actions, on the one hand, and the Securities, ERISA and Derivative actions on the other. Rather, a single MDL proceeding for all these actions would enable a single judge to address discovery and other issues common to all these cases, and thereby most efficiently conduct these litigations and promote the convenience of parties and witnesses.

POINT II

THE PRODUCTS LIABILITY ACTIONS SHOULD NOT
BE    TRANSFERRED    FOR    CONSOLIDATED    OR
COORDINATED PRETRIAL PROCEEDINGS

A.    Transfer And Coordination Of The Products Liability Actions Will Not
Promote The Convenience Of Parties Or Witnesses Or Considerations Of
Judicial Economy

The Panel has recognized that centralization of products liability cases may not serve the convenience of the parties or witnesses or further the just and efficient conduct of the litigation. For example, the Panel in In re Asbestos & Asbestos Insulation Material Products Liability Litigation, 431 F. Supp. 906 (J.P.M.L. 1977) ("Asbestos I") denied a motion to transfer 103 individual and class action lawsuits asserting products liability claims relating to exposure to asbestos because:

> [the] question of causation is an individual issue. . . . Causation of
> an individual's disability by asbestos exposure will necessarily be
> related to the individual factors of length, intensity, and type of
> vocational exposure, and to the physical characteristics of the
> person. A considerable amount of technical medical evidence such

---

District of New York for coordinated pretrial proceedings with the twenty-three Securities, ERISA and Derivative Actions already pending there. The Panel heard oral argument on this motion on May 26, 2005, but has not yet issued a decision.

> as diagnoses, x-rays and tissue microscopies will be involved in
> each action. This evidence is of an individual nature.

Id. at 909-10. Moreover, the "medical, personnel, and product use records of each individual
will be found locally. Liability in these actions will be based on state substantive law. As a
result, transfer would not promote the parties' and witnesses' convenience regarding discovery."
Id. at 910; see also In re Asbestos Sch. Prods. Liab. Litig., 606 F. Supp. 713, 714 (J.P.M.L. 1985)
(denying transfer based on reasoning in Asbestos I).

      For the same reasons the Products Liability Actions before the Panel should not
be consolidated. With respect to causation, each plaintiff will have to establish that his or her
unique injuries were caused by ingesting Celebrex or Bextra, and not due to a host of other
potential causes, including diet, use of other pain relievers or other pharmaceuticals, medical
history, genetics, smoking, use of alcohol or illegal drugs, weight, age and the like. In addition,
each plaintiff's claims will differ with respect to the type of injury suffered, the severity of the
injury, the duration of rehabilitation or recovery, the extent of permanent disability, and the like.
As the Panel recognized in Asbestos I, such individual issues will dominate the Products
Liability Actions and must be litigated and determined separately for each individual plaintiff.
See 431 F. Supp. at 909-10. In addition, just as in Asbestos I, the plaintiffs in the Products
Liability Actions reside throughout the country, and the medical and other evidence relating to
these issues will be found "locally." Id. at 910.

      Further, because Celebrex is still on the market, the evidence and discovery
regarding Celebrex could continue to develop and evolve. The changing nature of ongoing
actions will eliminate any possible benefit from Section 1407 transfer here, and possibly result in
the proceeding having no end.

B.    If The Panel Orders Transfer And Coordination Of The Products Liability
Actions, The Southern District Of New York Is The Appropriate Transferee
Forum

If, however, the Panel does order transfer and coordination of the Products
Liability Actions (it should not), it should designate the Southern District of New York as the
transferee forum.   Given the twenty-six COX-2 related Consumer, Securities, ERISA and
Derivative actions already pending in that district, Pfizer's pending motion (MDL No. 1688) to
transfer all the Securities, ERISA and Derivative actions there, as well as the presence in that
forum of Pfizer and its employees, the Southern District of New York plainly is the only
appropriate forum for transfer and coordination of the Products Liability Actions.  See Point I.B.

In contrast, and as noted above, Pfizer has no employees or facilities in Louisiana,
one of the other proposed transferee forums.   While Pfizer has two facilities in Connecticut,
another proposed transferee forum, Pfizer's limited presence in that forum, in and of itself, does
not outweigh the substantial benefits of transfer to the Southern District of New York discussed
above.

In the event the Panel orders the transfer and consolidation of the Products
Liability Actions pursuant to Section 1407, those actions should be coordinated in a separate
MDL, and not assigned to an MDL proceeding ordered in connection with the Consumer,
Securities, ERISA and Derivative Actions.  As explained above, the Products Liability Actions
involve individual issues relating to the injuries and damages, if any, sustained by a particular
plaintiff.  A separate Products Liability MDL proceeding is therefore appropriate, if at all, to
enable a court to address how best to coordinate discovery in view of such individualized issues.
A judge assigned to coordinate other COX-2 related litigation should be free to do so without
also having to address the individualized personal injuries at issue in the Products Liability cases.

Moreover, discovery may commence earlier in the Products Liability Actions than in other COX-2 related litigation. Pursuant to the PSLRA, discovery in the Securities Actions will be stayed upon a defendant's filing (or intent to file) a motion to dismiss the complaint. This statutory stay of discovery would likely lead the transferee judge to stay discovery in related Consumer, ERISA and/or Derivative Actions in order to avoid piecemeal discovery within a single MDL proceeding. See, e.g., Grant v. AOL Time Warner Inc. (In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.), Nos. MDL 1500, 02 Civ. 8853, 2003 WL 22227945, at **2-3 (S.D.N.Y. Sept. 26, 2003) (where Panel consolidated securities, derivative, and ERISA actions, district court stayed discovery in ERISA actions pending the outcome of motion to dismiss related securities actions). A judge is unlikely to extend the discovery stay to the Products Liability Actions given the individual issues raised by the claims in those actions. As a result, coordinating the Products and other COX-2 related actions in a single MDL proceeding increases rather than decreases the risk of piecemeal litigation and should be avoided.[10]

---

[10] Even if the Panel orders Section 1407 transfer of the Products Liability Actions, three of these actions are not appropriate for coordination with other actions subject to such a proceeding. These three actions are subject only to Alexander's motion and are captioned Lemond v. Merck & Co., Stephens v. Merck & Co., and Booker v. Merck & Co. These three cases assert claims against Merck relating to its COX-2 drug, Vioxx, as well as against Pfizer relating to Celebrex and Bextra. Consideration of efficiency and convenience will only be undermined by combining in a single proceeding cases involving different drugs manufactured and sold by different defendants and therefore involving different witnesses and evidence. Moreover, there is no need for the Panel to coordinate these cases in a Pfizer COX-2 related proceeding: Stephens was dismissed without prejudice on April 26, 2005; Lemond already has been transferred to the MDL proceeding created in connection with Vioxx (MDL No. 1657); and Booker is stayed pending resolution of a motion to transfer the case to that Vioxx MDL proceeding.

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that the Consumer Actions listed on Exhibit B attached hereto be transferred to the Southern District of New York for coordinated pretrial proceedings with the actions subject to MDL No. 1688. Pfizer further requests that the Panel deny the Ward, Kaye and Alexander Plaintiffs' motions to transfer and consolidate the Products Liability Actions (MDL Docket Nos. 1691 and 1699). To the extent Section 1407 transfer of the Products Liability Actions is ordered, the Southern District of New York is the appropriate transferee forum.

Dated:    New York, New York
          June 2, 2005

                              CADWALADER, WICKERSHAM & TAFT LLP


                              By: _Gregory A. Markel / gem_
                                  Gregory A. Markel
                                  Jason M. Halper
                                  One World Financial Center
                                  New York, NY 10281
                                  Tel. (212) 504-6000

                                  Attorneys for Defendants Pfizer Inc., Pharmacia
                                  Corporation and G.D. Searle LLC

NYLIB2 258978.4                        -17-