IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

|  |  |  |
|---|---|---|
| HENRY C. MORRIS, an individual | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO: 2:06cv349-vpm |
| v. | ) | Pending transfer to MDL-1699 |
| | ) | (In re Bextra and Celebrex |
| | ) | Marketing, Sales Practices and |
| PFIZER INC., a Delaware Corporation; | ) | Products Liability Litigation) |
| PHARMACIA CORPORATION, a | ) | |
| Delaware Corporation; MONSANTO | ) | |
| COMPANY, a Delaware Corporation; | ) | |
| G.D. SEARLE, LLC, a Delaware | ) | |
| Corporation; ROBERT VANDELUNE; | ) | |
| SAMUEL KLEMENT; JAMIE PEACOCK; | ) | |
| BEN MCCLURKIN; ROD MCWHORTER; | ) | |
| and TIFFANY GUCKENBERY | ) | |
| And fictitious Defendants A, B, C and D | ) | |
| being those persons, firms or corporations | ) | |
| whose actions, inactions, fraudulent | ) | |
| suppression, fraud, scheme to defraud and/or | ) | |
| other wrongful conduct caused or | ) | |
| contributed to the Plaintiff's injuries and | ) | |
| damages, and whose true names and | ) | |
| identities are presently unknown to the | ) | |
| Plaintiff but will be substituted by | ) | |
| amendment when ascertained, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

TO:    United States District Court For The Middle District Of Alabama

B MJA 705508 v1
2902026-000044 03/27/2006
B MJA 707032 v1
2902026-000045 04/17/2006

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Pfizer Inc. ("Pfizer"), Pharmacia Corporation ("Pharmacia," improperly captioned as Monsanto Company, *see* ¶ 10, *infra*), and G.D. Searle LLC (collectively, the "Removing Defendants") with full reservation of all defenses, file this Notice of Removal of this civil action from the Circuit Court of Barbour County, State of Alabama, to the United States District Court for the Middle District of Alabama, Northern Division, and state as follows:

As detailed below, the Eleventh Circuit recently spoke definitively against the "common strategy" employed by plaintiffs in pharmaceutical products liability cases such as this one of fraudulently joining individual non-diverse pharmaceutical representatives in an effort to defeat federal court jurisdiction. *Legg v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005). Here as well, the presence of pharmaceutical representative defendants, Robert Vandelune ("Vandelune"), Samuel Klement ("Klement"), Jamie Peacock ("Peacock"), Ben McClurkin ("McClurkin"), Rod McWhorter ("McWhorter"), and Tiffany Guckenberg ("Guckenberg," improperly captioned in Plaintiff's Complaint as "Guckenbery"), (collectively, the "Pharmaceutical Representatives") in this action does not defeat this Court's diversity jurisdiction.    Plaintiffs have no possibility of prevailing against any of the Pharmaceutical Representatives.  Moreover, Defendants Mr.

2

McClurkin and Mr. McWhorter *never* detailed the prescription medicine at issue here to any healthcare provider or patient in Alabama, let alone to Plaintiff or his physician.

1.    The Removing Defendants, as well as the purportedly non-diverse defendants, the Pharmaceutical Representatives, are the only named defendants to the action filed in the Circuit Court of Barbour County, State of Alabama, bearing the caption *Henry C. Morris v. Pfizer Inc., et al.*, Civil Action # 2006-019. On March 10, 2006, Plaintiff filed this action for alleged "damages . . . resulting from the use of Celebrex," an FDA-approved prescription medication. Compl. ¶ 22 (attached hereto as Exhibit 1).

2.    On September 6, 2005, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order, pursuant to 28 U.S.C. § 1407, establishing an MDL proceeding in the Northern District of California (MDL-1699) for cases such as this involving Celebrex®. *See In re Bextra & Celebrex Mktg., Sales Pracs. & Prods. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L. 2005). Accordingly, this case is expected to become a "tag-along" action transferable to MDL-1699 pursuant to Rules 7.4 and 7.5 of the Rules of Procedure of the JPML. *See Rules of Procedure of the Judicial Panel on Multidistrict Litig.*, 199 F.R.D. 425 (J.P.M.L. 2001).

\
B MJA 705508 v1
2902026-000044 03/27/2006
B MJA 707032 v1
2902026-000045 04/17/2006

Defendants will soon be filing a Motion to Stay all proceedings in this Court pending transfer.

## I.    THIS COURT HAS DIVERSITY JURISDICTION OVER THIS ACTION.

3.    This Court has federal diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because:  (1) the amount in controversy exceeds $75,000.00, exclusive of interest and costs; and (2) the requisite diversity of citizenship exists between Plaintiff and the properly joined Defendants.

### A.    The Amount-In-Controversy Requirement Is Satisfied.

4.    Based on the allegations in Plaintiff's Complaint, the amount in controversy plainly exceeds $75,000.00, exclusive of interests and costs.  Indeed, Plaintiff expressly alleges that "[t]he amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter."  *Compl.* ¶ 91.[1]  Plaintiff seeks unlimited compensatory and punitive damages with respect to his alleged "injuries resulting in a stroke." *Id.* ¶ 1; *e.g., id.* ¶ 81, (alleging "Defendants' negligence was a contributing cause of Plaintiff's injuries and Plaintiff's economic and non-economic loss"); *id.* ¶ 109 (seeking both "compensatory and punitive damages"); *id.* at 32 (unnumbered "WHEREFORE" paragraph) (seeking unlimited damages).  Given that Plaintiff

---

[1] As shown below, this Court otherwise has jurisdiction over this matter because there is complete diversity between Plaintiff and the properly joined defendants.

4

seeks an unspecified amount of damages, the Removing Defendants only need to show that the amount in controversy more likely than not exceeds the jurisdictional amount requirement. *See, e.g., Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 948-48 (11th Cir. 2000). Given the severity of the injuries alleged and the other allegations in Plaintiff's Complaint, this requirement is plainly satisfied. *See, e.g., id.; Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

5.    In particular, as noted, Plaintiff alleges that Celebrex® caused him to suffer a stroke, and seeks damages based upon the following causes of action: negligence, strict products liability/defective design, strict products liability/failure to warn, breach of express warranty of merchantability, breach of implied warranty of merchantability, fraud, and negligent misrepresentation.    While Defendants deny any wrongdoing, in other product liability cases in which liability is found, Alabama juries routinely render verdicts in excess of $75,000.00, exclusive of interests and costs, as evidenced by the cases attached to this Notice as Exhibit 2. Likewise, as the Eleventh Circuit has recognized, appellate courts have upheld verdicts in excess of $75,000.00, in cases where a medical product was alleged to have caused injury, but not death. *See generally Toole v. McClintock*, 999 F.2d 1430 (11th Cir. 1993) (citing award of $400,000.00 in compensatory and $5,000,000.00 in punitive damages in a product liability case); *Benford v. Richards*

5

*Med. Co.*, 792 F.2d 1537 (11th Cir. 1986) (citing award of $165,000.00 in compensatory and $100,000.00 in punitive damages in a medical product liability case). Moreover, in other personal injury actions in which plaintiffs alleged lesser injuries, this Court has recognized that "[i]t is not uncommon in these circumstances for Alabama juries to award compensatory damages in excess of the jurisdictional prerequisite, even before punitive damages are considered." *Hester v. Bayer Corp.*, Civil Action 01-D-1301-N, slip op. at 8-9 (M.D. Ala. Dec. 21, 2000) (DeMent, J.) (denying motion to remand and holding that defendant had met its burden of demonstrating that the amount in controversy more likely than not exceeded $75,000.00 when complaint alleged "serious muscle problems" caused by a prescription medication) (attached hereto as Exhibit 3). Therefore, given that Plaintiff seeks unlimited compensatory and punitive damages based on his allegation that Celebrex® caused him to suffer a stroke, the amount in controversy plainly exceeds $75,000.00.

## B.    Complete Diversity Of Citizenship Exists Between The Properly Joined Parties.

6.    Upon information and belief, Plaintiff Henry Morris is, and at the time he filed this suit was, a resident and citizen of the State of Alabama. *See* Compl. ¶¶ 2, 15.

6

7.    Defendant Pfizer was at the time of filing of this action, and still is, a corporation existing under the laws of Delaware, with its principal place of business in New York. *See* Compl. ¶ 6. Accordingly, Pfizer is not now, nor was it at the time of filing this action, a citizen of Alabama for purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1).

8.    Defendant Pharmacia was at the time of filing of this action, and still is, a corporation existing under the laws of Delaware, with its principal place of business in New Jersey. *See* Compl. ¶ 4. Accordingly, Pharmacia Corporation is not now, nor was it as the time of filing of this action, a citizen of Alabama for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

9.    Defendant Searle was at the time of filing of this action, and still is, a limited liability company whose sole member is (and was) Pharmacia & Upjohn Company LLC, which is, and at the time of the filing of this action was, a limited liability company whose sole member is (and was) Pharmacia & Upjohn LLC, which is, and at the time of the filing of this action was, a limited liability company whose sole member is (and was) Pharmacia Corporation which is, and at the time of the filing of this action was, a corporation existing under the laws of the State of Delaware, having its principal place of business in the State of New Jersey. Thus, for jurisdictional purposes, Searle is a citizen of Delaware and New Jersey. *See*

7

e.g., *Rolling Greens MHP, LP v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (holding that a "limited liability company is a citizen of any state of which a member of the company is a citizen"); *see also* 28 U.S.C. § 1332(c)(1). Thus, Searle is not now, nor was it at the time of filing this action a citizen of Alabama for purposes of determining diversity.   *See* 28 U.S.C. §1332(c)(1).

10.   In 1933, an entity known as Monsanto Company ("1933 Monsanto") was incorporated under the laws of Delaware. On March 31, 2000, a subsidiary of 1933 Monsanto merged with Pharmacia & Upjohn, Inc, and 1933 Monsanto changed its name to Pharmacia Corporation.  *Cf.* Compl. ¶ 5.   As stated in Paragraph 8, *supra*, Pharmacia is (and was at the time of the filing of this action) a corporation existing under the laws of the State of Delaware, having its principal place of business in the State of New Jersey.  Accordingly, Defendant Monsanto Company, is not now, nor was it at the time of filing this action, a citizen of Alabama for purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1).

11.   The Complaint also names additional defendants, the Pharmaceutical Representatives, and alleges that they are a "residents" of the State of Alabama. *See* Compl. ¶¶ 8-12.   Even assuming *arguendo* that the Pharmaceutical Representatives are Alabama citizens, their presence does not destroy diversity

8

jurisdiction because they are fraudulently and improperly joined and/or misjoined in an attempt to defeat diversity and prevent removal. As such, their citizenship is disregarded in determining diversity jurisdiction exists. *See, e.g., Legg*, 428 F.3d at 1325; *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

12.    The Complaint also purports to state claims against unnamed, fictitious defendants identified as defendants A through D. *See* Compl. ¶ 13. For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

## II.    THE PHARMACEUTICAL REPRESENTATIVE DEFENDANTS ARE FRAUDULENTLY JOINED.

13.    The doctrine of fraudulent or improper joinder prevents a plaintiff from defeating federal diversity jurisdiction by simply naming in-state defendants where there is no reasonable possibility the plaintiff can establish a cause of action against that resident defendant. *See, e.g., Triggs*, 154 F.3d at 1287; *Crowe v. Coleman*, 113 F.3d 1536, 1540 (11th Cir. 1997).

14.    To defeat a removing defendant's allegation that non-diverse parties have been fraudulently joined, plaintiffs must have a "reasonable basis" upon which they could recover against the non-diverse party; a "merely theoretical" basis is not enough. *Legg*, 428 F.3d at 1324-25 & n.5. Here, as in *Legg*, there is

\
B MJA 705508 v1
2902026-000044 03/27/2006
B MJA 707032 v1
2902026-000045 04/17/2006

no "reasonable basis" that Plaintiff can establish a cause of action against the Pharmaceutical Representatives.

15.     In *Legg*, plaintiffs brought a pharmaceutical product liability action in Alabama state court against several pharmaceutical companies and three pharmaceutical representatives.  Defendants removed the case to federal court contending that the plaintiffs fraudulently joined the pharmaceutical representatives.  Recognizing the improper "common strategy employed" in pharmaceutical product liability cases such as this in which plaintiffs "name local parties, often ... local sales representatives, as defendants, thus defeating [a defendant's] right to remove a case to federal court," the Eleventh Circuit reiterated that the "removal process was created by Congress to protect defendants." *Id.* at 1320, 1325. In *Legg*, as here, the defendants submitted a sworn affidavit from one of the defendant pharmaceutical representatives that he never detailed or marketed the drug in question.  *Id.* at 1324-25; *see* Affidavits of McClurkin and McWhorter (April 17, 2006), attached as Exhibit 4.  Additionally, in *Legg*, as here, the defendants submitted a sworn affidavit from another one of the defendant pharmaceutical representatives that she had detailed the drug in question to licensed healthcare providers and answered their questions based on information provided to her by her employer.  *Id.* at 1321; *see* Affidavits of

10

Vandelune (April 14, 2006), Klement, Peacock and Guckenberg (April 17, 2006), attached here collectively as Exhibit 5.

16.    Applying Alabama law, the Eleventh Circuit found "no reasonable possibility" that the named pharmaceutical representatives could be found liable on plaintiffs' claims. *Legg*, 428 F.3d at 1324; *see also id.* at 1325 n. 5 (stating the potential for legal liability "must be reasonable, not merely theoretical") (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). The Eleventh Circuit emphasized: "As the Supreme Court long ago admonished, 'the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court.'" *Id.* at 1325 (quoting *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907)).

17.    Fraudulent joinder may be shown by a lack of a factual or legal basis for a plaintiff's claims; in this case, Plaintiff's claims fail for both reasons. *See, e.g., Owens v. Life Ins. Co. of Ga.*, 289 F. Supp. 2d 1319, 1323-24 (M.D. Ala. 2003).

18.    Plaintiff asserts causes of action against defendants generally for negligence, defective design, failure to warn, breach of express warranty of merchantability, breach of implied warranty of merchantability, fraud, and

\
B MJA 705508 v1
2902026-000044 03/27/2006
B MJA 707032 v1
2902026-000045 04/17/2006

negligent misrepresentation. Plaintiff appears to base his claims on the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD").[2] *See generally* Compl. The Complaint alleges that the Defendants, "marketed and distributed this drug in Barbour County, Alabama. Defendants encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects in Barbour County, Alabama. These Defendants aggressively marketed this drug directly to the consuming public through the use of various marketing mediums, including, but not limited to, print and television advertisements in Barbour County, Alabama." Compl. ¶ 16. Further, it alleges that, "the Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product in Barbour County, Alabama. Defendants' conduct exhibits an entire want of care as to the safety of this product and a conscious disregard of the foreseeable harm caused by this product in Barbour County, Alabama." *Id.* ¶ 17. Because there is no reasonable possibility in law or fact that Plaintiff could recover against the Pharmaceutical Representatives, those defendants have been fraudulently joined and their presence in this action cannot defeat removal.

---

[2] It appears that any negligence and defective design claims are brought pursuant to the AEMLD. Even if they are not, however, they still fail. The AMELD also includes wrongful death actions. *See Casrell v. Altec Indus. Inc.*, 335 So. 2d 128 (Ala. 1976).

12

A.    **Plaintiff Fails To State Legally Cognizable Claims Against The Pharmaceutical Representative Defendants.**

19.    In addition, Plaintiff fails to state any legally sufficient basis for relief against any of the Pharmaceutical Representatives.  *See, e.g., Legg*, 428 F.3d at 1324-25; *Crowe*, 113 F.3d at 1540.

1.    **Plaintiff Fails to State Legally Cognizable Claims Against the Pharmaceutical Representative Defendants for Violation of the AEMLD and for Breach of Warranty.**

20.    Plaintiff cannot establish a viable claim against the Pharmaceutical Representatives for violation of the AEMLD or for breach of express or implied warranty because pharmaceutical representatives are not the requisite manufacturers or sellers of prescription medicines.  *See, e.g., Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987).  To establish liability under the AEMLD, "the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product." *Id.* (citing *Atkins v. American Motors Corp.*, 335 So. 2d 134 (Ala. 1976)).  Pharmaceutical representatives under Alabama law are not considered to be sellers or suppliers of the prescription drugs they detail.  *See Rezulin*, 133 F. Supp. 2d at 287; *see also* Affidavits of Vandelune, Klement, Peacock, and Guckenberg at ¶¶ 3-9; Affidavits of McClurkin and McWhorter at ¶ 2.

13

21.    Nor can Plaintiff state a claim for breach of express or implied warranty against the Pharmaceutical Representatives because the Pharmaceutical Representatives are not "sellers" under Alabama law.  *See* Ala. Code §§ 7-2-313(1), 7-2-314(1), 7-2-315, 7-2-103(1)(d) (express and implied warranty claims refer to the creation of warranties by the "seller"); *Rezulin*, 133 F. Supp. 2d at 286 ("seller" who makes warranties about a prescription medicine is the "pharmaceutical manufacturer," and not the pharmaceutical representative); *e.g.*, Affidavits of Vandelune, Klement, Peacock, and Guckenberg ¶¶ 3-9.  Accordingly, the Pharmaceutical Representatives cannot be liable under the AEMLD or a warranty theory.

### 2.    Plaintiff Fails to Establish Legally Cognizable Claims for Failure to Warn.

22.    Plaintiff's failure to warn claims likewise fail.  *See* Compl. ¶¶ 27, 42-52.  First, in products liability actions premised on a negligence (or wantonness) theory, "[t]he defendant must be either the manufacturer or seller of the injury-producing article."  *Norton Co. v. Harrelson*, 176 So. 2d 18, 20 (Ala. 1965).  As explained above, pharmaceutical representatives in general, and the Pharmaceutical Representatives in particular, are neither manufacturers nor sellers of prescription medicines.  *See* § I(A)(1), *supra*; Affidavits of Vandelune, Klement, Peacock, and Guckenberg at ¶¶ 3-8.  Second, under Alabama law, a prescription

14

drug manufacturer satisfies its duty to warn under the AEMLD or negligent failure to warn claims by distributing an adequate warning to the prescribing physician. *See, e.g., Stone v. Smith, Kline & French Labs*, 447 So. 2d 1301, 1305 (Ala. 1984) (holding that an adequate warning to the prescribing physician, but not to the ultimate consumer, is sufficient as a matter of law to avoid liability under the AEMLD in the case of prescription drug); *Gurley v. American Honda Motor Co.*, 505 So. 2d 358, 361 (Ala. 1987) (holding that, as a matter of law, a manufacturer cannot be held liable for negligent failure to warn where it distributed the product with reasonable warnings); *Purvis v. PPG Indus., Inc.*, 502 So. 2d 714 (Ala. 1987).

23.    Stated simply, under Alabama law, pharmaceutical representatives have no duty to warn plaintiffs directly.  As another court has remarked in this context, there is "no authority for the proposition that the sales representatives, as opposed to the manufacturer, had any duty to warn" and, as noted, "any duty to warn that it or its sales representatives had was owed not to Plaintiffs, but to Plaintiffs' physicians" under the learned intermediary doctrine. *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000) ("Plaintiffs have no cause of action against the named sales representatives for failure to warn.") (citing *Wyeth Labs., Inc. v. Fortenberry*, 530 So. 2d 688, 691 (Miss. 1988) (denying motion to

\
B MJA 705508 v1
2902026-000044 03/27/2006
B MJA 707032 v1
2902026-000045 04/17/2006

remand an action naming the manufacturer and non-diverse pharmaceutical representatives as defendants); *see Rezulin*, 133 F. Supp. 2d at 282.

24.    Further, as addressed below, Plaintiff's Complaint fails to state sufficient facts to support a failure to warn claim against the Pharmaceutical Representatives for failing to warn Plaintiff or his physician.  Plaintiff fails to allege any facts to demonstrate that the Pharmaceutical Representatives had any unique or specialized knowledge or information independent of the information contained in the FDA-approved physician package insert which they had an obligation to disclose to Plaintiff's prescribing physician.  To the contrary, they had none. *See* Affidavits of Vandelune, Klement, Peacock, and Guckenberg at ¶ 4. Consequently, in no event could Plaintiff state a viable cause of action against the Pharmaceutical Representatives for failure to warn Plaintiff or Plaintiff's physician.

### 3.    Plaintiff's Fraud-Based Claims Fail.

25.    Plaintiff also cannot sustain his claims against the Pharmaceutical Representatives for fraudulent and negligent misrepresentation because the Complaint fails to comply with the "particularity" requirement of Rule 9(b). *See* Fed. R. Civ. P. 9(b) (requiring that allegations of fraud be stated with particularity); Ala. R. Civ. P. 9(b), comment (stating that the Alabama rule is identical to the federal rule).  Particularity "requires a plaintiff in pleading fraud to distinguish

16

\
B MJA 705508 v1
2902026-000044 03/27/2006
B MJA 707032 v1
2902026-000045 04/17/2006

among defendants and specify their respective role in the alleged fraud." *McAllister Towing & Trans. Co. v. Thorn's Diesel Serv. Inc.*, 131 F. Supp. 2d 1296, 1302 (M.D. Ala. 2001). The pleading requirements are not satisfied if plaintiff fails to "distinguish among defendants and specify their respective role in the alleged fraud." *Id.* Thus, a plaintiff must allege matters such as time, place, content and speaker of the allegedly fraudulent misrepresentations. *Id.*; *Estate of Scott v. Scott*, 907 F. Supp. 1495, 1498 (M.D. Ala. 1995) ("time, place and purported contents of the false representations" must be pled); *see* Ala. R. Civ. P. 9(b), Committee Comments on 1973 Adoption, Subdivision (b) (stating plaintiff must show the "time, place and the contents or substance of the false representation, the fact misrepresented, and an identification of what has been obtained"). Mere "general allegations do not meet the Rule 9(b) requirements." *Rezulin*, 133 F. Supp. 2d at 284.

26.    Plaintiff fails to plead with the requisite particularity. Plaintiff merely alleges generically that "Defendants . . . fraudulently misrepresented to . . . users and/or consumers of the drug, including Plaintiff, the safety and efficacy of Celebrex . . . ." *E.g.*, Compl. ¶ 123. The Complaint fails to specify time, place, or content of *any* particular representations made by the Pharmaceutical Representatives. Nor does the Complaint name the prescribing physician to whom

17

the allegedly fraudulent misrepresentations were made. Because Plaintiff fails to plead these fraud-based claims with the requisite particularity, Plaintiff cannot state a claim. *See United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) ("this Court has endorsed the dismissal of pleadings for failing to meet Rule 9(b)'s standards"); *Mixon v. Cason*, 622 So. 2d 918, 920 (Ala. 1993) ("The plaintiff did not plead with the specificity required by Rule 9(b)" and "the trial court properly dismissed").

27.    Further, Plaintiff's fraud-based claims fail because the Pharmaceutical Representatives' knowledge about the alleged benefits and risks of the prescription medication Celebrex® came from their employer and the FDA-approved labeling. *See* Affidavits of Vandelune, Klement, Peacock, and Guckenberg at ¶ 4; *Legg*, 428 F.3d at 1324 (under Alabama law, a sales representative cannot be held liable unless he "personally participate[d] in the tort") (quoting *Turner v. Hayes*, 719 So. 2d 1184, 1188 (Ala. Civ. App. 1997)).

## B.    No Factual Basis Exists For Plaintiff's Claims Against The Pharmaceutical Representative Defendants.

28.    Furthermore, Plaintiff has fraudulently and improperly joined the Pharmaceutical Defendants because the Complaint fails to allege a sufficient factual basis for the claims against them – and there is no such basis. Indeed, *Defendants McWhorter and McClurkin have never detailed Celebrex® to any*

18

*physician or patient, let alone to Plaintiff or Plaintiff's prescribing physician. See* Affidavits of McWhorter and McClurkin at ¶ 5; *see also Legg*, 428 F.3d at 1324-25 (grounding fraudulent joinder analysis on sales representative's affidavit).

29. As made clear in their Affidavits, Defendants McClurkin and McWhorter did not call on or communicate information about Celebrex® to anyone, much less to Plaintiff or his unnamed prescribing physician. *See* Affidavits of McWhorter and McClurkin at ¶ 5. Accordingly, there is no factual basis for any claim against them.

30. The Complaint also fails to allege (1) that the remaining Pharmaceutical Representative Defendants Vandelune, Klement, Peacock, or Guckenberg themselves called on or communicated with Plaintiff or with his alleged prescribing physician, (2) what information these Pharmaceutical Representatives themselves allegedly misrepresented to or concealed from Plaintiff or Plaintiff's prescribing physician, and (3) that Plaintiff or his alleged prescribing physician relied on any such information. *See* Compl. ¶¶ 16-17; *see generally In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 140 (S.D.N.Y. 2001) (finding fraudulent joinder where such specific allegations are lacking). Because Plaintiff's Complaint is factually insufficient, the Pharmaceutical Representatives are fraudulently joined. *See Legg*, 428 F.3d at 1324-25. *See, e.g.*, Affidavits of

19

McWhorter and McClurkin at ¶ 5; Affidavits of Vandelune, Klement, Peacock, and Guckenberg at ¶¶ 4-9; *Legg*, 428 F.3d at 1324-25 (grounding fraudulent joinder analysis on sales representative's affidavit).

31.    Thus, no factual or legal basis exists for Plaintiff's claims against the Pharmaceutical Representatives.    The Pharmaceutical Representatives are fraudulently joined and their presence in this lawsuit cannot destroy this Court's diversity jurisdiction.

## III.    PROCEDURAL REQUIREMENTS FOR REMOVAL

32.    All other procedural requirements for removal have been met.    On March 17, 2006, Defendants were served with a copy of the Summons and Complaint. This Notice of Removal is being filed within 30 days of the service of the Complaint and is timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (holding that the thirty day time period under removal statute begins to run from the date of formal service). All properly joined Defendants have consented to this Notice of Removal.    28 U.S.C. § 144(a); *see Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp 2d 1220, 1222 n.3 (M.D. Ala. 1999) (fraudulently or improperly joined defendants need not consent to removal).    Although their consent is not necessary because they have been fraudulently and improperly joined, the Pharmaceutical

20

Representatives, who are represented by the undersigned, nonetheless consent in this removal.

33.    The United States District Court for the Middle District of Alabama, Northern Division, embraces the county in which the state court action is now pending and thus this Court is a proper venue for this action pursuant to 28 U.S.C. § 81(b)(1) and 1441(a).

34.    Copies of all process, pleadings and orders are collectively attached to this Notice of Removal at Exhibit 6 pursuant to 28 U.S.C. §1446(a).

35.    Defendants are filing written notice of this removal with the Clerk of the State Court in which the action is currently pending pursuant to 28 U.S.C. § 1446(d). Copies of the Notice of Filing Notice of Removal together with a copy of this Notice of Removal are being served upon Plaintiff's counsel pursuant to 28 U.S.C. § 1446(d).

36.    If any question arises to the propriety of the removal of this action, Defendants respectfully request the opportunity to present a brief and oral argument in support of their position that this case is removable.

WHEREFORE, Defendants respectfully remove this action from the Circuit Court of Barbour County, Alabama, bearing case #CV-06-19, to this Court, pursuant to 28 U.S.C. § 1441.

21

\
B MJA 705508 v1
2902026-000044 03/27/2006
B MJA 707032 v1
2902026-000045 04/17/2006

Respectfully submitted this _____ day of _____,

2006.

_____
Lawrence B. Clark
M. Jason Asbell
*Attorneys for Defendants*

OF COUNSEL:
BAKER, DONELSON, BEARMAN,CALDWELL & BERKOWITZ, PC
SouthTrust Tower, Suite 1600
420 Twentieth Street North
Birmingham, Alabama 35203
Telephone:  (205) 328-0480
Facsimile:  (205) 322-8007

22

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the above and foregoing on the below named by placing a copy of the same in the U.S. Mail on this the ⁷ᵗʰ day of March, 2006:

Mr. Jere L. Beasley
Mr. Andy D. Birchfield, Jr.
Mr. Navan Ward, Jr.
Mr. Paul Sizemore
Mr. Gerald B. Taylor, Jr.
BEASLEY, ALLEN CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, Alabama 36103-4160

OF COUNSEL

23