# EXHIBIT

# 1

IN THE CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA

HENRY C. MORRIS, an Individual,       *

     *

     *

     *

     Plaintiff,      *

     *

vs.      *      CIVIL NO: *CV 06 - 019*

     *

     *

PFIZER INC;      *

PHARMACIA CORPORATION;      *

MONSANTO COMPANY;      *

G.D. SEARLE, LLC;      *

ROBERT VANDELUNE; SAMUEL      *

KLEMENT; JAMIE PEACOCK;      *

BEN MCCLURKIN, ROD MCWHORTER;      *

AND TIFFANY GUCKENBERY      *

     *

     Defendants.      *

     *

     *



## SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:      G.D. SEARLE, LLC
     The Corporation Company; 2000 Interstate Park Drive
     Suite 204; Montgomery, Alabama 36109

    The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

     NAVAN WARD, JR.
     BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
     Post Office Box 4160
     Montgomery, Alabama 36103-4160

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

_____
Circuit Clerk

DATED: _____



IN THE CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA

HENRY C. MORRIS, an Individual,          *
                                          *
    Plaintiff,                            *
                                          *
vs.                                       *      CIVIL NO:
                                          *      _____
                                          *
PFIZER INC;                               *
PHARMACIA CORPORATION;                    *
MONSANTO COMPANY;                         *
G.D. SEARLE, LLC;                         *
ROBERT VANDELUNE; SAMUEL                  *
KLEMENT; JAMIE PEACOCK;                   *
BEN MCCLURKIN, ROD MCWHORTER;             *
AND TIFFANY GUCKENBERY                    *
                                          *
    Defendants.                           *
                                          *



## SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

    NOTICE TO:      BEN MCCLURKIN
                  105 Brentwood Drive
                  Dothan, Alabama 36303

    The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

                  NAVAN WARD, JR.
                  BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
                  Post Office Box 4160
                  Montgomery, Alabama 36103-4160

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

                        _____
                        Circuit Clerk

DATED: _____



IN THE CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA

HENRY C. MORRIS, an Individual,        *
        *
        *
        *
    Plaintiff,        *
        *
vs.        *    CIVIL NO:
        *    _____
PFIZER INC;        *
PHARMACIA CORPORATION;        *
MONSANTO COMPANY;        *
G.D. SEARLE, LLC;        *
ROBERT VANDELUNE; SAMUEL        *
KLEMENT; JAMIE PEACOCK;        *
BEN MCCLURKIN, ROD MCWHORTER;        *
AND TIFFANY GUCKENBERY        *
        *
    Defendants.        *
        *



## SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

        NOTICE TO:    PFIZER INC.
                The Corporation Company; 2000 Interstate Park Drive
                Suite 204; Montgomery, Alabama 36109

    The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

        NAVAN WARD, JR.
        BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
        Post Office Box 4160
        Montgomery, Alabama 36103-4160

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

                        _____
                        Circuit Clerk

DATED: _____



**IN THE CIRCUIT COURT OF**
**BARBOUR COUNTY, ALABAMA**

HENRY C. MORRIS, an Individual,       *

       Plaintiff,                 *

                              *

vs.                               *       CIVIL NO:

                              *     _____

PFIZER INC;                  *

PHARMACIA CORPORATION;     *

MONSANTO COMPANY;        *

G.D. SEARLE, LLC;            *

ROBERT VANDELUNE; SAMUEL    *

KLEMENT; JAMIE PEACOCK;      *

BEN MCCLURKIN, ROD MCWHORTER;  *

AND TIFFANY GUCKENBERY      *

                              *

       Defendants.               *

                              *

*FILED MAR 1 0 2006 — DAVID S. NIX, CLERK, BARBOUR COUNTY, ALABAMA*

## SUMMONS

This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

       NOTICE TO:       SAMUEL KLEMENT
                            1101 Hillbrook Road
                            Dothan, Alabama 36303

       The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

                      NAVAN WARD, JR.
                      BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
                      Post Office Box 4160
                      Montgomery, Alabama 36103-4160

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

                                  _____
                                  Circuit Clerk

DATED: _____



**IN THE CIRCUIT COURT OF**
**BARBOUR COUNTY, ALABAMA**

HENRY C. MORRIS, an Individual,   *

     Plaintiff,    *

         *

vs.         *    CIVIL NO:

         *    _____

PFIZER INC;      *
PHARMACIA CORPORATION;   *
MONSANTO COMPANY;    *
G.D. SEARLE, LLC;     *
ROBERT VANDELUNE; SAMUEL  *
KLEMENT; JAMIE PEACOCK;  *
BEN MCCLURKIN, ROD MCWHORTER; *
AND TIFFANY GUCKENBERY   *

     Defendants.    *



FILED
MAR 1 0 2005
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

## SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

    NOTICE TO:     TIFFANY GUCKENBERG
               113 Westchester Drive
               Dothan, Alabama 36301

    The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

          NAVAN WARD, JR.
          BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
          Post Office Box 4160
          Montgomery, Alabama 36103-4160

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

                   _____
                   Circuit Clerk

DATED: _____



## IN THE CIRCUIT COURT OF
## BARBOUR COUNTY, ALABAMA

HENRY C. MORRIS, an Individual,

    Plaintiff,

vs.

PFIZER INC;
PHARMACIA CORPORATION;
MONSANTO COMPANY;
G.D. SEARLE, LLC;
ROBERT VANDELUNE; SAMUEL
KLEMENT; JAMIE PEACOCK;
BEN MCCLURKIN, ROD MCWHORTER;
AND TIFFANY GUCKENBERY

    Defendants.

CIVIL NO: _____



### SUMMONS

  This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

  NOTICE TO:  PHARMACIA CORPORATION
        The Corporation Company; 2000 Interstate Park Drive
        Suite 204; Montgomery, Alabama 36109

  The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

      NAVAN WARD, JR.
      BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
      Post Office Box 4160
      Montgomery, Alabama 36103-4160

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

          _____
          Circuit Clerk

DATED: _____



## IN THE CIRCUIT COURT OF
## BARBOUR COUNTY, ALABAMA

HENRY C. MORRIS, an Individual,　　　　*

　　　　Plaintiff,　　　　　　　　　　*

vs.　　　　　　　　　　　　　　　　*　　CIVIL NO: _____

PFIZER INC;　　　　　　　　　　　*
PHARMACIA CORPORATION;　　　　*
MONSANTO COMPANY;　　　　　　*
G.D. SEARLE, LLC;　　　　　　　　*
ROBERT VANDELUNE; SAMUEL　　*
KLEMENT; JAMIE PEACOCK;　　　　*
BEN MCCLURKIN, ROD MCWHORTER;　*
AND TIFFANY GUCKENBERY　　　　*

　　　　Defendants.　　　　　　　*



### SUMMONS

　　　　This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

**NOTICE TO:**　　　　JAMIE PEACOCK
　　　　　　　　　　1804 Choctaw Street
　　　　　　　　　　Dothan, Alabama 36303

　　　　The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

　　　　　　　　　　NAVAN WARD, JR.
　　　　　　　　　　BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
　　　　　　　　　　Post Office Box 4160
　　　　　　　　　　Montgomery, Alabama 36103-4160

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　Circuit Clerk

DATED: _____



**IN THE CIRCUIT COURT OF**
**BARBOUR COUNTY, ALABAMA**

HENRY C. MORRIS, an Individual,           *
                                          *
    Plaintiff,                            *
                                          *
vs.                                       *       CIVIL NO:
                                          *       _____
                                          *
PFIZER INC;                               *
PHARMACIA CORPORATION;                    *
MONSANTO COMPANY;                         *
G.D. SEARLE, LLC;                         *
ROBERT VANDELUNE; SAMUEL                  *
KLEMENT; JAMIE PEACOCK;                   *
BEN MCCLURKIN, ROD MCWHORTER;             *
AND TIFFANY GUCKENBERY                    *
                                          *
    Defendants.                           *
                                          *

FILED
MAR 1 0 2003
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

## SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

    NOTICE TO:      ROD MCWHORTER
                  109 Hampton Avenue
                  Troy, Alabama 36081

    The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

                **NAVAN WARD, JR.**
                **BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
                **Post Office Box 4160**
                **Montgomery, Alabama 36103-4160**

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

                              _____
                              Circuit Clerk

DATED: _____



**IN THE CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA**

HENRY C. MORRIS, an Individual,       *

      **Plaintiff,**                *

                        *

**vs.**                         *    CIVIL NO:

                        *    _____

                        *

PFIZER INC;                 *

PHARMACIA CORPORATION;   *

MONSANTO COMPANY;       *

G.D. SEARLE, LLC;          *

ROBERT VANDELUNE; SAMUEL   *

KLEMENT; JAMIE PEACOCK;    *

BEN MCCLURKIN, ROD MCWHORTER;  *

AND TIFFANY GUCKENBERY    *

      **Defendants.**           *

                        *



### SUMMONS

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

        **NOTICE TO:**     ROBERT VANDELUNE
                           1206 Rampart Road
                           Dothan, Alabama 36303

    The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

        **NAVAN WARD, JR.**
        **BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
        **Post Office Box 4160**
        **Montgomery, Alabama 36103-4160**

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

                           _____
                            Circuit Clerk

DATED: _____



Monsanto, through its subsidiary companies, was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Monsanto is licensed and registered to do business in the State of Alabama. Defendant Monsanto can be served at its registered agent: CSC Lawyers Incorporating Service, Inc.; 150 South Perry Street; Montgomery, Alabama 36104.

6.      Defendant Pfizer, Inc. (hereinafter "Pfizer") is a Delaware corporation with its principal place of business in New York. At all times relevant hereto, Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Pfizer is licensed and registered to do business in the State of Alabama and may be served through its registered agent at Pfizer, Inc., c/o The Corporation Company; 2000 Interstate Park Drive, Suite 204; Montgomery, Alabama 36109.

7.      Based upon information and belief, Defendant Robert Vandelune, is a sales representative for Defendant Pfizer, and is a resident of Alabama. Defendant Vandelune can be served at his home address: 1206 Rampart Road, Dothan, Alabama 36303.

8.      Based upon information and belief, Defendant Samuel Klement, is a sales representative for Defendant Pfizer, and is a resident of Alabama. Defendant Klement can be served at his home address: 1101 Hillbrook Road, Dothan, Alabama 36303-1977.

9.      Based upon information and belief, Defendant Jamie Peacock, is a sales representative for Defendant Pfizer, and is a resident of Alabama. Defendant Peacock can be served at her home address: 1804 Choctaw, Dothan, Alabama 36303.

10.     Based upon information and belief, Defendant Ben McClurkin, is a sales representative for Defendant Pfizer, and is a resident of Alabama. Defendant McClurkin can be served at his home address: 105 Brentwood Drive, Dothan, Alabama 36303.

11.    Based upon information and belief, Defendant Rod McWhorter, is a sales representative for Defendant Pfizer, and is a resident of Alabama. Defendant McWhorter can be served at his home address: 109 Hampton Avenue, Troy, Alabama 36081.

12.    Based upon information and belief, Defendant Tiffany Guckenberg, is a sales representative for Defendant Pfizer, and is a resident of Alabama. Defendant Guckenbery can be served at her home address: 113 Westchester Drive, Dothan, Alabama 36301.

13.    Fictitious Defendants A, B, C & D, are other legal persons (including retailers, pharmacies, sales representatives and manufacturers) who manufactured, labeled, advertised, marketed, promoted, sold and/or distributed Celebrex (Celecoxib) in Alabama.

14.    Personal jurisdiction and subject matter jurisdiction are appropriate in this court as to all Defendants, as all Defendants have done business in Barbour County, Alabama, either directly or by agent, and have thus availed themselves of this jurisdiction.

15.    The Plaintiff's claims accrued in whole or in part in Barbour County, Alabama and the Plaintiff resided in Barbour County, Alabama at the time of Plaintiff's injury. Plaintiff ingested celebrex (celecoxib) in and while residing in Barbour County, Alabama. Some of these Defendants are foreign corporations, which have been and are currently engaged in business, directly or by authorized agent, in Barbour County, Alabama. Venue and jurisdiction are therefore proper. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

16.    Defendants Searle, Pharmacia, Monsanto, Pfizer, Robert Vandelune, Samuel Klement; Jamie Peacock; Ben McClurkin, Rod McWhorter and Tiffany Guckenbery marketed and distributed this drug in Barbour County, Alabama. Defendants encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects in Barbour County, Alabama. These

4

IN THE CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA

HENRY C. MORRIS, an Individual,          *
                                         *
                                         *
                                         *
        Plaintiff,                       *
                                         *
vs.                                      *      CIVIL NO:
                                         *      _____
                                         *
PFIZER INC;                              *
PHARMACIA CORPORATION;                   *
MONSANTO COMPANY;                        *
G.D. SEARLE, LLC;                        *
ROBERT VANDELUNE; SAMUEL                 *
KLEMENT; JAMIE PEACOCK;                  *
BEN MCCLURKIN, ROD MCWHORTER;            *
AND TIFFANY GUCKENBERY                   *
                                         *
        Defendants.                      *
                                         *
                                         *

**SUMMONS**

        This service by certified mail of this summons is initiated upon the written request of
Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

        NOTICE TO:          MONSANTO COMPANY
                            CSC Lawyers Incorporating Service, Inc.
                            150 South Perry Street
                            Montgomery, Alabama 36104

        The Complaint, which is attached to this summons, is important and you must take
immediate action to protect your rights. You are required to mail or hand-deliver a copy of a
written Answer, either admitting or denying each allegation in the Complaint to,

                            NAVAN WARD, JR.
                            BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
                            Post Office Box 4160
                            Montgomery, Alabama 36103-4160

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED
WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS
AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT
BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER
THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your
Answer with the Clerk of this Court within a reasonable time afterward.

                                        _____
                                        Circuit Clerk

DATED: _____



IN THE CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA

HENRY C. MORRIS, an Individual,    *

     Plaintiff,    *

                    *

vs.    *        CIVIL NO. _____

                    *

PFIZER INC., a Delaware Corporation;    *
PHARMACIA CORPORATION,    *
a Delaware Corporation; MONSANTO    *
COMPANY, a Delaware Corporation;    *
G.D. SEARLE, LLC, a Delaware    *
Corporation; ROBERT VANDELUNE;    *
SAMUEL KLEMENT; JAMIE PEACOCK;*
BEN MCCLURKIN, ROD MCWHORTER;*
AND TIFFANY GUCKENBERY    *
And fictitious Defendants    *
A, B, C and D being those persons, firms    *
or corporations whose actions, inactions,    *
fraudulent suppression, fraud, scheme to    *        TRIAL BY JURY IS REQUESTED
defraud and/or other wrongful conduct    *
caused or contributed to the Plaintiff's    *
injuries and damages, and whose true    *
names and identities are presently    *
unknown to the Plaintiff but will be    *
substituted by amendment when    *
ascertained,    *

                    *

     Defendants.    *



FILED
MAR 1 0 2006
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

## COMPLAINT

    COMES NOW, HENRY C. MORRIS, (hereinafter "Plaintiff"), in an action against

Pfizer, Inc., Pharmacia Corporation, Monsanto Company, G.D. Searle, LLC, Robert Vandelune,

Samuel Klement; Jamie Peacock; Ben McClurkin, Rod McWhorter and Tiffany Guckenbery

(hereinafter "Defendants"), and for Plaintiff's cause of action against the Defendants states as

follows:

**COPY**

1

### Statement Of The Parties

1.      This is a civil action brought by Plaintiff, HENRY C. MORRIS, for injuries

resulting in a stroke.  Plaintiff was prescribed and used the prescription medication Celebrex

(Celecoxib).  This action seeks monetary damages for personal injuries caused by the drugs

named herein and ingested by Plaintiff.

2.      Plaintiff, HENRY C. MORRIS, is over the age of 19 years and is currently a

resident of Barbour County, Alabama.

3.      Defendant G. D. Searle LLC (hereinafter "Searle") was a subsidiary of Pharmacia

Corporation and is upon information, knowledge and belief an Illinois Corporation.  At all times

relevant hereto, Searle, as a subsidiary of Pharmacia Corporation, was in the business of

manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex

(Celecoxib).  Defendant Searle is licensed and registered to do business in the State of Alabama.

Defendant Searle can be served at its registered agent: The Corporation Company; 2000

Interstate Park Drive, Suite 204; Montgomery, Alabama 36109.

4.      Defendant Pharmacia Corporation (hereinafter "Pharmacia") is a Delaware

Corporation with its principal place of business in New Jersey.  At all times relevant to this

action, Pharmacia was in the business of manufacturing, marketing, selling and distributing the

pharmaceutical product Celebrex (Celecoxib).  Defendant Pharmacia is licensed and registered to

do business in the State of Alabama.  Defendant Pharmacia can be served at its registered agent:

The Corporation Company; 2000 Interstate Park Drive, Suite 204; Montgomery, Alabama 36109

5.      Defendant Monsanto Company (hereinafter "Monsanto") was the parent

corporation of Pharmacia and is a Delaware Corporation.  At all times relevant hereto,

2

Defendants aggressively marketed this drug directly to the consuming public through the use of various marketing mediums, including, but not limited to, print and television advertisements in Barbour County, Alabama.

17.     At all times relevant hereto, the Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product in Barbour County, Alabama. Defendants' conduct exhibits an entire want of care as to the safety of this product and a conscious disregard of the foreseeable harm caused by this product in Barbour County, Alabama.

### Statement of the Facts

18.     At all times relevant hereto, Defendants were engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug Celebrex (Celecoxib) throughout the United States.

19.     Celebrex is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Defendants did manufacture, design, package, market and distribute this drug. Defendants encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

20.     Defendants, at all times relevant hereto, knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and

safety in conscious disregard of the foreseeable harm caused by this product. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

21.    HENRY C. MORRIS was 60 years old on or about November 11, 2004, when he suffered a stroke due to his use of Celebrex (Celecoxib).

22.    This Complaint seeks redress for damages sustained by HENRY C. MORRIS, resulting from the use of Celebrex (Celecoxib), manufactured and sold by the Defendants.

23.    The damages sought herein are the direct and proximate result of Defendants' wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug Celebrex (Celecoxib).

24.    Had Defendant properly disclosed the risks associated with using Celebrex (Celecoxib), Plaintiff would not have taken it for treatment of pain associated with injury.

25.    This action is being brought in the Circuit Court of Barbour County, because the amount of recovery sought exceeds the jurisdictional levels of all lower courts.

**Facts Regarding Celebrex's Safety and Defendants' Knowledge Thereof**

26.    The potential for cardiovascular risk of selective COX-2 inhibitors was known to Defendants long before the market launch. By 1997, and prior to the submission of the New Drug Application (the "NDA") for Celebrex, Defendants was aware that, by inhibiting COX-2, Celebrex altered the homeostatic balance between prostacylcin synthesis and thromboxane and thereby, increased the prothrombotic effects of the drugs, causing blood clots to form in those who ingested it. *See* Topol, E.J., *et al.*, *Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors*, *JAMA*, August 22, 2001 at 954.

27.    As Pharmacologist, Dr. Garrett Fitzgerald, of the University of Pennsylvania, reported in an editorial published in *The New England Journal of Medicine* on October 21, 2004,

that it was known as early as 1999 that selective COX-2 inhibitors, such as Celebrex, suppressed the formation of prostaglandin I-2 in healthy volunteers, inhibited platelet aggregation in vitro, and may predispose patients to myocardial infarction or thrombotic stroke.

28.    Based on the studies performed on Celebrex, other COX-2 inhibitors, and basic research on this type of selective inhibitor which had been widely conducted, Defendants knew when Celebrex was being developed and tested that selective COX-2 inhibitors posed serious cardiovascular risks for anyone who took them, and presented a specific additional threat to anyone with existing heart disease or cardiovascular risk factors. Studies show that selective COX-2 inhibitors, including Celebrex, decrease blood levels of a prostacyclin. When those levels fall, the arteries are more vulnerable to clotting, high blood pressure, heart attack, and stroke.

29.    Despite years of studies on selective COX-2 inhibitors, as well as the disturbing new studies specifically analyzing the risks of Celebrex, Defendants failed to take any action to protect the health and welfare of patients, but instead, continued to promote the drug for sale even after the FDA's Drug Safety and Risk Management Advisory Committee and Arthritis Drug Advisory Committee meetings.

### Celebrex and Cox-2 Studies Did Not Show Celebrex to be Safe

30.    The defendants touted the Celebrex Long-Term Arthritis Safety Study ("CLASS") as the primary evidence to support its theory that Celebrex was safer for consumers that could not tolerate traditional NSAIDs in their gastrointestinal system. (CLASS data is found in NDA 20-998/S-009 submitted to the FDA by G.D. Searle on June 12, 2000. CLASS was submitted to the FDA on June 12, 2000 and reviewed by James Witter, M.D., Ph.D. (FDA Medical Officer) on September 20, 2000.)

### CLASS

31.    The FDA Medical Officer Review of the CLASS data proves Celebrex is no more efficacious than other traditional NSAIDS and is harmful to consumers. See generally, FDA

Medical Officer Review, NDA 20-998/S-009 submitted to the FDA by G.D. Searle on June 12, 2000 ("FDA CLASS Review"). On April 7, 2005, the FDA issued an *Alert* noting only minimal information is available regarding Celebrex: "The only available data from a long term comparison of Celebrex to other NSAIDs came from the CLASS study...."

32.    Pfizer misrepresented the data in CLASS by using biased authors. According to the *Washington Post* the CLASS authors were either employees of Pharmacia, Celebrex's manufacturer, or paid consultants of the company. Pfizer needed a study to demonstrate that its Cox-2 inhibitor was safer for the stomach than older cheaper medications: CLASS was designed to be that study. Unfortunately, the results of the completed study revealed the truth – Celebrex offered no gastrointestinal (GI) benefit. Instead of releasing the complete –12-month – results from CLASS, Pfizer had only the first six months of data published in the Journal of American Medicine. JAMA 2000, 48:1455-1460.

33.    "After reviewing the full study, the FDA's arthritis advisory committee concluded that Celebrex offers no proven safety advantage over the two older drugs in reducing the risk of ulcer complications, said FDA spokesman Susan Cruzan." *Washington Post*, August 5, 2001. According to the FDA's review of the CLASS data: "Celecoxib did not demonstrate any statistical superiority to NSAIDs (pooled) or either comparator (diclofenac and ibuprofen) with regards to the primary safety endpoint of CSUGIE (Clinically Significant Upper Gastrointestinal Adverse Events) at any point in the trial although there were trends that favored celecoxib" (FDA CLASS Review)

34.    According to an August 5, 2001 article in the *Washington Post*, editors of the Journal of the American Medical Association (JAMA) and other medical experts, "were flabbergasted" when they realized they had been duped by only being provided with the first six months of CLASS data. The Washington Post reported JAMA editors as saying: "When all of the data were considered, most of Celebrex's apparent safety advantage disappeared."

8

35.     The "scientific double-cross" boosted sales. "[T]he JAMA article and editorial have likely contributed to Celebrex's huge sales. 'When the JAMA article comes out and confirms the hype, that probably has more impact than our labeling does,' said Robert J. Temple, director of medical policy at the FDA's Center for Drug Evaluation and Research." *Washington Post*, August 5, 2001.

36.     "A total of 36 deaths occurred during the [CLASS] study or during post study follow-up: 19 in the celecoxib group, 9 in the diclofenac group and 8 in the ibuprofen group . . . . Most deaths were cardiovascular in nature." FDA CLASS Review, at 54.   The increased numbers of adverse cardiovascular events in the Celebrex group were not surprising as they were also revealed in the original New Drug Application (NDA) submitted for Celebrex. "In the original NDA, myocardial infarction was noted to occur at a higher rate in celecoxib-treated as compared to placebo treated patients.   In the long term trial (Trial 024) that was included in the NDA submission, the predominate (>90%) cause of death for patients taking celecoxib at any does was cardiovascular." FDA CLASS Review at 78.

37.     Public Citizen, a public watchdog organization, reviewed the CLASS data in its entirety.   A complete review reveals the combined anginal adverse events was 1.4% in celecoxib (Celebrex) group versus 1.0% in either NSAID group.   Specifically, the rate of heart attack in the Celebrex was double that of the other two NSAIDs, 0.2% vs. 0.1%, respectively.

38.     The CLASS data proves that Pfizer knew that its first generation Cox-2 inhibitor, Celebrex, caused a disproportionately and statistically significantly high number of adverse cardiovascular events before it was introduced to the market in January 1999.   According to Public Citizen, after CLASS, the FDA recommended a trial to specifically assess the CV risk of COX-2 inhibitors.   The Adenoma Prevention with Celecoxib (APC) trial was intended to be this placebo-controlled trial of Celebrex.

9

**APC Trial**

39.     The Adenoma Prevention with Celecoxib (APC) trial compared the efficacy and safety of celecoxib with placebo. N.ENG. J. MED. 352;11 at 1072.  According to the APC trial, the number of deaths from cardiovascular causes was significantly higher in the Celebrex group when compared to placebo.  (0.1% placebo; 0.4% Celebrex 200mg; and 0.9% Celebrex 400mg). Id. at 1075.

40.     The FDA Reported the APC data as follows[1]:

> In the National Cancer Institute's Adenoma Prevention with
> Celecoxib (APC) trial in patients at risk for recurrent colon polyps,
> a 2-3 fold increased risk of serious adverse CV events was seen for
> Celebrex compared to placebo after a mean duration of treatment
> of 33 months. There appeared to be a dose response relationship,
> with a hazard ratio of 2.5 for Celebrex 200 mg twice daily and 3.4
> Celebrex 400 mg twice daily for the composite endpoint of death
> from CV causes, myocardial infarction (MI), or stroke.

41.     The dosage noted in the study is important for two reasons: first, there appears to be an association between dosage and the increase in adverse cardiovascular events.  See generally, at 1077. Second, most patients increase dosage.  Pfizer knew patients were increasing their dosages as noted in CLASS: "Interestingly ... up to 70% of patients increased their dose for celecoxib." FDA CLASS Review at 74. Thus, Pfizer was aware of the dosage creep.

**Other Celebrex Trials**

42.     Several other Celebrex trials also gave Defendants insight into the cardiovascular risks presented by Celebrex.  The Prevention of Spontaneous Adenomatous Polyps (PreSAP) trial identified the death rate from cardiovascular causes (heart attack, stroke, heart failure, angina, or need for CV procedure) as 3.6% with Celebrex as compared to 2.7% for placebo.

43.     Public Citizen also reviewed the results of Study IQ IQ5-97-02-001 which reflected "the combined rate of all serious cardiovascular adverse events in patients getting a placebo was 2.1% but was greatly increased in those getting celecoxib to 7.7%, a 3.6 fold

---

[1] April 7, 2005 FDA Alert: www.fda.gov/cder/drug/infopage/celebrex/celebrex-hcp.htm.

increase in CV risk in those people taking celecoxib. (p=0.03)"[2].  According to Dr. Sidney

Wolfe, "The study revealed a significantly increased rate (3.6-fold) of serious CV adverse events

and more than a doubling in the rate of CV deaths in people using celecoxib compared to those

using placebo."[3]

### Cox-2 Studies: VIGOR and APPROVe

44.    Pfizer also had access to other data which indicated a cardiovascular risk with its

drugs.  Specifically, Pfizer had knowledge of two studies conducted by Merck related to its Cox-

2 inhibitor Vioxx – Vioxx Gastrointestinal Outcomes Research (VIGOR) and Adenomatous

Polyp Prevention (APPROVe).

### a.    VIGOR

45.    In 2000, The FDA Medical Officer Review of CLASS specifically noted the

VIGOR trial and the concern over serious adverse cardiovascular events.  FDA CLASS Review

at 78.

46.    According to VIGOR (near acronym for Vioxx Gastrointestinal Outcomes

Research) Vioxx patients experienced 20% more serious clinical adverse events (statistically

significant); they experienced 4.6 times more hypertension events serious enough to warrant

discontinuation, 1.7 times more edema events, and 1.85 times as many congestive heart failure

adverse events.  By two measures of cardiovascular events related to blood clots, Vioxx had

twice the risk of naproxen and the results were considered statistically significant.

47.    The VIGOR study comprised the most definitive scientific evidence ever obtained

about pharmaceutical products.  It was a large, randomized clinical trial, the gold standard of

medical research.  It was a safety study with endpoints set in advance.  As Merck stated many

times, it was designed to provide definite proof of safety, convincing enough to silence the most

skeptical critics.  In medical terms, the VIGOR results raised the question of whether selective

---

[2] *Public Citizen*, January 26, 2005, Dr. Sidney M. Wolfe.
[3] Id.

11

inhibition of Cox-2 was a monumental mistake from the start. While the NSAID risks to the GI system were real and sometimes fatal; they were dwarfed by the cardiovascular risks of the arthritis population that needed these drugs on a daily basis. All makers of NSAIDs, including Defendants, were aware of these results.

### b.    APPROVe

48.     Anxious to put safety questions surrounding Vioxx to rest, Merck designed another large scale trial, Adenomatous Polyp Prevention (APPROVe), which was intended to test the drug's ability to prevent or shrink colon polyps, but would also compare the cardiovascular safety of Vioxx to a placebo control. According to the analysis conducted by Public Citizen of the APPROVe data: Vioxx "doubled the risk of any thrombotic cardiovascular event" and "doubled the risk of MI (myocardial infarction a/k/a heart attack)[4]. *Public Citizen*, January 24, 2005, at 15. Despite the available Celebrex data and other information related to Vioxx, Pfizer never paused to re-evaluating the Celebrex data and studies.

49.     The scientific data available during and after Celebrex's approval process made clear to Defendants that their formulation of Celebrex would cause a higher risk of blood clots, stroke and/or myocardial infarctions among Celebrex consumers, alerting them to the need to do additional and adequate safety studies.

50.     As stated by Dr. Topol on October 21, 2004, in *The New England Journal of Medicine*, outlining Defendants' failure to have conducted the necessary trials before marketing to humans " . . . it is mandatory to conduct a trial specifically assessing cardiovascular risk and benefit of (COX-2 inhibitors). Such a trial needed to be conducted in patients with established coronary artery disease, who frequently have coexisting osteoarthritis requiring medication and have the highest risk of further cardiovascular events."

---

[4] Although Merck claims that the two-fold risk of heart attacks and strokes seen in the APPROVe trial did not emerge until after patients had been taking the drug for 18 months, closer analysis indicates that significant increase in risk of heart attack was evident in as little as 4 months time.

12

51.   Dr. Topol was also the author on the study published in August 2001 in JAMA (listed above) that reported an increased risk of thrombotic cardiovascular events in persons who used COX-2 inhibitors.

52.   Based upon readily available scientific data, Defendants knew, or should have known, that their pre-approval testing of Celebrex did not adequately represent the cross-section of individuals who were intended consumers and therefore, likely to take Celebrex. Therefore, Defendants' testing and studies were grossly inadequate.

53.   Had Defendants done adequate testing prior to approval and "market launch," rather than the extremely short duration studies done on the small size patient base that was actually done the defendants' scientific data would have revealed significant increases in incidence of strokes and myocardial infarctions among the intended and targeted population of Celebrex consumers. Adequate testing would have shown that Celebrex possessed serious side effects. Defendants should have taken appropriate measures to ensure that their defectively designed product would not be placed in the stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

54.   In fact, post-market approval data did reveal increased risks of clotting, stroke and myocardial infarction, but Defendants intentionally suppressed this information in order for them to gain significant profits from continued Celebrex sales.

55.   Defendants' failure to conduct adequate testing and/or additional testing prior to "market launch" was based upon their desire to generate maximum financial gains for themselves and to gain a significant market share in the lucrative multi-billion dollar COX-2 inhibitor market.

56.   At the time Defendants manufactured, advertising, and distributed Celebrex to consumers, Defendants intentionally or recklessly ignored and/or withheld information regarding the increased risks of hypertension, stroke and/or myocardial infarctions because Defendants knew that if such increased risks were disclosed, consumers would not purchase Celebrex, but

13

instead would purchase other cheaper and safer NSAIDs.

**Facts Regarding Defendants' Marketing and Sale of Celebrex**

57.    Such an ineffective and unreasonably dangerous drug could only be widely prescribed as a result of a tremendous marketing campaign. In addition to being aggressive, the Defendants' marketing campaign was fraudulent and misleading. But for fraudulent and misleading advertising, consumers, including the Decedent, would not have purchased Celebrex, a more costly prescriptive drug, ineffective for its intended purposes.

58.    On January 10, 2005 the FDA issued Pfizer a written reprimand for its promotional activities. The reprimand reads: "These five promotional pieces [3 Celebrex and 2 Bextra] variously: omit material facts ... and make misleading safety, unsubstantiated superiority, and unsubstantiated effectiveness claims." This was not the Defendants first offense related to its Cox-2 inhibitors. The FDA also reprimanded Pfizer on October 6, 1999 noting: "DDMAC has reviewed these promotional pieces and has determined that they are false or misleading because they contain unsubstantiated comparative claims, misrepresentations of Celebrex's safety profile, and are lacking in fair balance." Ultimately, on April 8, 2005, the New York Times reported the results of an FDA advisory panel: "The February advisory panel voted overwhelmingly that the company should never again advertise the drug [Celebrex]."

59.    At all times relevant herein, Defendants engaged in a marketing campaign with the intent that consumers would perceive Celebrex as a safer and better drug than its other NSAIDs and, therefore, purchase Celebrex.

60.    Defendants widely and successfully marketed Celebrex throughout the United States by, among other things, conducting promotional campaigns that misrepresented the efficacy of Celebrex in order to induce a widespread use and consumption. Celebrex was represented to aid the pain and discomfort of arthritis, osteoarthritis, and related problems. Defendants made misrepresentations by means of media advertisements, and statements contained in sales literature provided to Decedent's prescribing physicians.

14

61.    Despite knowledge of the dangers presented by Celebrex, Defendants and Defendants' predecessors in interest, through their officers, directors and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of Defendants' product, Celebrex, and failed to warn the public, including Decedent, of the serious risk of injury occasioned by the defects inherent in Defendants' product, Celebrex.  Defendants and their officers, agents and managers intentionally proceeded with the inadequate safety testing, and then the manufacturing, sale and marketing of Defendants' product, Celebrex, knowing that persons would be exposed to serious potential danger, in order to advance their own pecuniary interests.  Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety of the public and particularly of Decedent.

62.    In an elaborate and sophisticated manner, Defendants aggressively marketed Celebrex directly to consumers and medical professionals (including physicians and leading medical scholars) in order to leverage pressure on third party payers, medical care organizations, and large institutional buyers (*e.g.*, hospitals) to include Celebrex on their formularies.  Faced with the increased demand for the drug by consumers and health care professionals that resulted from Defendants' successful advertising and marketing blitz, third party payers were compelled to add Celebrex to their formularies.  Defendants' marketing campaign specifically targeted third party payors, physicians, and consumers, and was designed to convince them of both the therapeutic and economic value of Celebrex.

63.    Defendants represented that Celebrex was similar to ibuprofen and naproxen but was superior because it lacked any of the common gastrointestinal adverse side effects associated with these and other non-steroidal anti-inflammatory drugs ("NSAIDS").  For instance, NSAIDS can, in certain patients, cause gastrointestinal perforations, ulcers and bleeding with long-term use.  Defendants promoted Celebrex as a safe and effective alternative that would not have the same deleterious and painful impact on the gut, but that would be just as effective, if not more so, for pain relief.

15

64.     Celebrex possessed dangerous and concealed or undisclosed side effects, including the increased risk of serious cardiovascular events, such as heart attacks, unstable angina, cardiac clotting, deep vein thrombosis, hypertension, and cerebrovascular events, such as strokes. In addition, Celebrex was no more effective than traditional and less expensive NSAIDs and, just like traditional NSAIDs, carried a risk of perforations, ulcers, and gastrointestinal bleeding. Defendants chose not to warn about these risks and dangers.

65.     Defendants knew of these risks before the U.S. Food and Drug Administration (the "FDA") approved Celebrex for sale, but Defendants ignored, downplayed, suppressed, omitted, and concealed these serious safety risks and denied inefficacy in its promotion, advertising, marketing, and sale of Celebrex. Defendants' omission, suppression, and concealment of this important information enabled Celebrex to be sold to, and purchased, or paid for by, the Consumers at a grossly inflated price.

66.     Consequently, Celebrex captured a large market share of anti-inflammatory drugs prescribed for and used by patients. In 2004 alone, sales of Celebrex exceeded $2 billion, despite the significantly higher cost of Celebrex as compared to other pain relievers in the same family of drugs.

67.     Because Defendants engaged in a promotional and marketing campaign that featured an advertising blitz directly targeted to consumers, that touted Celebrex as a safer drug than other drugs in its class, while uniformly failing to disclose the health risks of Celebrex, Defendants were able to justify pricing Celebrex significantly higher than the cost of generic aspirin. In reality, that price inflation was not justified. Had Defendants disclosed the truth about Celebrex, Defendants would not and could not have reaped the billions of dollars in Celebrex sales that were achieved as a direct result of the concealment, omission, suppression, and obfuscation of the truth.

68.     The Defendants intentionally, deliberately, knowingly, and actively concealed, omitted, suppressed, and obfuscated important and material information regarding the risks, dangers, defects, and disadvantages of Celebrex from Decedent, the public, the medical

16

community, and the regulators. This concealment and omission was deliberate, knowing, active, and uniform, was intended to induce and maximize sales and purchases of Celebrex, and prevented Decedent from obtaining all the material information that would be important to their decisions as reasonable persons to purchase, pay for, and/or use Celebrex.

69.    Defendants' systematic, active, knowing, deliberate, and uniform concealment, omissions, suppression, and conduct caused Decedent to purchase, pay for, and/or use Celebrex; and caused Decedent's losses and damages as asserted herein.

70.    Had Defendants done adequate testing prior to approval and "market launch," the defendants' scientific data would have revealed significant increases in stroke and myocardial infarction amongst the intended population of Celebrex consumers. Adequate testing would have shown that Celebrex possessed serious side effects. Defendants should have taken appropriate measures to ensure that their defectively designed product would not be placed in the stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

71.    In fact, post-market approval data did reveal increased risks of clotting, stroke and myocardial infarction, but Defendants intentionally suppressed this information in order for them to gain significant profits from continued Celebrex sales.

72.    Defendants' failure to conduct adequate testing and/or additional testing prior to "market launch" was based upon their desire to generate maximum financial gains for themselves and to gain a significant market share in the lucrative multi-billion dollar COX-2 inhibitor market.

73.    At the time Defendants manufactured, advertising, and distributed Celebrex to consumers, Defendants intentionally or recklessly ignored and/or withheld information regarding the increased risks of hypertension, stroke and/or myocardial infarctions because Defendants knew that if such increased risks were disclosed, consumers would not purchase Celebrex, but instead would purchase other cheaper and safer NSAID drugs.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

74.     Plaintiff repeats and realleges each of the allegations contained in this Complaint.

75.     Defendants, directly or indirectly, negligently and/or defectively designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Celebrex (Celecoxib).

76.     At all times material hereto, Defendants had a duty to users and/or consumers of Celebrex (Celecoxib), including Plaintiff, to exercise reasonable care in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Celebrex (Celecoxib).

77.     Defendants breached that duty and were negligent in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Celebrex (Celecoxib) in that:  Celebrex (Celecoxib) was defective when put on the market by Defendants; that with such defect, Celebrex (Celecoxib) was reasonably certain to be dangerous when put to normal use; and that Defendants failed to use reasonable care in designing or making Celebrex (Celecoxib) or in inspecting it for defects.  Specifically, Defendants breached their duty by, among other things:

a.      Failing to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, to the potential risks and serious side effects of the drug;

b.      Failing to adequately and properly test and inspect the drug before placing the drug on the market;

c.      Failing to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including,

18

but not limited to, heart attack, stroke, life threatening allergic and/or skin reactions and/or death.

      d.    Failing to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and other serious side effects associated with the drug, including, but not limited to, heart attack, stroke, life threatening allergic and/or skin reactions and/or death;

      e.    Failing to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

      f.    Failing to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug;

      g.    Encouraging misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiff, in order to make a profit from sales.

78.    Defendants knew or should have known that Celebrex (Celecoxib) caused unreasonably dangerous risks and serious side effects of which users and/or consumers of the drug, including Plaintiff, were not aware.  Defendants nevertheless advertised, promoted, marketed, sold, distributed and/or supplied Celebrex (Celecoxib) knowing that these were safer methods for pain relief.

79.    As a direct, legal, proximate and producing result of the negligence of Defendants, Plaintiff sustained substantial injuries including, among other things, a stroke.  This injury caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life.  In addition, Defendants' negligence caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

80.    As a direct, legal, proximate and producing result of the negligence of Defendants, Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

81.    As a direct, legal, proximate and producing result of the negligence of Defendants, Plaintiff required reasonable and necessary health care treatment and services and had incurred expenses therefore. Defendants' negligence was a contributing cause of Plaintiff's injuries and Plaintiff's economic and non-economic loss. As a result of Defendant's negligence, Plaintiff has suffered and will continue to suffer.

82.    By reason of the foregoing, Plaintiff was damaged by the negligence and wanton and willful recklessness of the Defendants. The amount sought herein exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction over this matter.

## SECOND CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY
## DEFECTIVE DESIGN

83.    Plaintiff repeats and realleges each of the allegations contained in this Complaint.

84.    At all times material hereto, Defendants have engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the drug Celebrex (Celecoxib), which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff.

85.    At all times material hereto, Celebrex (Celecoxib) was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and

unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

    a.    When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiff, to risks which exceeded the benefits of the drug;

    b.    The drug was insufficiently tested;

    c.    The drug caused harmful side effects that outweighed any potential utility;

    d.    The drug was not accompanied by adequate labeling or instructions for use to fully apprise the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with its use;

    e.    In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that Celebrex (Celecoxib) should not have been marketed in that condition.

86.    At all times the drug Celebrex (Celecoxib) was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach, users and/or consumers of the drug across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

87.    At all times, Plaintiff used Celebrex (Celecoxib) for its intended or reasonably foreseeable purpose.

88.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Celebrex (Celecoxib), Plaintiff sustained substantial

injuries including, among other things, a stroke. These injuries caused extensive pain and

suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life.

In addition, the defective and unreasonably dangerous condition of Celebrex (Celecoxib) caused

Plaintiff to expend substantial sums of money for medical, hospital, and related care.

89.    As a direct, legal, proximate and producing result of the defective and

unreasonably dangerous condition of Celebrex (Celecoxib), Plaintiff was injured in health,

strength and activity and suffered physical injuries as well as mental anguish. All of said

injuries, caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to

physical injury and damages.

90.    As a direct, legal, proximate and producing result of the defective and

unreasonably dangerous condition of Celebrex (Celecoxib), Plaintiff required reasonable and

necessary health care treatment and service and had incurred expenses therefore.

91.    By reason of the foregoing, Plaintiff was damaged by the wanton and willful

recklessness of the Defendants, who will be liable to Plaintiff. The amount sought herein

exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over

this matter.


### THIRD CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY
### FAILURE TO WARN

92.    Plaintiff repeats and realleges each of the allegations contained in this Complaint.

93.    Celebrex (Celecoxib) was defective and unreasonably dangerous when it left the

possession of Defendants in that it contained warnings insufficient to alert the medical,

pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including

Plaintiff, to the dangerous risks and reactions associated with Celebrex (Celecoxib) when used

for its intended or reasonably foreseeable purpose. Those dangerous risks and reactions

22

included, but were not limited to, heart attack, stroke, life threatening allergic and/or skin reactions, other serious and life threatening side effects, and/or death.

94.    At all times, Plaintiff used the drug for its intended or reasonably foreseeable purpose.

95.    Plaintiff could not have discovered any defect in the drug through the exercise of care.

96.    Defendants, as manufacturers of a prescription drug, is held to the level of knowledge of an expert in the field.

97.    The warnings that were given by Defendants were not accurate or clear and/or were ambiguous.

98.    Defendants had a continuing duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with the use of Celebrex (Celecoxib).

99.    As a direct, legal, proximate and producing result of Defendant's failure to warn, Plaintiff sustained harm, including, among other things, a stroke. These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life. In addition, Defendants' failure to warn caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

100.    As a direct, legal, proximate and producing result of Defendants' failure to warn, Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injuries and damages.

101.    As a direct, legal, proximate and producing result of Defendants' failure to warn, Plaintiff required reasonable and necessary health care treatment and services and had incurred expenses therefore.

23

102.    By reason of the foregoing, Plaintiff was damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY OF MERCHANTABILITY

103.    Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

104.    Defendants Searle, Pharmacia, Monsanto, Pfizer, Robert Vandelune, Samuel Klement; Jamie Peacock; Ben McClurkin, Rod McWhorter and Tiffany Guckenbery made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Celebrex.

105.    Defendants, through their agents and/or sales representatives, made representations of the safety and efficacy of their product, Celebrex.

106.    Celebrex does not conform to the express representations made through the Defendants' advertising and marketing efforts

107.    Celebrex does not conform to the express representations made by Defendants' agents and/or sales representatives.

108.    As a direct, legal, proximate and producing result of the express representations made by Defendants', through their advertising and marketing efforts, and by their agents and/or sales representatives, Plaintiff sustained harm. Defendants' conduct in this matter was a contributing cause of injuries and damages suffered by Plaintiff, including, among other things, a stroke.

109.    Wherefore, this Plaintiff demands judgment against Defendants in such an

24

amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

110.    Plaintiff repeats and realleges each of the allegations contained in the Complaint.

111.    Defendant is a "merchant" as defined in Alabama Code § 7-2-104.

112.    Celebrex (Celecoxib) is a "good" as defined Alabama Code § 7-2-105.

113.    At the time that Defendants designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Celebrex (Celecoxib), Defendants knew of the intended, reasonably foreseeable and/or ordinary use of Celebrex (Celecoxib) and impliedly warranted the drug to be of merchantable quality and safe and fit for such use.

114.    Plaintiff, in ingesting Celebrex (Celecoxib), reasonably relied upon the skill and judgment of Defendants as to whether Celebrex (Celecoxib) was of merchantable quality and safe and fit for its intended, reasonably foreseeable and/or ordinary use.

115.    In breach of the implied warranty given by Defendants, Celebrex (Celecoxib) was not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary use because the product was and is unmerchantable, in a defective condition and unreasonably dangerous and unfit for the intended, reasonably foreseeable and/or ordinary purpose for which it was intended as described above.

116.    In breach of the implied warranty given by Defendants, Celebrex (Celecoxib) was not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary use because, among other things:

> a.    Use of Celebrex (Celecoxib) carried a risk of, among other things, a heart
> attack, stroke and/or death and other serious and life threatening side effects;

b.    Defendants failed to include adequate warnings with the drug that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects of the drug;

c.    Defendants failed to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the potential risks and serious side effects associated with the use of the drug.

117.    As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiff sustained substantial injuries including, among other things, a stroke. These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life. In addition, Defendants' failure to warn caused Plaintiff to expend substantial sums of money for medical, hospital and related care.

118.    As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiff has been injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injuries and damages.

119.    As a direct, legal, proximate and producing result of Defendants' breach of warranty, Plaintiff required reasonable and necessary health care treatment and services and had incurred expenses therefore.

120.    As a result of Defendant's breach of warranty, Plaintiff has suffered and will continue to suffer.

121.    By reason of the foregoing, Plaintiff has been damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

26

## SIXTH CAUSE OF ACTION
## FRAUD

122.    Plaintiff repeats and realleges each of the allegations contained in the Complaint.

123.    Defendants recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, the safety and efficacy of the drug and/or recklessly, knowingly, intentionally and fraudulently concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, material, adverse information regarding the safety and efficacy of Celebrex (Celecoxib).

124.    Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, with the intent that they reach users and/or consumers of the drug, including Plaintiff.

125.    Defendants either knew or should have known that the representations were false.

126.    Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of the drug with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting Celebrex (Celecoxib) as a pain reliever.

127.    Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Celebrex (Celecoxib) in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

128.    Defendants made these misrepresentations and actively concealed adverse information at a time when Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.  Specifically, Defendants misrepresented to and/or actively concealed from

27

the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, that:

      a.    These had been insufficient studies regarding the safety and efficacy of the drug;

      b.    The drug was fully and adequately tested, despite knowing that these had been insufficient or inadequate testing of the drug;

      c.    Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious prothrombotic and allergic and/or skin reactions, including, but not limited to, adverse cardiovascular events and/or Stevens-Johnson Syndrome/Toxic Epidermal Necrolysis;

      d.    Defendants knew or should have known of reports of increased heart attacks, allergic and/or skin reactions and/or strokes associated with the use of the drug;

      e.    Defendants knew or should have known of the greatly increased risk of developing heart attacks, allergic and/or skin reactions and/or strokes associated with use of Celebrex (Celecoxib); yet, despite this they were downplaying the risk of the drug.

129.    The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representatives, employees, distributors, agents and/or detail persons.

130.    The misrepresentations of and/or active concealment by Defendants constitute a continuing tort. Indeed, through Defendants' product inserts, Defendants continued to misrepresent the potential risks and serious side effects associated with the use of Celebrex (Celecoxib). Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of Celebrex (Celecoxib) in a timely manner, yet they failed to provide such warning.

131.    Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest Celebrex (Celecoxib) to Plaintiff's detriment.

132.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff sustained substantial injuries including, among other things, a stroke. These injuries caused extensive pain and suffering and severe emotional distress for Plaintiff, and substantially reduced Plaintiff's ability to enjoy life. In addition, the misrepresentations of Defendants caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

133.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff has been injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages.

134.    As a result of Defendant's fraud, Plaintiff has suffered and will continue to suffer.

135.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff required reasonable and necessary health care treatment and service and had incurred expenses therefore.

136.    By reason of the foregoing, Plaintiff has been damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

137.    Plaintiff repeats and realleges each of the allegations contained in the Complaint.

138.    Defendants negligently misrepresented or failed to exercise reasonable care in representing to the medical, pharmaceutical and/or scientific communities, and users and/or

29

consumers of the drug, including Plaintiff, the safety and efficacy of the drug and/or negligently concealed or failed to exercise reasonable care by concealing and failing to disclose to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, material, adverse information regarding the safety and efficacy of Celebrex (Celecoxib).

139.    Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, with the intent that they reach users and/or consumers of the drug, including Plaintiff.

140.    Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Celebrex (Celecoxib) in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

141.    Defendants either knew or should have known that the representations were false.

142.    Defendants knew or should have known that the misrepresentations and/or omissions concerning the safety and efficacy of the drug would be relied upon by the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, in selecting Celebrex (Celecoxib) as a pain reliever.

143.    Defendants made these misrepresentations and actively concealed adverse information at a time when Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.  Specifically, Defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, that:

      a.    These had been insufficient studies regarding the safety and efficacy of the drug;

b.    The drug was fully and adequately tested; despite the fact that these had

been insufficient or inadequate testing of the drug;

c.    Prior studies, research, reports and/or testing had been conducted linking

the use of the drug to serious adverse cardiovascular events, allergic and/or skin reactions

and strokes;

d.    Defendants knew or should have known of reports of strokes associated

with the use of the drug;

e.    Defendants knew or should have known of the greatly increased risk of

heart attacks, strokes, life threatening allergic and/or skin reactions and/or death and other

serious and life threatening side effects associated with the drug; yet, despite this was

downplaying the risks of the drug.

144.    The misrepresentations of and/or active concealment by Defendants were

perpetuated directly and/or indirectly by Defendants, their sales representatives, employees,

distributors, agents and/or detail persons.

145.    The misrepresentations of and/or active concealment by Defendants constitute a

continuing tort.  Indeed, through Defendants' product inserts, Defendants continued to

misrepresent the potential risks and complications associated with Celebrex (Celecoxib).

Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific

communities, and users and/or consumers of the drug, including Plaintiff, about the potential

risks and serious side effects associated with the use of Celebrex (Celecoxib) in a timely manner,

yet it failed to provide such warning.

146.    Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or

active concealment of Defendants to purchase and ingest Celebrex (Celecoxib) to Plaintiff's

detriment.

147.    As a direct, legal, proximate and producing result of the misrepresentations of

Defendants, Plaintiff sustained harm, including, among other things, a stroke.  These injuries

31

have caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life. In addition, the misrepresentations of Defendants caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

148. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages.

149. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff required reasonable and necessary health care treatment and service and had incurred expenses therefore.

150. As a result of the misrepresentations of the Defendants, Plaintiff has suffered and will continue to suffer.

151. By reason of the foregoing, Plaintiff has been damaged by the wanton and willful recklessness of these Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter.

WHISEFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiff recovers damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rates, and punitive damages, and that Plaintiff has such other and further relief, both general and special, at law and in equity, to which Plaintiff may be justly entitled under the facts and attending circumstances.

## DEMAND FOR JURY TRIAL

COME NOW Plaintiff and demands a trial by jury on all issues presented herein.

Signed this 10th day of March, 2006.


L. Shane Seaborn /aso

JERE L. BEASLEY (BEA020)
GERALD B. TAYLOR, JR. (TAY026)
ANDY D. BIRCHFIELD, JR. (BIR006)
PAUL SIZEMORE (SIZ004)
NAVAN WARD, JR. (WAR062)
SHANE SEABORN  (SEA027)


**OF COUNSEL:**

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 telephone
(334) 954-7555 facsimile

and

SHANE SEABORN
MYRON PENN
Penn & Seaborn, LLC
Post Office Box 688
Clayton, Alabama 36016
(334) 775-9778 telephone
(334) 775-9779 facsimile

IN THE CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA

HENRY C. MORRIS, an Individual,　　　*
　　　　　　　　　　　　　　　　　　*
　　　Plaintiff,　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
vs.　　　　　　　　　　　　　　　　*　　CIVIL NO. _C V 06 - 019_
　　　　　　　　　　　　　　　　　　*
PFIZER INC., a Delaware Corporation;　*
PHARMACIA CORPORATION,　　　　*
a Delaware Corporation; MONSANTO　*
COMPANY, a Delaware Corporation;　*
G.D. SEARLE, LLC, a Delaware　　*
Corporation; ROBERT VANDELUNE;　*
SAMUEL KLEMENT; JAMIE PEACOCK;*
BEN MCCLURKIN, ROD MCWHORTER;*
AND TIFFANY GUCKENBERY　　　*
And fictitious Defendants　　　　　*
A, B, C and D being those persons, firms　*
or corporations whose actions, inactions,　*
fraudulent suppression, fraud, scheme to　*　　TRIAL BY JURY IS REQUESTED
defraud and/or other wrongful conduct　*
caused or contributed to the Plaintiff's　*
injuries and damages, and whose true　*
names and identities are presently　　*
unknown to the Plaintiff but will be　　*
substituted by amendment when　　　*
ascertained,　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　Defendants.　　　　　　　　　*

*[Stamp: MAR 10 2006 — DAVID S. NIX, CLERK, BARBOUR COUNTY, ALABAMA]*

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 33 and 34 of the *Alabama Rules of Civil Procedure*, the Plaintiff propounds the following interrogatories and requests for production of documents to be answered by Defendants G.D. Searle, LLC, Pharmacia Corporation, Monsanto Company, Pfizer, Inc., Robert Vandelune, Samuel Klement; Jamie Peacock; Ben McClurkin, Rod McWhorter and Tiffany Guckenbery (hereinafter "Defendants"), in the manner and form prescribed by law:

### Definitions

**COPY**

1.    "Documents" shall mean writing of every kind, source and authorship, both originals and all non-identical copies thereof, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you or intended for or transmitted to any other person or entity, including, without limitation, any government agency, department, administrative entity or personnel. The term shall include handwritten, typewritten, printed, photocopied, photographic or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems.

2.    For purposes of illustration and not limitation, the term "Documents" shall include: correspondence, transcripts of testimony, letters notes, reports, papers, files, books, records, contracts, agreements, telegrams, teletypes and other communications sent or received, diaries, calendars, logs, notes or memoranda of telephonic or face-to-face conversations, drafts, work papers, agendas, bulletins, notices, circulars, inserts, announcements, instructions, schedules, minutes, summaries, notes and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations, bills, statements and other records of obligations and expenditures, canceled checks, vouchers, receipts and other records of payments, ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data, analyses, statements, interviews, affidavits, printed matter (including published books, articles, speeches and newspaper clippings), press releases, charts, drawings, specifications, manuals, brochures and memoranda of all kinds to and from any persons, agencies or other entities.

3.    "Identify", when used in reference to a person, means to state that person's full name, name of his or her employer, job title or position, and that person's last known residence and business addresses and telephone numbers.

4.    Any reference to the word medicine, pharmaceutical, drug or product is intended to and shall mean those products known generally as "Celebrex (Celecoxib)" and any and all other trade names or trade marks under which Celebrex (Celecoxib)" have been tested, sold or marketed.

## Interrogatories

1.    State the legal name of these Defendants, and the names and titles of all persons answering the following discovery on behalf of these Defendants.

2.    State the relationship between these Defendants and any other Defendants in this lawsuit. Produce any documents that are evidence of such relationship.

3.    Identify each employee or representative of these Defendants, or independent contractor, who had any responsibility for sales or marketing of Celebrex (Celecoxib) in Barbour County, Alabama.   Intended to be included in the information sought by this interrogatory are the individuals responsible for sales and/or marketing on a statewide, regional and national level.  This requests specific areas, with specific boundaries, i.e., counties, cities, south or north of specific highways, etc. which were included in each representative's sales territory.

4.    State the revenue of these Defendants from the sale of Celebrex (Celecoxib), both cumulatively and for each year since it was first marketed in the United States.

   a.  And, for each person identified in Interrogatory 3 above, please list all revenues directly or indirectly attributable to each person's sales/marketing efforts within their territorial region.

3

5.    Identify each person, by name, current business and home address and telephone number, that is most knowledgeable about the following, substantive areas:

    a.    The development of Celebrex, specifically including, but not limited to its alleged COX-2 selectivity, or COX-2 specific qualities.

    b.    Presentation of investigative new drug application to the FDA.

    c.    Presentation of new drug application (NDA) to the FDA, including all scientific/pharmacological/toxicological information included therein, as well as all adverse reports.

    d.    The selection criteria for all study/investigative study patient participants, including each and every criteria considered for study participation.

    e.    Marketing of Celebrex internationally, nationally, regionally and within the State of Alabama, including, but not limited to, the frequency and context of all detail calls made within the State of Alabama, and by whom.

    f.    Training of inside and outside detail/sales representatives.

6.    Identify each person whom you anticipate may testify as an expert witness in this action, and for each such person, state:

    a.    The subject matter on which the expert is expected to testify.

    b.    The substance of the facts and opinions to which the expert is expected to testify.

    c.    A summary of the grounds for each opinion.

    d.    All civil actions or other legal proceedings in which such person has testified, by deposition or at trial, since January 1, 1995, including for each action or proceeding the name of the case, the jurisdiction/court in which such action or proceeding is or was pending, the case number, name and address of opposing counsel, and whether the testimony was by deposition, at trial or other hearing, by affidavit or other sworn

4

declaration, or any combination of the foregoing. In addition, produce a current resume, curriculum vitae or similar other detailed statement of the person's background and qualifications.

7. What instructions were given to your sales representatives for providing information to physicians or responding to physician inquiries about the risks or potential risks associated with Celebrex?

8. Did these Defendants prepare any information about Celebrex for direct dissemination to the patient and/or his/her family, or for other direct advertising or marketing to consumers, including, but not limited to patient hand-out, instructions to doctors for answering patient inquiries, or videos? If so, please produce copies of these materials, and for each set of materials, state the date of initial preparations and the inclusive dates during which such materials were to be used.

9. State whether any cost-benefit or similar analyses were performed regarding Celebrex. If so, please produce copies of all documents reflecting or relating to any such analysis.

10. Identify the names of the agencies, divisions, or committees or other groups within these Defendants' corporation that participated in the developing, manufacturing, distributing, and/or supplying of Celebrex, and identify and state the duties of all persons who served on these committees and/or agencies.

11. At any time prior to or during the development of Celebrex did these Defendants conduct tests or studies of any type, the results of which contain, or possibly contain, or reflect information relative to the possibilities of complications and/or adverse effects which have occurred in patients following the use of Celebrex? If so, please state:

a. The number of any such tests or studies.

b. An accurate description of the tests, prototypes, protocols and/or designs.

    c.  The inclusive dates during which any and all such tests or studies were actually conducted.

    d.  The test numbers of each and all such tests.

    e.  The dates that the report of each such test or study was prepared.

    f.  Describe in detail how each such test or study was conducted.

    g.  Describe the results of all and each such tests or study with regard to information relative to the possibility of complications.

    h.  Identify, for each test or study, all persons who conducted such test or study.

    i.  The title or name of the test or study.

12.    Explain in detail the records, which these Defendants keep of consumer complaints that are made to it. Produce any and all copies of the complaints, regardless of the manner in which originally made, relating to Celebrex.

13.    Give the name, address, and job title of the person employed or retained by these Defendants most familiar with maintaining the records of consumer complaints or adverse event reports that are made regarding Celebrex.

14.    State the full extent of these Defendants' knowledge relating to the hazards, contraindications, side effects and adverse effects, reactions or events relating to the use of Celebrex.

15.    Did these Defendants have specific and/or express knowledge of <u>any</u> adverse events (possibly, probably, or definitely causally related to Celebrex in the opinion of, or as concluded, determined, or diagnosed by the reporting source, i.e., the reporting/prescribing/treating physician, any principal or co-investigator, not in the opinion, or as concluded, determined, or diagnosed by Defendants) related to Celebrex reported or received from any sources within, or outside the U.S., including but not

6

limited to, Japan, the Philippines, Great Britain, Australia, Europe, South America, Central America, North America or New Zealand at any time prior to the submission of the NDA for Celebrex?

This interrogatory includes, but is not limited to, any adverse event reports or information from foreign human Celebrex clinical trials, post-marketing reports or medical journals, seminars, letters, memos, correspondence, personal notes, e-mails or other forms of electronic data transmission. This request includes any information regarding adverse events which were potentially related to Celebrex, whether contained or included in the standard U.S. adverse event report form, or a similar form or method of reporting adverse drug events which are used in foreign countries, including but not limited to Japan, Australia, the Philippines, Great Britain, South America, Central America, North America, New Zealand or Europe.

16. Please state the date on which Celebrex was first marketed in any county, identifying country with date.

17. Please identify for these Defendants, for themselves or any of their associated companies, divisions, officers and/or employees, all fines, sanctions, fees or penalty assessments of any type paid to any governmental agency or regulatory authority that in any manner relates to the development and marketing of any drug or pharmaceutical product. Your answer should include information identifying each such payment made by these Defendants, for themselves or any of their associated companies, divisions, officers and/or employees from January 1, 1990 to the present, including the payee, the date of the payment, the amount and how such payment was identified or charged off in the Defendants' accounting records.

18.    Identify by name, address, telephone number, and employer of each person who, on behalf of these Defendants, had any contact with employees of the FDA regarding Celebrex. This interrogatory is intended to encompass and extend beyond a request for the names of employees of Defendants, and is specifically intended to include, but not be limited to, independent contractors and lobbyists that had any contact with the FDA regarding Celebrex, whether prior to, during the pendency of, or subsequent to the submission of the NDA relative to Celebrex.

19.    Identify by name, address, telephone number, and employer each person who, on behalf of these Defendants, had any contact with members of Congress or the Senate, or any individual on a Congressperson's or Senator's paid or volunteer staff regarding Celebrex. This interrogatory is intended to encompass and extend beyond a request for the names of employees of Defendants, and is specifically intended to include, but not be limited to, independent contractors and lobbyists that had any contact with members of Congress or the Senate, or any individual on a Congressman's or Senator's paid or volunteer staff, regarding Celebrex, whether prior to, during the pendency of, or subsequent to the submission of the NDA relative to Celebrex.

20.    Identify by name, address, telephone number, and employer each person who, on behalf of these Defendants, had any contact with members of the Health Care Financing Administration (HCFA) regarding Celebrex. This interrogatory is intended to encompass and extend beyond a request for the names of employees of Defendants, and is specifically intended to include, but not be limited to, independent contractors and lobbyists that had any contact with members if the Health Care Financing Administration (HCFA) regarding Celebrex, whether prior to, during the pendency of, or subsequent to the submission of the NDA relative to Celebrex.

8

21. Give the name, address, and job title of the person employed or retained by these Defendants most familiar with maintaining any and all post-marketing studies, whether initiated, funded or conducted by these Defendants or some other source or entity.

22. For each clinical study and/or protocol that was performed in reference to Celebrex by or on behalf of any of the Defendants or any Defendant or related entity, please provide:

   a. the name, designation or other identifying information about the clinical study/protocol;

   b. whether the said clinical study/protocol was published;

   c. if said clinical study/protocol was published, where was it published (what journal) and when was it published?

## Requests for Production

Plaintiffs specifically request that these Defendants produce the following:

1. The protocol(s) established by Defendants, for the clinical testing of Celebrex.

2. The written procedures established by Defendants at any time during the development and marketing of Celebrex to address reports Defendants or others received from clinical trials or post-marketing experience concerning:

   a. Any abnormal kidney function tests.

   b. Any other indicators concerning kidney toxicity.

   c. Any reports of renal failure.

   d. Any reports of congestive heart failure.

   e. Any reports of gastrointestinal bleeding/hemorrhage.

   f. Any reports of other bleeding/hemorrhage.

   g. Any reports of death.

9

    h.     Any reports of precipitous increases in systemic blood pressure.

    i.     Any reports of "myocardial infarctions" (MI).

    j.     Any reports of "cerebrovascular accidents" (CVA).

    k.     Any reports of allergic and/ or skin reactions.

3.    The protocols, procedures and guidelines that were employed by Defendants at any time during the clinical trials and post-marketing experience with respect to how the Defendants responded or was to respond to reports received form:

    a.     Consumers.

    b.     Health professionals.

    c.     Others.

4.    Records sufficient to identify each and every patent holder of the drug marketed as Celebrex by name, address, the patent number, the manner in which Celebrex is utilized in such patent.

5.    Each and every contract between these Defendants, other patent holders or others regarding the development, manufacturing and marketing of the drug Celebrex.

6.    Copies of all advertising text – whether printed, published on the web, radio, television or otherwise – concerning the drug Celebrex that was addressed to:

    a.     Physicians.

    b.     Pharmacists.

    c.     Consumers – in English text.

    d.     Consumers – in Spanish or any other foreign language text.

7.    The Defendants' records of account that demonstrate the costs incurred or otherwise paid by the Defendants in the development of the drug Celebrex. These costs are to be itemized by line item in the manner in which the Defendants accounted internally for its

costs and not summarized in any manner beyond those totals or sub-totals created in the Defendants' accounting records.

8.    The Defendants' records of account that demonstrate the costs incurred or otherwise paid by the Defendants in conducting its clinical trials of Celebrex.

9.    The Defendants' records of account that demonstrate the costs incurred or otherwise paid by the Defendants in presenting the drug Celebrex to the Federal Drug Administration. This request includes, but is not limited to, all costs incurred or otherwise paid by the Defendants to apply for "fast track" status, to present information to the advisory panel(s), to hire consultants (including counsel) or representatives and other incidental costs.

10.    All adverse reports maintained by the Defendants regarding Celebrex.

11.    The complete records of each investigation conducted by the Defendants, or on behalf of the Defendants, in response to the reports responsive to Request for Production 10 above.

12.    True and complete copies of all press releases and public statements made by the Defendants or on its behalf with regard to Celebrex from its inception to the present.

13.    True and complete copies of the transcripts of any/all statements and appearances made by or on behalf of these Defendants before the Federal Drug Administration concerning Celebrex.

14.    True and complete copies of the records of all proceedings of the FDA – whether advisory panel or otherwise – concerning Celebrex that are in the possession of Defendants or its agents.

15.    The complete text of all drafts and final versions of the product information leaflets or brochures that were intended for publication or other distribution to doctors, pharmacists and/or consumers concerning Celebrex.

11

16. The complete text of all drafts and final versions of correspondence that Defendants directed to physicians concerning Celebrex from its inception to the present.

17. The complete text of all drafts and final versions of statements that Defendants have made to its stockholders concerning the development and marketing of Celebrex, any adverse effect reports and/or any FDA mandated warnings that were to accompany Celebrex.

18. The Defendants' records showing its projection of sales of the drug Celebrex in any and all markets. These records are to be produced in the most detail accumulated by Defendants in the ordinary course of business

19. The Defendants' records showing the actual sales of the drug Celebrex in any and all markets. These records are to be produced in the most detail accumulated by Defendants as well as any summaries of that data, kept in the ordinary course of business.

20. All insurance agreements or policies under which a person transacting insurance may be liable to satisfy part or all of a judgment which may be entered in this civil action or to indemnify or reimburse for payments made to satisfy the judgment. It is further requested that a verified or attested copy of the declaration sheet relating to any of the aforementioned insurance policies also be produced.

21. All documents or records of the Defendants relating to any advertisements for Celebrex, whether in professional journals or not.

22. All documents concerning any warnings, instructions for use, or other matters concerning the use and/or consumption and possible health risks regarding Celebrex.

23. All correspondence and documents evidencing any communication, in any form between or among any and all of the Defendants concerning Celebrex.

12

24. All drafts of documents containing instructions or warnings for the ultimate consumers of Celebrex. (For each such document, state the effective date or inclusive dates for distribution of use of such instructions or warnings.)

25. All documents concerning any changes, modification, alteration, and/or reformation of Celebrex, including changes to product packaging and product inserts.

26. All documents of the Defendants showing quality control, testing, analysis and health studies such as indications, contradictions, side effects, interactions, and adverse experiences, effects, or events concerning Celebrex.

27. All agreements entered into between or among any of the Defendants.

28. All published literature in the possession of the Defendants concerning Celebrex.

29. Any documents of which Defendants has knowledge of concerning or relating to the adverse reactions, experiences, effects or events regarding Celebrex.

30. All documents relating to adverse reaction, experiences, effect or event reports as well as investigations of the same, including all notes, memos, letters, reports, files, articles, or any written or computer generated or stored information from any person or source whatsoever, authored as a consequence of the result of any such investigation which discusses, relates or concerns the adverse reaction of Celebrex.

31. All documents sent to the FDA regarding Celebrex.

32. All documents received from the FDA concerning Celebrex.

33. Copies of any warnings, precaution, informational letters, promotions, detail ads, which discuss Celebrex. (For each such document, state the effective date or inclusive dates for distribution or use of such document.)

34. Copies of all 10K's filed by or concerning these Defendants from 1990 through the present.

35.    Copies of all annual reports to shareholders of these Defendants from 1990 through the present.

36.    Copies of all package inserts for Celebrex. (For each such document, state the effective date or inclusive dates for distribution or use of such document.)

37.    Copies of all documents which indicate, discuss or show the following:

    1.    Gross sales of these Defendants, cumulatively and/or for each year since Celebrex was first marketed in the United States.

    2.    Gross sales for Celebrex, cumulatively and/or for each year since Celebrex was first marketed in the United States.

38.    Please identify the full names and corporate titles and addresses of the employees of these Defendants having the most significant responsibilities for the development, licensing and marketing of Celebrex, and as to each such person, state the job titles, the inclusive dates during which such person held that job title, and describe briefly the area of responsibility with respect to Celebrex.

39.    Please provide the text of any and all warnings or instructions to physicians and/or patients and consumers about the adverse effects in connection with Celebrex, and explain in detail any variation in terminology regarding side effects, contraindications, precautions and warnings. (For each such document, state the effective date or inclusive dates for distribution or use of such document.)

40.    Any and all studies regarding the safety and effectiveness of Celebrex.

41.    All reports and other documents provided to the FDA or other governmental organization regarding complications, contraindications, hazards, side effects, or adverse experiences, effects or events from the use of Celebrex, whether used as monotherapy or in conjunction with any other therapy.

14

42.  Provide a detailed privilege log of all documents that have been removed from any file or not produced because of a claimed privilege, work product doctrine, trade secret or confidential business information, or other privilege or basis for nondisclosure. Identify each document with such specificity that Plaintiff may fashion a particularized motion to compel as to each non-disclosed document.

43.  If these Defendants have relied upon or referred to any document in answering any interrogatory, please attach copies of each such document to your answers.

44.  Documents reflecting the exact total number of patients worldwide, including but not limited to those in Japan, the U.S., the Philippines, Australia, Great Britain, Europe, South America, Central America, North America and New Zealand, which Defendants determined, concluded, acknowledges, admits, concedes, or in its own opinion, believes or suspects, died from or suffered myocardial infarction, cerebrovascular accidents, allergic and or skin reactions, or internal bleeding, caused by Celebrex from the date the NDA for Celebrex was submitted to the FDA on, through and including the date of these Defendants' response to this discovery.

This includes deaths which occurred during human clinical trials or during the post-marketing period in any foreign country including, but not limited to, the Philippines, Australia, Great Britain, Europe, South America, Central America, North America and New Zealand. This includes any patients who were withdrawn from any clinical trial for any reason, medical or otherwise, whether or not the Defendants believe the injury or deaths as causally related to Celebrex.

45.  A copy of the entire patient case study file and medical records, including autopsy reports, for each death case included in the response to the preceding request (#44), including the patient study number.

15

This request does not include any personal identification information about each patient. Please redact names, addresses, dates of birth, social security numbers, etc., so as to not violate the patient privacy or physician-patient privilege.

46. Documents reflecting the exact total number of worldwide patients which Defendants determined, concluded, acknowledges, admits, concedes, or in its own opinion, believes or suspects experienced any adverse events, including, but not limited to, death, myocardial infarction, cerebrovascular accidents, allergic and/ or skin reactions, hypertension or increased hypertension, or gastro intestinal or esophageal bleeding, as a result of Celebrex at any time from the date of the first human Celebrex clinical trials and post-marketing experience, whether conducted in the U.S. or abroad, including but not limited to Japan, Great Britain, the Philippines, Australia, Europe, South America, Central America, North America and New Zealand to the date of this request which were reported to the FDA in the IND/NDA for Celebrex.

This includes any patients who were withdrawn from any clinical trial for any reason- medical or otherwise, whether or not Defendants believe the abnormalities were causally related to Celebrex.

47. A copy of the entire patient study file and medical records for each patient identified in the preceding request (#46) who were reported to the FDA in the IND/NDA to Celebrex. This request does not include any personal identification information about the patients. Please redact names, addresses, dates of birth, social security numbers, etc., so as to not violate the patient privacy or physician-patient privilege.

48. Documents reflecting the total number of clinical trial patients who began each separate human Celebrex clinical study, including, but not limited to those within the U.S., Japan, Great Britain, the Philippines, Australia, Europe, South America, Central American,

16

North America and New Zealand who were withdrawn from the study or did or did not complete it for any reason, regardless whether or not Defendants believe the reason for the withdrawal was not causally related to Celebrex. Please identify the patient study number of each patient who was withdrawn.

49. A copy of the entire patient case study file and medical records for each patient who was withdrawn or otherwise did not complete the clinical trial who is included in the preceding request (#47). This request does not include any personal identification information about the patients. Please redact names, addresses, dates of birth, social security numbers, etc., so as to not violate the patient privacy or physician-patient privilege.

50. All tangible and electronic correspondence sent to and received from any person involved in each separate clinical trial study for Celebrex worldwide, including, but not limited to, the U.S., Japan, the Philippines, Australia, South America, Central America, North America and New Zealand, including, but not limited to, principal investigators, co-investigators, co-investigators, sub-investigators, technicians, their staff or any other person who in any way participated in the clinical trials. This includes, but is not limited to, any and all letters, reports, e-mails or any other source tangible data transmission, whether electronic or otherwise.

This includes, but is not limited to, adverse events, general observations of results during trials, preliminary study reports, or any other reference to results, problems, successes, general correspondence about Celebrex, observed during clinical trials.

51. All tangible and electronic internal correspondence, person specific and/or general, including but not limited to, memos, e-mails, or other electronic data transmissions, to and from all sales and marketing personnel employed by, retained by, associated with or

in any way affiliated with Defendants, which in any way discusses, relates to, or involves potential safety concerns with prescribing physicians and pharmacists, sales strategies, marketing and advertising regarding Celebrex.

52.    An entire copy of each and every Celebrex patient case study file, including, but not limited to, the patient's medical records and the adverse event report, for each and every adverse event report ever received by or reported to Defendants prior to February 28, 2001, from any source, including, but not limited to, human Celebrex clinical trial studies, both within the United States and abroad, including, but not limited to, Japan, the Philippines, Australia, South America, Great Britain, Europe, Central America, North America and New Zealand which Defendants determined or concluded was definitely, probably, or possibly, not causally related to Celebrex and which was not included in the IND/NDA for Celebrex or reported or provided to the FDA thereafter through the date of this request.

53.    An entire copy of each and every Celebrex patient case study file, including, but not limited to, the patient's medical records and the adverse event report, for each and every adverse event report ever received by, or reported to Defendants, from any source, including, but not limited to, human Celebrex clinical trial studies, both within the United States and abroad, including, but not limited to, Japan, the Philippines, Australia, South America, Great Britain, Europe, Central America, North America and New Zealand, which Defendants determined was definitely, probably, or possibly, not causally related to Celebrex and which was not reported or provided to the FDA thereafter through the date of this request.

54.    An entire copy of each and every Celebrex patient case study file, including, but not limited to, the patient's medical records and the adverse event report, for each and every

18

adverse event report ever received by, or reported to Defendants, from any source, including, but not limited to, human clinical trial studies, both within the United States and abroad, including, but not limited to, Japan, the Philippines, Australia, South America, Great Britain, Europe, Central America, North America and New Zealand, which Defendants determined was definitely, probably, or possibly causally related to Celebrex and which was not included in the IND/NDA for Celebrex, or reported to the FDA thereafter through the date of this request.

55.   An entire copy of each and every Celebrex patient case study file, including, but not limited to, the patient's medical records and the adverse event report, for each and every adverse event report ever received by, or reported to Defendants from any source, including, but not limited to, human Celebrex clinical trial studies, both within the United States and abroad, including, but not limited to, Japan, the Philippines, Australia, South America, Great Britain, Europe, Central America, North America and New Zealand, which Defendants determined was definitely, probably, or possibly causally related to Celebrex and which was reported to the FDA thereafter through the date of this request.

56.   Any and all internal memos, internal or external correspondence and e-mails, including, but not limited to, any form of electronic data transmission to, or from Defendants, including, but not limited to, any employee, agent, director, officer or other personnel under the direct control of Defendants, to, or from, any other personnel, including, but not limited to, any persons involved in the clinical trials for Celebrex, other clinical researchers, physicians, patients, the FDA or any other regulatory agency, or any other Defendants herein, which in any way discuss, involve, or relate to the decision to market Celebrex, and specifically as a COX-2 selective NSAID medication.  This includes all

19

information generated from the date of the first report of adverse events in the U.S. or abroad, through the date of this request.

57. Any and all internal correspondence, memos and e-mail or other electronic data transmission, to the date of this request, to or from Defendants' sales and marketing staff and personnel, including, but not limited to, Celebrex drug sales representatives, detail personnel and their managers, which in any way relates to, involves, or discusses what information regarding adverse events, should or should not be provided to, or discussed with, prescribing physicians, pharmacists or clinical investigators or their staff.

58. Any and all correspondence, memos, e-mails or other forms of electronic data transmissions, to or from any external source (i.e., generated by someone who is not an agent, servant, employee, director, officer or other personnel under the direct control of Defendants), including, but not limited to, principal investigators and their staff, prescribing physicians or pharmacies, which in any way discusses, involves or relates to specific adverse events or general patient health concerns related to Celebrex.

59. Any and all internal memos, correspondence, e-mails or other electronic data transmissions to or from any agent, employee, officer, director or other person under the direct control of Defendants, or acting for or on Defendants' behalf, which in any way discusses, involves, or relates to the Defendants' denial of, conscious refusal to concede, admit, conclude, acknowledge, or express any opinion, publicly or privately, that Celebrex caused any health problems or injuries.

60. Documentation of any and all direct, or indirect, compensation paid to any principal or co-investigators, their staffs, families, or any other persons associated with the clinical trial studies of Celebrex for any reason. This includes, but is not limited to, copies of direct cash payment vouchers, canceled checks, money orders, wire transfers, indirect

compensation such as travel expenses, meals, entertainment, gifts or honorariums, and also including, but not limited to, any and all forms of valuable consideration including securities and equities in Defendants' company or any company legally associated or affiliated with Defendants' company, including, but not limited to, stock ownership, options, warrants, bonds or other securities, which the recipient realized a tangible economic value at the time of the receipt or thereafter.

61. Documentation of any and all direct, or indirect, compensation paid to any physicians, their staffs, families, or any other persons associated with the clinical trial studies of Celebrex for any reason. This includes, but is not limited to, copies of direct cash payment vouchers, canceled checks, money orders, wire transfers, indirect compensation such as travel expenses, meals, entertainment, gifts or honorariums, and also including, but not limited to, any and all forms of valuable consideration including securities and equities in Defendants' company or any company legally associated or affiliated with Defendants' company, including, but not limited to, stock ownership, options, warrants, bonds or other securities, which the recipient realized a tangible economic value at the time of the receipt or thereafter.

62. A copy of all expenses related to travel and entertainment (as defined by the applicable Internal Revenue Code Section) paid by Defendants directly, or indirectly, to, or on behalf of any clinical investigation personnel, their staff or families, associated with the clinical trial studies of Celebrex. This includes, but is not limited to, payment for any and all expenses related to seminars conducted or sponsored, in whole or in part, by these Defendants, their wholly owned subsidiaries, products, drugs or services; gratuitous tickets to entertainment events such as sporting events, arts, general entertainment

21

(operas, plays, etc.), payment for meals, personal gifts or any other goods or services in which the recipient received an indirect economic benefit.

63. A copy of the minutes of each and every committee meeting held by Defendants that in any way related to Celebrex, including, but not limited to, pre-marketing safety concerns, adverse events, marketing strategies, potential market penetration, potential profits, potential sales, strategies regarding how to respond to and deal with FDA concerns, strategies to persuade any person that adverse events related to Celebrex were not serious and should be dismissed, ignored or downplayed; package insert revision discussions, or any other subject matter related to the research, development, marketing, sales and safety concerns relating to Celebrex.

64. Any and all documentation of the account of the gross and net profits, including all incurred expenses, received by, and incurred by Defendants, relating to the sale and marketing of Celebrex worldwide. This specifically requests the Defendants' own accounting calculations of gross sales, expenses, net profits and other financial effects or impacts of Celebrex on Defendants' ongoing profits and operation, on an annual basis from 1999 to the date of this request.

65. All information sent by Defendants to pharmacies or drug distribution centers within the U.S. which in any way relate to, involve, or discuss Celebrex from January 1, 1998, through the date of this request. This includes, but is not limited to, letters, announcements, reports, original package inserts and all revisions, and adverse event reports. (For each such document, state the effective date or inclusive dates for distribution or use of such document.)

22

66. A copy of all licensing agreements between these Defendants and any other entity relating to the research and development, production, distribution, sales and marketing, or other mutual involvement relating to Celebrex.

67. A copy of all marketing agreements between these Defendants and any other entity relating to the research and development, production, distribution, sales and marketing, or other mutual involvement relating to Celebrex.

68. A copy of all profit sharing, expense sharing or other financial agreements between these Defendants and any other entity, relating to the research and development, production, distribution, sales and marketing, or other mutual involvement relating to Celebrex.

69. Any and all partnership agreements, joint venture agreements, co-development agreements, or other documented legal agreements between Defendants and any other entity regarding the research and development, distribution, sales and marketing or other involvement of Celebrex.

70. Any and all written settlement agreements with any plaintiff or claimants, whether based on pre-litigation claims or filed lawsuits relating to, or involving allegations that health related injuries were caused by Celebrex, whether within the U.S. or other foreign country.

71. The original petition(s) or complaint(s), including style, cause number and all plaintiffs or claimants of all lawsuits ever filed against Defendants relating to allegations that Celebrex caused injury or adverse events, whether in the U.S., or abroad.

72. Produce all memos, documents, tables, graphs, tests, test results or other illustrative or explanatory material by whatever name known or characterized by these Defendants in their normal course of business, which discusses or illustrates the relationship between COX-2 selectivity and therapeutic dosing.

23

73. Documents reflecting all epidemiological, clinical or double-blind placebo trial, test or study results that document or illustrate the relationship between COX-2 selectivity of Celebrex and therapeutic dosing levels.

74. Documents reflecting any and all post marketing surveys or studies completed by these Defendants regarding Celebrex whether or not the post marketing study or survey was undertaken, performed or funded by these Defendants.

75. Any and all documents, letters correspondence, e-mail, facsimile, press release or other written, verbal, electronic or other communication made by Defendants, or any employee, agent, representative, independent contractor or otherwise, acting on their behalf, that was transmitted or communicated from Defendants to any news industry or financial industry representative, or with the knowledge that the ultimate recipient would be a person acting for or on behalf of any person, firm or corporation within the news or financial industry. This request is intended to included, but not be limited to, all communications by or on behalf of Defendants and members of the print and broadcast news industry and the members of the financial industry; including, but not limited to, news, press or financial information; product launch information; or INDA/NDA information disseminated to ABC, NBC, CBS, CNBC, FOX, Fox News, The Wall Street Journal, Fortune Magazine, Money Magazine, any other financial or non-financial newspaper, periodical or publication, any bank, brokerage house/firm, or other financial institution or institutional investment corporation, whether for purposes of stock/bond underwriting, pursuant to financing conditions of underwriting or not, or for general dissemination of product news.

76. Please produce the drug safety/adverse event database for Celebrex. The drug safety/adverse event database for Celebrex should include, but not limited to, reports of all

and

SHANE SEABORN
MYRON PENN
Penn & Seaborn, LLC
Post Office Box 688
Clayton, Alabama 36016
(334) 775-9778 telephone
(334) 775-9779 facsimile


**SERVED UPON DEFENDANTS WITH SUMMONS & COMPLAINT**

worldwide drug safety/adverse events reported concerning the safety of Celebrex to the Defendants since Celebrex was approved in November 2001.

77.    Please produce the clinical trials database for Celebrex.  The clinical trials database for Celebrex should include, but not limited to, records of all the clinical trials concerning the safety of Celebrex.

78.    Please produce the marketing/sales representative database for Celebrex.    The marketing/sales representative database for Celebrex should include, but not limited to, information concerning the Defendants' marketing strategy for Celebrex, information Defendants' sales force was instructed to distribute to physicians concerning the safety of Celebrex and call notes and/or questions from physicians to the Defendants' sales force concerning the safety of Celebrex.

79.    Please produce the medical database for Celebrex.  The medical database for Celebrex should include, but not limited to, reports of all questions/inquires made by physicians about the safety of Celebrex to defendants.

L. Shane Seaborn / 920

JERE L. BEASLEY (BEA020)
ANDY D. BIRCHFIELD, JR. (BIR006)
GERALD B. TAYLOR, JR. (TAY 026)
PAUL SIZEMORE (SIZ004)
NAVAN WARD, JR. (WAR062)
SHANE SEABORN  (SEA027)

OF COUNSEL:

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 telephone
(334) 954-7555 facsimile

25