### IN THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| HENRY C. MORRIS, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO: |
| | ) | 2:06-cv-00349-MEF |
| v. | ) | Pending transfer to MDL-1699 |
| | ) | (In re Bextra and Celebrex |
| | ) | Marketing, Sales Practices and |
| PFIZER INC., a Delaware Corporation; | ) | Products Liability Litigation) |
| PHARMACIA CORPORATION, a | ) | |
| Delaware Corporation; MONSANTO | ) | |
| COMPANY, a Delaware Corporation; | ) | |
| G.D. SEARLE, LLC, a Delaware | ) | |
| Corporation; ROBERT VANDELUNE; | ) | |
| SAMUEL KLEMENT; JAMIE PEACOCK; | ) | |
| BEN MCCLURKIN; ROD MCWHORTER; | ) | |
| and TIFFANY GUCKENBERY | ) | |
| And fictitious Defendants A, B, C and D | ) | |
| being those persons, firms or corporations | ) | |
| whose actions, inactions, fraudulent | ) | |
| suppression, fraud, scheme to defraud and/or | ) | |
| other wrongful conduct caused or | ) | |
| contributed to the Plaintiff's injuries and | ) | |
| damages, and whose true names and | ) | |
| identities are presently unknown to the | ) | |
| Plaintiff but will be substituted by | ) | |
| amendment when ascertained, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

    Defendants G.D. Searle LLC ("Searle"), Pharmacia Corporation

("Pharmacia" and also improperly captioned in Plaintiff's Complaint as Monsanto

Company) and Pfizer Inc. ("Pfizer") (collectively "Defendants") hereby submit this Memorandum Brief in Opposition to Plaintiff's Motion to Remand ("Motion").

## I. INTRODUCTION AND SUMMARY

There are presently only two questions before the Court:  whether to immediately stay all proceedings in this case, and if not, whether Plaintiff's counsel—in filing a complaint that is virtually indistinguishable from numerous other boilerplate complaints they have filed throughout this State—fraudulently joined non-diverse pharmaceutical representatives against whom Plaintiff has no valid claim.  As explained in Defendants' stay request, the Court should follow its prior approach, and that of most of its peers, and grant a stay pending MDL transfer.  If the Court does reach the fraudulent joinder question, the Court should follow the controlling authority of *Legg v. Wyeth*, where the Eleventh Circuit rejected the "common strategy," employed here, of fraudulent joinder of Alabama pharmaceutical representatives to attempt to defeat this Court's jurisdiction.  *See* 428 F.3d 1317, 1320 (11th Cir. 2005).

This is one of numerous cases filed nationwide alleging personal injuries arising out of the use of Celebrex®, a prescription medication.  On March 10, 2006, Plaintiff filed this action in the Circuit Court of Barbour County, Alabama. There is no dispute that Plaintiff and Defendants Searle, Pharmacia and Pfizer are

2

"citizens of different States" for purposes of 28 U.S.C. § 1332(a)(1) or that the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.[1] *See* Notice of Removal ¶¶ 3-11; Pl's Br. in Support of Mo. to Remand at 1. But, in an attempt to defeat diversity jurisdiction, Plaintiff also has named non-diverse pharmaceutical detailers Robert Vandelune, Samuel Klement, Jamie Peacock, Ben McClurkin, Rod McWhorter and Tiffany Guckenberg (incorrectly identified as "Guckenbery" in the Complaint) (collectively the "Pharmaceutical Representatives"), against whom Plaintiff has no valid claim under Alabama law.

On September 6, 2005, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ("JPML") created a Multi-district Litigation ("MDL") proceeding for Celebrex® cases such as this pending in federal courts across the country. *See In re Bextra & Celebrex Marketing, Sales Practices & Prods. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L. 2005). On April 21, 2006, Defendants sent a "tag-along" letter regarding this action to the JPML pursuant to Rules 7.4 and 7.5

---

[1] Specifically, Plaintiff Henry Morris is, and was at all relevant times, an adult resident and citizen of Alabama. *See* Notice of Removal ¶ 6. Pfizer is now, and was at the time of filing of the Complaint, a corporation organized under the laws of Delaware with its principal place of business in New York, and therefore is and was a citizen of Delaware and New York. *Id.* ¶ 7. Pharmacia is now, and was at the time of filing of the Complaint, a corporation organized under the laws of Delaware with its principal place of business in New Jersey, and therefore is and was a citizen of Delaware and New Jersey. *Id.* ¶ 8. Searle is now, and was at the time of filing of the Complaint, a limited liability company whose sole member is (and was) Pharmacia & Upjohn Company LLC, a limited liability company whose sole member is (and was) Pharmacia & Upjohn LLC, a limited liability company whose sole member is (and was) Pharmacia Corporation which is (and was) a corporation existing under the laws of the state of New Jersey. *Id.* ¶ 9. Moreover, Monsanto is not a proper defendant in this action and in all events is not a citizen of Alabama. *Id.* ¶ 10. Only the fraudulently joined Pharmaceutical Representative Defendants are Alabama residents and citizens. *See id.* ¶ 11.

3

of the Rules of Procedure of the JPML. (Exhibit A). The JPML is expected to list this case on a conditional transfer order ("CTO") shortly and this case is expected to transfer to the MDL Court in due course pursuant to the JPML Rules of Procedure.

The JPML routinely transfers cases in which remand motions are pending and the MDL court is well-positioned to determine remand motions following transfer in a consistent and efficient manner. *See, e.g.*, Transfer Order, *In re Bextra & Celebrex Marketing, Sales Practices & Prods. Liab. Litig.* (J.P.M.L. Apr. 12, 2006) ("Any pending or anticipated motions to remand to state court can be presented to and decided by the transferee judge.") (Exhibit B). Moreover, the JPML previously instructed federal district judges with Celebrex®-related cases such as this one on their docket that although "you are free to rule on the motion [to remand], of course, or wait until the Panel has decided the transfer issue[,] [t]he latter course may be especially appropriate if the motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there." JPML Ltr. Re: MDL-1699—*In re Bextra & Celebrex Marketing, Sales Practices & Prods. Liab. Litig.* at 1 (J.P.M.L. May 13, 2005) (Exhibit C).

That is precisely the situation here: Numerous cases involving the fraudulent joinder of the same Alabama pharmaceutical representatives by the

4

same plaintiffs' counsel already have transferred, or are in the process of transferring, to the MDL Court—including two cases from this Court's docket. *See, e.g., Jackson v. Pfizer, Inc.*, CV-2:05-cv-841-F (M.D. Ala. Dec. 5, 2005) (Walker, J.); *Nelson v. Pfizer, Inc.*, CV-2:05-cv-832-F (M.D. Ala. Oct. 20, 2005) (Fuller, J.); *Thomas v. Pfizer, Inc.*, CV-2:05-cv-824-F (M.D. Ala. Nov. 15, 2005) (Fuller, J.); *Hall v. Pfizer, Inc.*, CV-2:05-cv-941-F (M.D. Ala. Nov. 21, 2005) (McPherson, J.); *Beverly v. Pfizer, Inc.*, CV-05-0542-M, (S.D. Ala. Nov. 17, 2005) (Milling, J.) (stay orders in these cases collected at Exhibit D); *see also* February 14, 2006 Transfer Order; Conditional Transfer Order (CTO) CTO-3 (Exhibit E). Moreover, federal courts in Alabama—including this Court—in each of those cases have routinely granted motions to stay pending transfer to the MDL despite plaintiff's fraudulent joinder of pharmaceutical representatives in an effort to defeat diversity jurisdiction. *See, e.g.*, Stay Orders (Exh. D). This Court should do the same here. As fully explained in Defendants' stay request, deference to the MDL court for resolution of motions to remand provides the opportunity for the uniformity, consistency, and predictability in litigation that underlies the MDL system.

If the Court reaches the remand issue, which it need not and should not do, Plaintiff's Motion should be denied because Plaintiff fraudulently joined the non-diverse Pharmaceutical Representatives. Indeed, just today Magistrate Judge

B MJA 710077 v1
2902026-000045 05/10/2006

Armstrong in the Northern District of Alabama reached this very conclusion in a similar suit brought by Plaintiff's counsel, and therefore recommended the denial of plaintiff's motion to remand, the dismissal with prejudice of the Pharmaceutical Representative defendant, and the stay of all proceedings pending transfer to the MDL court. *See Gordon v. Pfizer Inc.*, No. CV-06-RRA-703-E, slip op. at 17 (N.D. Ala. May 10, 2006) (Exhibit F).

As noted, in this case Plaintiff does not dispute Defendants' showing that there is complete diversity between Plaintiff and the remaining Defendants or that the amount in controversy requirement is met. The only aspect of this Court's diversity jurisdiction that Plaintiff challenges is whether the Pharmaceutical Representatives are fraudulently joined. As Defendants set out in their Notice of Removal, the citizenship of fraudulently joined defendants is disregarded for purposes of assessing diversity and proper removal. *See, e.g., Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996), *rev'd on other grounds, Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1072-73 (11th Cir. 2000). Under the Eleventh Circuit's standard for fraudulent joinder, remand should be denied where there is "no reasonable possibility" that the named pharmaceutical representatives could be found liable on plaintiffs' claims; the potential for liability "must be reasonable, not merely theoretical." *Legg,* 428 F.3d at 1325 & n. 5 (11th Cir. 2005); *see also Gordon,* slip op. at 17 (finding "'no reasonable possibility' that the

6

plaintiff would be able to establish a cause of action against [the Pharmaceutical Representative defendant]").    No such possibility exists here based on the allegations in the Complaint at the time of removal and the uncontested affidavits filed by the Pharmaceutical Representatives at the time of the removal.

## II. ARGUMENT

## A.    THE    PHARMACEUTICAL    REPRESENTATIVES    ARE FRAUDULENTLY    JOINED.

"The removal process was created by Congress to protect defendants. Congress did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." *Legg*, 428 F.3d at 1325 (internal quotation omitted).    "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court . . . ." *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).

The doctrine of fraudulent joinder prevents plaintiffs from defeating federal diversity jurisdiction by simply naming in-state defendants.    The Eleventh Circuit recently recognized this improper "common strategy employed" by plaintiffs in pharmaceutical product liability cases such as this in which plaintiffs "name local

7

parties, often … local sales representatives, as defendants, thus defeating [a defendant's] right to remove a case to federal court." *Legg*, 428 F.3d at 1320.[2]

In *Legg*, the Eleventh Circuit explained the proper standard for determining whether a pharmaceutical representative defendant is fraudulently joined: Joinder of a non-diverse defendant is fraudulent where there is "no reasonable possibility" that the plaintiff would be able to establish a cause of action against a resident defendant. *See, e.g., Legg*, 428 F.3d at 1324-25 & n.5 (referring four times to lack of "reasonable possibility" or "reasonable basis" for legal claims in holding that pharmaceutical representatives were fraudulently joined);[3] *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).[4]

---

[2] Numerous MDL courts have held, in pharmaceutical product liability claims involving prescription medication, that plaintiffs cannot pursue claims against pharmaceutical representatives and that their joinder does not defeat diversity. *See, e.g., In re Prempro Prods. Liab. Litig. (Graham v. Wyeth)*, No. 4:03CV1507, 2006 WL617981, at *1(E.D. Ark. Mar. 8, 2006); *In re Baycol Prods. Liab. Litig.*, MDL 1431 (Mar 26, 2004) (Exhibit G); *In re Rezulin Prods. Liab. Litig.* 133 F. Supp. 2d 272, 287 (S.D.N.Y. 2001).

[3] Plaintiff's contention that the fraudulent joinder analysis in *Legg* is mere dicta is plainly wrong. That analysis was necessary to the Eleventh Circuit's determination that the removal in that case was proper (and therefore not warranting of attorney's fees), and therefore is not dicta. *See Legg*, 428 F.3d at 1320 (determining whether district court's remand order was "legally erroneous"); *id.* at 1325 (holding that "sales representatives were fraudulently joined" and therefore the district court "abused its discretion" in awarding attorney's fees). Indeed, another Alabama federal district court recently relied upon the *Legg* court's fraudulent joinder "h[o]ld[ings]" in deciding a factually-similar question involving a non-diverse defendant. *See Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *4-*5, *8 (M.D. Ala. Dec 19, 2005).

[4] *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 280 n.4; *Crowe v. Coleman*, 113 F.3d 1536, 1540 (11th Cir. 1997) (applying "arguably a reasonable basis" test (quoting *Bobby Jones Garden Apt. v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1968)); *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 685 (8th Cir. 2002); *Schwartz v. State Farm Mut. Auto Ins. Co.*, 174 F.3d 875, 879 (7th Cir. 1999) (noting that it cannot "say that there is not possibility that a state court would someday" recognize plaintiff's liability theory, but upholding removal because that currently "is not a reasonable possibility"); *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *see also Woods v. Firestone Tire & Rubber Co.*, 560 F. Supp. 588, 590 (S.D. Fla. 1983) (applying "arguably reasonable basis" test); *TKI, Inc. v. Nichols Research Corp.*, 191 F. Supp. 2d 1307, 1313-14 (M.D. Ala. 2002); *Anderson v. Allstate Life Ins. Co.*, No. 00-0958, 2001 WL 228057, *8 (S.D. Fla. Feb. 1, 2001); *El Chico Rest. Inc. v. Aetna Sur. & Cas. Co.*, 980 F. Supp. 1474, 1478-79 (S.D. Ga. 1997).

Fraudulent joinder may be shown by a lack of a factual or legal basis for plaintiff's claims. *See Owens v. Life Ins. Co. of Georgia*, 289 F. Supp. 2d 1319, 1323-24 (M.D. Ala. 2003) (Fuller, J.) (denying remand and finding no possibility that plaintiff could establish a cause of action against the resident defendant and thus resident was fraudulently joined). "In considering *possible* state law claims, possible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.'" *Legg*, 428 F.3d at 1325 n.5 (quoting *Braden v. Wyeth*, CV-04-PT-235-E, 2005 U.S. Dist. LEXIS 25243) (N.D. Ala. June 30, 2005). Here as well, Plaintiff's claims against the Pharmaceutical Representatives lack both a factual and a legal basis; accordingly, they are fraudulently joined.

### 1.    There are no legally cognizable claims against the Pharmaceutical Representatives.

#### a.    Plaintiff's fraud claims against the Pharmaceutical Representatives fail.

Just as in the numerous other Celebrex® and Bextra® lawsuits Plaintiff's counsel has recently brought, Plaintiff generally asserts against all Defendants claims for negligence, defective design, breach of express and implied warranty of merchantability, fraud and negligent misrepresentation. *See generally* Plaintiff's Complaint. Notwithstanding these general claims against all Defendants, the thrust of Plaintiff's argument in his Motion to Remand is that numerous unnamed

pharmaceutical representatives in Alabama made fraudulent and negligent misrepresentations and failed to disclose that Celebrex® causes strokes, the injury of which Plaintiff complains. (*See* Pl.'s Br. in Support of Mo. to Remand at pp. 11-22 (focusing on claims of misrepresentation, fraud and suppression based on acts of unidentified pharmaceutical representatives)).

As the Eleventh Circuit recently explained in *Legg*, Plaintiff cannot assert fraud or negligent misrepresentation claims against the named Pharmaceutical Representative defendants because Plaintiff fails to specifically allege knowledge or bad faith on their part. In *Legg*, as here, plaintiffs asserted numerous claims against the pharmaceutical companies and pharmaceutical representatives, including claims for fraud based on allegations that the defendants made misrepresentations and suppressed certain facts related to the prescription medication, Redux. Defendants removed the case on diversity grounds, arguing fraudulent joinder of the three named non-diverse pharmaceutical representatives. The defendants submitted a sworn affidavit from one of the defendant pharmaceutical representatives that she had promoted the drug in question to licensed healthcare providers and answered their questions based on information provided to her by her employer. *Legg*, 428 F.3d at 1321. The affidavit stated, in pertinent part:

> • My knowledge of the drugs I detailed was derived exclusively from education provided to me by Wyeth.

B MJA 710077 v1
2902026-000045 05/10/2006

- I had no involvement in the development or preparation of package inserts for any of the drugs, and had no control over content or other written warnings.

- I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so.

- I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Wyeth.

*Id.*

In response to defendants' submission, plaintiffs offered as evidence voluminous training materials used by the pharmaceutical companies and its sales representatives in marketing Redux, as well as affidavits from several physicians stating that the pharmaceutical representatives had made misrepresentations to them. *Id.* at 1322 & n.4. Plaintiffs argued that the training materials established that pharmaceutical representatives had knowledge of adverse events associated with Redux. *See id.* at 1322-25. Plaintiffs further argued that the professional representatives learned disingenuous detailing strategies to be used in detailing Redux, including withholding information from physicians. *See id.*

Applying Alabama law, the Eleventh Circuit found "no reasonable possibility" that the named pharmaceutical representatives could be found liable on plaintiffs' claims. *See id.* at 1324-25 & n. 5 (stating the potential for legal liability "must be reasonable, not merely theoretical") (citing *Great Plains Trust Co. v.*

11

*Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).   The
Court held that "[q]uite simply, there is no reasonable basis to predict that an
Alabama court would find [the pharmaceutical representative] as an individual
employee, personally liable for any wrongful action by Wyeth in absence of
evidence that [the individual pharmaceutical representative] either knew or should
have known of Redux's allegedly dangerous effects." *Id.* at 1324-25.   The Court
explained that when a defendant presents evidence such as declarations that are
undisputed by plaintiff, "the court cannot then resolve the facts in the Plaintiff['s]
favor based solely on the unsupported allegations in the Plaintiff['s] complaint."
*Id.* at 1323.

Here, as in *Legg*, Pharmaceutical Representatives Robert Vandelune, Samuel
Klement, Jamie Peacock and Tiffany Guckenberg submitted declarations stating:

- As a detailer, I visit physicians and healthcare providers' offices
  and provide them FDA-approved package inserts and other
  FDA-approved information about Pfizer's products, which is
  referred to as "detailing."  My job is to make the physician
  aware of certain of Pfizer's products, so that he or she can
  consider whether to prescribe them for particular patients.

- I am not a physician or pharmacist.  I have no specialized
  medical or pharmacological education.  The information and
  material I use to detail Pfizer's drugs is derived exclusively
  from education provided to me by Pfizer.  Pfizer provides me
  with the FDA-approved package inserts and other FDA-
  approved information for the medications I detail.

12

- I have no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

- At no time did I have any involvement with the design, manufacture, development or testing of the prescription medication Celebrex®, nor did I have any involvement in the FDA- approved package insert for Celebrex®.

- At no time did I ever sell, offer to sell, or take orders for the sale of Celebrex® to health care providers, physicians or patients.

- I have never made any presentations to the general public concerning Celebrex®.

*See* Affidavits of Robert Vandelune (April 14, 2006), Samuel Klement, Jamie Peacock and Tiffany Guckenberg (April 17, 2006) (Exhibit H hereto and attached as Exhibit 5 to Notice of Removal). Plaintiff fails to offer any evidence to dispute the declarations of Pharmaceutical Representatives Vandelune, Klement, Peacock and Guckenberg. Moreover, as discussed below, as to the other two non-diverse defendants, Pharmaceutical Representatives McWhorter and McClurkin never even detailed Celebrex, and therefore, because they "had [no]thing to do with" the drug, *Legg*, 428 F.3d at 1324, the claims against them are likewise groundless.

Plaintiff attaches various portions of call notes from unidentified Alabama pharmaceutical representatives, none of which is inconsistent with the Pharmaceutical Representatives' affidavits or states actionable conduct. Not one

13

call note establishes either the knowledge or bad faith elements of either a fraud or misrepresentation claim against the Pharmaceutical Representatives named here. Plaintiff fails to provide any evidence (or even make any specific allegations) related to any specialized knowledge by the Pharmaceutical Representatives named here.    Rather, Plaintiff's Complaint and Motion to Remand are replete with conclusory allegations and unwarranted speculation masquerading as facts:

- As evidenced by the "call notes" from the Removing Defendants sales representatives, which contains notes from some of the Resident Defendants, the Plaintiff *has alleged and anticipates* he will be able to show that the present Alabama Sales Representative Defendants, fraudulently suppressed material information . . . and misrepresented the safety and efficacy of Celebrex.

- Plaintiff also *anticipates* that he will be able to show that [the Pharmaceutical Representatives] participated in an aggressive marketing campaign. . .

- Plaintiff *anticipates* that discovery will show that [the Pharmaceutical Representatives'] knowledge concerning Celebrex was superior to the knowledge held by the physicians to whom they made sales calls.

- Plaintiff also *anticipates* that discovery will show that the Plaintiff's physician relied on information provided by the Resident Defendants.

Pl.'s Br. in Support of Mo. to Remand at 12-14 (emphasis added).    The Eleventh Circuit has explained that such "unsupported allegations" do not provide a basis for remand:  "*We do not, however, in the absence of any proof assume that the*

14

*nonmoving party [plaintiff] could or would prove the necessary facts*." *Legg*, 428

F.3d at 1323 (internal quotation omitted and emphasis in original).

Plaintiff also seeks to bolster his unsubstantiated and conclusory claims by

referencing documents by a different pharmaceutical company involving a separate

prescription medication.    Pl.'s Br. in Support of Mo. to Remand at 22 (describing

detailing material allegedly from VIOXX litigation).    Plaintiff speculates that he

"expects that he will be able to obtain similar documents in the present case once

he has had an opportunity to conduct discovery." *Id.* at 23.  Plaintiff's arguments

are without merit because in determining a motion to remand, a court looks to the

allegations in the complaint, rather than Plaintiff's wishful speculation about what

factual allegations could be made following discovery. *See Legg*, 428 F.3d at 1323

(in light of defendant's affidavits, plaintiff cannot support its motion to remand

with "unsupported allegations"); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440

(11th Cir. 1983) (holding that court should determine jurisdiction based on the

plaintiff's pleadings at the time of removal).

Without any competent evidence that the Pharmaceutical Representatives

made knowing misrepresentations or acted in bad faith – and particularly in light of

the Pharmaceutical Representatives' uncontroverted sworn statements that they

had no specialized knowledge about Celebrex® and relied entirely on information

provided to them by Pfizer, *see* Vandelune, Klement, Peacock and Guckenberg

B MJA 710077 v1
2902026-000045 05/10/2006

Affs. ¶ 4 – there is "no reasonable possibility" that an Alabama court would conclude that they personally are liable for fraud or misrepresentation. *See, e.g., Legg*, 428 F.3d at 1324 (*citing Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455 (Ala. 2000)) ("those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith");[5] *see also Montgomery Rubber and Gasket Co. v. Belmont Machinery Co.*, 308 F. Supp. 2d 1293, 1298 (M.D. Ala. 2004) (finding agent defendant was, at most, an innocent conduit and thus plaintiff could not maintain fraud claim against him when plaintiff did not allege agent "made any representations whatsoever to [plaintiff]" or "had any knowledge of the [alleged misrepresentation]"); *Bloodsworth*, 2005 WL 3470337, at *4; *In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1 (applying Alabama law and concluding that pharmaceutical representatives were fraudulently joined and not liable under either AEMLD or non-AEMLD claims). Accordingly, Plaintiff's Motion should be denied.[6]

---

[5] Plaintiff argues that the conduit rule recited in *Fisher* and by the Eleventh Circuit in *Legg* is limited to the context of independent contractors. *See* Pl.'s Br. In Support of Mo. To Remand at 17-18. This is wrong. Not only did the Eleventh Circuit not impose any such limitations in applying it to pharmaceutical representatives in the *Legg* case, but, in *Fisher*, the Alabama Supreme Court cited its own precedents of *Speigner v. Howard*, 502 So. 2d 367, 371 (Ala. 1987) and *Miller v. Sexton*, 549 So. 2d 10, 12 (Ala. 1989), in making clear that this rule is one of general application and is not limited in the manner Plaintiff argues. *See Fisher*, 772 So. 2d at 463.

[6] Plaintiff cites numerous pre-*Legg* cases involving Wyeth in the diet drug litigation. *See* Pl.'s Br. In Support of Mo. To Remand at 8-9. The majority of the Wyeth cases cited by Plaintiff were also cited by the plaintiffs in *Legg*, and thus rejected by the Eleventh Circuit. Moreover, the Eleventh Circuit recognized that "there are dozens of district court decisions finding that Wyeth sales representatives were fraudulently joined as defendants to defeat federal diversity jurisdiction." *Legg*, 428 F.3d at 1320-21. Thus, the contrary Wyeth cases do not survive *Legg*.

B MJA 710077 v1
2902026-000045 05/10/2006

### b.   Plaintiff's fraud and misrepresentation claims do not satisfy the particularity   requirements of Rule 9(b).

Plaintiff's fraud and misrepresentation claims also lack the specificity required to satisfy Rule 9(b). *See* Fed. R. Civ. P. 9(b) (requiring that allegations of fraud be stated with particularity), Ala. R. Civ. P. 9(b), Comment (stating that the Alabama Rule is identical to the federal rule). Thus, Plaintiff cannot maintain any of his fraud-based claims against the Pharmaceutical Representatives.

To maintain a cause of action based on fraud or negligent misrepresentation, Plaintiff must prove that: 1) the defendant made a false representation to the plaintiff; 2) the representation concerned a material fact; 3) the plaintiff relied on the representation; and 4) the plaintiff incurred damage as a proximate result of the reliance. *Reeves Cedarhurst Dev. Corp. v. First American Federal Sav. and Loan Ass'n*, 607 So. 2d 180 (Ala. 1992); *see also* Ala. Code §§ 6-5-101 & 6-5-103 (2002). As stated, averments of fraud must be stated with particularity under either federal or Alabama law. Fed. R. Civ. Pro. 9(b); Ala. R. Civ. P. 9(b), Comment. Particularity "requires plaintiff in pleading fraud to distinguish among defendants and specify their respective role in the alleged fraud." *McAllister Towing & Transp. Co. v. Thorn's Diesel Serv. Inc.*, 131 F. Supp. 2d 1296, 1302 (M.D. Ala. 2001). The pleading requirements are not satisfied if plaintiff fails to "distinguish among defendants and specify their respective role in the alleged fraud." *Id.* Thus, a plaintiff must allege the time, place, content and speaker of the allegedly

17

fraudulent misrepresentations. *Id.*; *accord In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1 (applying Alabama law and concluding that pharmaceutical representatives were fraudulently joined where plaintiff's fraud-based claims lacked specificity).

Here, Plaintiff's allegations fail to allege the essential elements of fraud and misrepresentation. Plaintiff alleges in his Complaint:

> Defendants recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical, pharmaceutical and/or scientific communities, and user and/or consumers of the drug, including Plaintiff, the safety and efficacy of the drug ....
> Complaint ¶ 123.

> Defendants negligently misrepresented or failed to exercise reasonable care in representing to the medical, pharmaceutical and or scientific communities and users and or consumers of the drug, including Plaintiff, the safety and efficacy of the drug ....
> Complaint ¶ 138.

The Complaint fails to specify time, place, content or speaker of <u>any</u> particular representations by the Pharmaceutical Representatives.    Such general allegations fail to meet the requirements of Rule 9(b).

> **c.**    **Plaintiff fails to state legally cognizable claims against the Pharmaceutical Representatives for violation of the AEMLD or for breach of express or implied warranty.**

To the extent Plaintiff asserts products liability claims against the Pharmaceutical Representatives for violation of the AEMLD or for breach of express or implied warranty not already addressed above, there is no reasonable

18

basis to predict that he can prevail as these claims apply only to "sellers" and "manufacturers" and the Pharmaceutical Representatives are  not "sellers" or "manufacturers" of Celebrex®.  *See* Affs. of Vandelune, Klement, Peacock and Guckenberg ¶¶ 2, 5, 6 (Exhibit H); *see also* Affs. of McWhorter and McClurkin ¶¶ 2, 6 (Exhibit I and attached as Exhibit 4 to Notice of Removal.)  Plaintiff's negligence claims, although not denominated as AEMLD violations, are as a practical matter AEMLD claims or otherwise fail.  *See, e.g., In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1 (applying Alabama law and concluding that pharmaceutical representatives were fraudulently joined and not liable under either AEMLD or non-AMELD based-claims); *In re Rezulin Prods. Liab. Litig.,* 133 F. Supp. 2d at 287 (applying Alabama law and finding resident pharmaceutical representatives fraudulently joined in claims for product liability under AEMLD, negligence, wantonness, fraudulent misrepresentation, and fraudulent suppression).

To establish liability under the AEMLD, a plaintiff must prove defendants manufactured or sold the allegedly defective product.  *Turner v. Azalea Box Co., 508 So. 2d 253, 254 (Ala. 1987).*  But, under Alabama law, pharmaceutical representatives under Alabama law are not considered to be sellers or suppliers of the prescription drugs they represent.  *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 287.  The AEMLD is "founded on broader moral notions of consumer protection and on economic and social grounds, placing the burden to compensate

for loss incurred by defective products on the one best able to prevent the distribution of those products." *Atkins v. American Motors Corp.,* 335 So. 2d 134, 139 (Ala. 1976); *see also Bowman v. Coleman Co.*, Civil Action No. 96-0448-P-C, slip op. at 8-11 (S.D. Ala. Sept. 3, 1996) (Magistrate Report and Recommendation) (declaring salesman fraudulently joined and finding salesman could have no personal liability on a negligence theory because the salesman owed no duty to the plaintiff to prevent the heater from entering the stream of commerce and because the salesman lacked the training and expertise to perform an inspection as to the safety of the heater) (Exhibit J).    Accordingly, the AEMLD does not impose liability on lower level employees of a seller or supplier because "neither the applicable case law nor the policy objectives articulated by the Alabama and other state courts support the extension of the AEMLD to encompass [employees of the seller or supplier]." *Bowman*, slip op. at 8 (retail store manager is not a "seller"); *see also Devise v. Kenmore*, CV 03-J-943-S, slip op. at 6 (N.D. Ala. May 12, 2003) (Sears sales representatives not "sellers" under AEMLD) (Exhibit K).

Moreover, the Pharmaceutical Representatives' uncontested affidavits constitute affirmative proof through their declarations that they are not a "sellers" or "manufacturers." (Exhibits H and I).    To the contrary, they are simply "detailers" on behalf of their employer, Pfizer. *See, id.* ¶¶ 1-2, 4.  Therefore, they cannot be held liable under product liability causes of action.

20

Further, Plaintiff fails to allege any underlying facts establishing that the Pharmaceutical Representatives acted outside the scope of their employment such that they can be held personally liable under the AEMLD. Alabama law requires that a corporate employee personally participate in the alleged corporate wrongdoing to be liable under the AEMLD. *See, e.g., Turner v. Hayes,* 719 So. 2d 1184, 1188 (Ala. Civ. App. 1997) ("corporate employees are liable personally for the wrongful action of the company or its other employees only if they personally participate in the tort."), *rev'd in part on other grounds sub nom. Ex parte Atmore Cmty. Hosp.,* 719 So. 2d 1190 (Ala. 1998); *Devise,* slip op. at 7-8 (applying Alabama law and finding that an appliance salesman had no duty of disclosure to the plaintiff for an alleged defect in the product); *Mills v. Wex-Tex Indus.* 991 F. Supp. 1370, 1381-82 (M.D. Ala. 1997) (employee not individually liable absent allegation of personal participation in alleged tortious conduct). Because the Pharmaceutical Representatives neither manufactured, sold, designed, tested nor participated in the development of Celebrex®, there is no possibility that Plaintiff can state a viable negligence and/or AEMLD claim against them.

As to Plaintiff's breach of warranty claims, Alabama law likewise precludes any possibility that Plaintiff can hold the Pharmaceutical Representatives liable for breach of warranty. *See, e.g.*, Ala. Code §§ 7-2-313(1) & 7-2-314(1) (2002) (both express and implied warranty claims refer to the creation of warranties by the

21

"seller"); *In re Rezulin Prods. Liab. Litig.,* 133 F. Supp. 2d at 286 ("seller" who makes warranties about a prescription medicine is the "pharmaceutical manufacturer," and not the professional representative). Plaintiff alleges:

> Defendant [sic] Searle, Pharmacia, Monsanto, Pfizer, Robert Vandelune, Samuel Klement; Jamie Peacock; Ben McClurkin, Rod McWhorter and Tiffany Guckenbery [sic] ... made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Celebrex.
> [Complaint ¶ 104.]
>
> At the time that Defendants designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Celebrex (Celecoxib), Defendants knew of the intended, reasonably foreseeable and/or ordinary use of Celebrex (Celecoxib) and impliedly warranted the drug to be of merchantable quality and safe and fit for such use. [*Id.* at ¶113.]

Plaintiff does not attempt to offer a factual basis for his warranty claims. Yet even if he had, he cannot maintain an action for breach of warranty against the Pharmaceutical Representatives who (as explained above) are not sellers and thus, cannot be liable as warrantors of a product. Under breach of express warranty, plaintiff must prove that a manufacturer or seller of a product made "[a]ny affirmation of fact or promise . . . which relates to the goods and becomes part of the basis of the bargain . . " Ala. Code §7-2-213(1)(a) (2002). An implied warranty arises when a "seller is a merchant with respect to goods of that kind." Ala. Code §7-2-314(1) (2002). Both breach of express and implied warranty

22

claims require a finding that a seller or manufacturer breached a warranty. Here, the Pharmaceutical Representatives are not considered "sellers" under Alabama law. *See, e.g., Bowman*, slip op. at 8 (retail store manager is not a "seller"); *Devise,* slip op. at 2 (sales representative at Sears is not a seller under AEMLD); *see also Johnson v. Parke-Davis,* 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000) ("Plaintiffs have not cited any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as a warrantor of the product."); *see also* Restatement (Third) of Torts: Product Liability §20, cmt. g. (1998) (in defining one who sells or otherwise distributes stating that "[p]ersons assisting or providing services to product distributors . . . are not subject to liability under the rules of this Restatement. . . . Sales personnel and commercial auctioneers are also outside the rules of this Restatement.").[7]

Accordingly, as with Plaintiff's AEMLD and negligence claim, because pharmaceutical representatives are not considered sellers or distributors under Alabama law, the Pharmaceutical Representatives cannot be liable as a warrantors of Celebrex® under claims for breach of warranty.

      **d.    Plaintiff fails to establish legally cognizable claims for failure to warn.**

---

[7] Significantly, even if the Pharmaceutical Representatives were considered to be "sellers," which they are not, mere delivery by a seller to a buyer of the manufacturer's express warranty is not sufficient to make the manufacturer's express warranty become an express warranty by the seller. *Courtesy Ford Sales, Inc. v. Farrior,* 298 So. 2d 26 (Ala. App. 1974), *superseded by statute on other grounds, Arnold v. Campbell,* 398 So. 2d 301 (Ala. App. 1981).

Under Alabama law, a prescription drug manufacturer satisfies its duty to warn under a AEMLD and negligent failure to warn theory, by distributing an adequate warning to the prescribing physician. *Stone v. Smith, Kline & French Labs.*, 447 So. 2d 1301, 1305 (Ala. 1984) (holding that an adequate warning to the prescribing physician, but not to the ultimate consumer, is sufficient as a matter of law to avoid liability under the AEMLD in the case of a prescription drug); *id.* at 1304 (holding that the prescribing physician is best suited to evaluate the characteristics of the medication vis-à-vis the needs and background of the patient); *Gurley v. American Honda Motor Co.*, 505 So. 2d 358, 361 (Ala. 1987) (holding that a manufacturer fulfills its negligent failure to warn cause of action, as a matter of law, by distributing the product with reasonable warnings); *Purvis v. PPG Indus., Inc.*, 502 So. 2d 714, 718 (Ala 1987).

Plaintiff summarily argues that the Pharmaceutical Representatives called upon Plaintiff's unnamed prescribing physician and that Plaintiff allegedly ingested Celebrex®. (Pl.'s Br. in Support of Mo. to Remand, at 24-25). Plaintiff asserts, without any specific factual allegations or legal support, that the Pharmaceutical Representatives voluntarily assumed a duty to warn. Plaintiff's argument is without merit. *See, e.g., In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1; *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 287. Plaintiff fails to allege any facts indicating that the Pharmaceutical Representatives had any

24

unique or specialized knowledge or information and warnings contained in the FDA approved physician package insert that they had an obligation to disclose to prescribing physicians. Moreover, the Pharmaceutical Representatives submitted uncontroverted affirmative proof in their declarations that they had no knowledge about the risks and benefits of Celebrex® other than what was provided to them by the diverse Defendants and in the FDA-approved warnings. Vandelune, Klement, Peacock and Guckenberg Affs. ¶ 4; *see* Affs. of McWhorter and McClurkin ¶ 4. The Pharmaceutical Representatives further presented uncontested proof that they are not physicians or pharmacists and do not have any specialized medical or pharmacological education. *Id.* Thus, Plaintiff cannot state a viable cause of action against the Pharmaceutical Representatives for failure to warn.

> **e.** **Plaintiff fails to state legally cognizable claims against the Pharmaceutical Representatives for design defect.**

Plaintiff can also make no viable claim against the Pharmaceutical Representatives for defective design. The Pharmaceutical Representatives' undisputed affidavits state that they had no involvement with the design or manufacturing of Celebrex® and therefore have no possible connection to this claim. Vandelune, Klement, Peacock and Guckenberg Affs. ¶ 6. In order to establish a design defect claim, Plaintiff must prove (among many other things) that a safer, more practical alternative design was available to "the *manufacturer*" at the time it manufactured the product. *General Motors Corp. v. Edwards*, 482

B MJA 710077 v1
2902026-000045 05/10/2006

So. 2d 1176, 1189 (Ala. 1985) (emphasis added), *overruled on other grounds*
*Schwartz v. Volvo North Am. Corp.*, 554 So. 2d 927 (Ala. 1989). As such, this
claim is plainly targeted at the manufacturer, not the detailers and Plaintiff cannot
maintain an action for design defect against the Pharmaceutical Representatives.
Again, the Pharmaceutical Representatives have submitted uncontroverted
affirmative proof through their declarations that they are not "manufacturers" or
designers of Celebrex® and, thus, cannot be held liable for design defect.

    2.    **Plaintiff's claims against the Pharmaceutical Representatives fail
to set forth any specific factual allegations, and there is "no better
admission of fraudulent joinder."**

There is "no better admission of fraudulent joinder" of a non-diverse
defendant, such as the Pharmaceutical Representatives, than a plaintiff's failure "to
set forth any specific factual allegations" against that defendant. *Lyons v.
American Tobacco Co.,* 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997).
Plaintiff's Complaint not only lacks sufficient legal allegations against all of the
Pharmaceutical Representatives, Plaintiff's Complaint also wholly lacks any
factual basis whatsoever as to Defendants Samuel McClurkin and Rod McWhorter.
Neither Mr. McClurkin or Mr. McWhorter ever detailed Celebrex® to any
physician, at any time, in any place. *See* Affs. of McClurkin and McWhorter
(Exhibit I). They never called on, or communicated information about Celebrex®
to, anyone, much less to Plaintiff or to his unnamed prescribing physician. Like in

Case 2:06-cv-00349-MEF-VPM    Document 11    Filed 05/10/2006    Page 27 of 30

*Legg* , Defendants McClurkin and McWhorter had nothing to do with the drug at issue and were fraudulently joined to defeat diversity jurisdiction and preclude Defendants' removal of this action. With no evidence that Defendants McClurkin and McWhorter had any connection to Celebrex®, there is no reasonable possibility that Plaintiff can establish a cause of action against them. *See Legg*, 428 F.3d at 1324.

Plaintiff's allegations against the remaining Pharmaceutical Representatives in the Complaint lack the requisite factual sufficiency and thus, these Pharmaceutical Representatives were likewise fraudulently joined. *See* Notice of Removal ¶¶ 27-29. To determine fraudulent joinder, a court must evaluate a plaintiff's factual allegations based on the Complaint at the time of removal. *See, e.g., Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1998). Generalized allegations against all defendants are insufficient. *See Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims against "defendants" resulted in finding fraudulent joinder); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d at 140 (pharmaceutical representatives were fraudulently joined where plaintiffs made "no specific allegations" against them).

27

2902026-000045 05/10/2006

Just as in the numerous other suits brought by Plaintiff's counsel, Plaintiff makes generalized and generic factual allegations against all "Defendants" including:

> Defendants engaged in a marketing campaign with the intent that consumers would perceive Celebrex as a safer and better drug than its other NSAIDs and, therefore, purchase Celebrex. [Complaint ¶ 59.]

> Defendants widely and successfully marketed Celebrex throughout the United States by, among other things, conducting promotional campaigns that misrepresented the efficacy of Celebrex in order to induce a widespread use and consumption. Celebrex was represented to aid the pain and discomfort of arthritis, osteoarthritis, and related problems. Defendants made misrepresentations by means of media advertisements and statements contained in sales literature provided to Decedent's [sic] prescribing physicians. [*Id.* ¶ 60.]

> In an elaborate and sophisticated manner, Defendants aggressively marketed Celebrex directly to consumers and medical professionals (including physicians and leading medical scholars) in order to leverage pressure on third party payers, medical care organizations, and large institutional buyers (e.g. hospitals) to include Celebrex on their formularies.... [*Id.* ¶ 62.]

Plaintiff's Complaint fails to state any case specific facts upon which a viable claim can be based against the Pharmaceutical Representatives. For example, Plaintiff's Complaint fails to identify Plaintiff's alleged prescribing physician, fails to allege how the Pharmaceutical Representatives called on or communicated with Plaintiff or with his prescribing physician, fails to allege exactly what information the Pharmaceutical Representatives allegedly misrepresented or concealed to Plaintiff or to his prescribing physician, and fails to

B MJA 710077 v1
2902026-000045 05/10/2006

allege that Plaintiff or his prescribing physician relied on such information. Indeed, although Plaintiff could have identified his prescribing physician, information completely in his hands, he did not. In sum, Plaintiff's Complaint is devoid of any case specific facts supporting a claim against the Pharmaceutical Representatives. Moreover, as fully detailed above, even in the face of the Pharmaceutical Representatives' affidavits, Plaintiff has come forward with nothing but unsupported speculation. It is thus transparent that the Pharmaceutical Representatives have been fraudulently joined to defeat diversity jurisdiction.

## IV. CONCLUSION

Plaintiff has fraudulently joined the Pharmaceutical Representatives in an attempt to preclude Defendants from exercising their right of removal. In the event the Court does not stay proceedings in this case, Plaintiff's Motion to Remand should be denied.

Respectfully submitted,

Lawrence B. Clark
M. Jason Asbell
*Counsel for Defendants*

29

OF COUNSEL:

BAKER DONELSON
420 North 20th Street, Suite 1600
Birmingham, Alabama 35203
205-328-0480

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the _10_ day of May, 2006, I caused
the foregoing to be filed via the CM/ECF system, which will automatically provide
electronic notice to the following counsel of record:

Navan Ward, Jr.
Andy D. Birchfield, Jr.
Paul Sizemore
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
P.O. Box 4160
Montgomery, AL 36103
Shane Seaborn
Myron Penn
Penn & Seaborn LLC
P.O. Box 688
Clayton, AL  36016

OF COUNSEL

30