FILED
2006 May-10 PM 01:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| Dr. GENE N. GORDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO.: |
| v. ) | |
| ) | CV-06-RRA-703-E |
| PFIZER INC., et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On February 14, 2006, Plaintiff filed this action in the Circuit Court of Talladega County, Alabama. The action is brought by the plaintiff, Dr. Gene N. Gordon, against the defendants, G.D. Searle, LLC., Pharmacia Corporation, Monsanto Company, Pfizer, Inc., and Ron Pollard. The complaint alleges that the prescription drug Bextra (Valdecoxib) caused the plaintiff to have a heart attack, and otherwise be injured. The following causes of action are alleged against all defendants: negligence (count I), defective design (count II), failure to warn (count III), breach of express warranty of merchantability (count IV), breach of implied warranty of merchantability (count V), fraud (count VI), and negligent misrepresentation (count VII). The individual defendant, Ron Pollard, is the only non-diverse defendant.

There is no dispute that Plaintiff and Defendants Searle, Pharmacia, and Pfizer are "citizens of different States" for purposes of 28 U.S.C. § 1332(a)(1) or that the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.[1]  *See*

---

[1] Specifically, Plaintiff Dr. Gene Gordon is, and was at all relevant times, an adult resident and citizen of Alabama. *See* Notice of Removal ¶ 6. Pfizer is now, and was at the time of filing of the Complaint, a corporation organized



EXHIBIT
F

*Notice of Removal*, ¶¶ 3-11; *Brief in Support of Motion to Remand*, at 1. Plaintiff also has named a non-diverse pharmaceutical detailer Rod Pollard. The defendants assert that Pollard has been fraudulently joined.

On September 6, 2005, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ("JPML") created a Multi-district Litigation ("MDL") proceeding for Bextra cases such as this pending in federal courts across the country. *See In re Bextra & Celebrex Marketing, Sales Practices & Prods. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L. 2005). On April 11, 2006, Defendants sent a "tag-along" letter regarding this action to the JPML pursuant to Rules 7.4 and 7.5 of the Rules of Procedure of the JPML. On May 2, 2006, the JPML listed the instant case on a conditional transfer order ("CTO").

The JPML routinely transfers cases in which remand motions are pending. Moreover, the JPML previously instructed federal district judges with Bextra®-related cases such as this one on their docket that although "you are free to rule on the motion [to remand], of course, or wait until the Panel has decided the transfer issue[,] [t]he latter course may be especially appropriate if the motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there." JPML Ltr. Re: MDL-1699—*In re Bextra & Celebrex Marketing, Sales Practices & Prods. Liab. Litig.* at 1 (J.P.M.L.

---

under the laws of Delaware with its principal place of business in New York, and therefore is and was a citizen of Delaware and New York. *Id.* ¶ 7. Pharmacia is now, and was at the time of filing of the Complaint, a corporation organized under the laws of Delaware with its principal place of business in New Jersey, and therefore is and was a citizen of Delaware and New Jersey. *Id.* ¶ 8. Searle is now, and was at the time of filing of the Complaint, a limited liability company whose sole member is (and was) Pharmacia & Upjohn Company LLC, a limited liability company whose sole member is (and was) Pharmacia & Upjohn LLC, a limited liability company whose sole member is (and was) Pharmacia Corporation which is (and was) a corporation existing under the laws of the state of New Jersey. *Id.* ¶ 9. Monsanto is not a citizen of Alabama. *Id.* ¶ 10.

May 13, 2005).

The defendants wish this matter stayed pending full transfer of the case, and so have filed a motion to stay all proceedings pending transfer to multidistrict litigation proceeding. (Doc. 5). Numerous cases involving the joinder of Alabama pharmaceutical representatives already have transferred, or are in the process of transferring, to the MDL Court. *See, e.g., See Jackson v. Pfizer, Inc. et al.*, CV-2:05-cv-841-F (M.D. Ala. Dec. 5, 2005) (Walker, J.); *Nelson v. Pfizer, Inc., et al.*, CV-2:05-cv-832-F (M.D. Ala. Oct. 20, 2005) (Fuller, J.); *Thomas v. Pfizer, Inc. et al.*, CV-2:05-cv-824-F (M.D. Ala. Nov. 15, 2005) (Fuller, J.); *Hall v. Pfizer, Inc., et al.*, CV-2:05-cv-941-F (M.D. Ala. Nov. 21, 2005) (McPherson, J.); *Beverly v. Pfizer, Inc., et al.*, CV-05-0542-M, (S.D. Ala. Nov. 17, 2005) (Milling, J.); *see also* February 14, 2006 Transfer Order; Conditional Transfer Order (CTO) CTO-3.

The plaintiff has filed a motion to remand, claiming that this court lacks subject matter jurisdiction over this case. (Doc. 6). Because the fraudulent joinder issue rests on the determination of Eleventh Circuit and Alabama law, it is determined that this court is the proper court to determine those issues.

## II.    ANALYSIS

### A.    Fraud and Misrepresentation Claims

The plaintiff does not dispute defendants' showing that there is complete diversity between plaintiff and the remaining defendants or that the amount in controversy requirement is met. The only aspect of this court's diversity jurisdiction that plaintiff challenges is whether Pollard is fraudulently joined. The citizenship of fraudulently joined defendants should is disregarded for purposes of assessing diversity and proper removal. *See*

3

*e.g., Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996), *rev'd on other grounds,* 204 F.2d 1069 (11th Cir., 2000). Under the Eleventh Circuit's standard for fraudulent joinder, remand should be denied where there is "no reasonable possibility" that the named pharmaceutical representatives could be found liable on plaintiffs' claims; the potential for liability "must be reasonable, not merely theoretical." *Legg v. Wyeth,* 428 F.3d 1317, 1325, & n. 5 (11th Cir. 2005).

"The removal process was created by Congress to protect defendants. Congress 'did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.'" *See Legg v. Wyeth,* 428 F.3d 1317, 1325 (11th Cir. 2005) (internal quotation marks omitted). "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court . . . ." *Wecker v. Nat'l Enamiling & Stamping Co.,* 204 U.S. 176, 186 (1907).

The doctrine of fraudulent joinder prevents plaintiffs from defeating federal diversity jurisdiction by simply naming in-state defendants. In *Legg v. Wyeth,* 428 F.3d 1317, 1325 (11th Cir. 2005), the Eleventh Circuit recently recognized this "common strategy employed" by plaintiffs in pharmaceutical product liability cases such as this in which plaintiffs' "name local parties, often ... local sales representatives, as defendants, thus defeating [a defendant's] right to remove a case to federal court." *See Legg,* 428 F.3d at 1325. In *Legg,* the Eleventh Circuit explained the proper standard for determining whether a pharmaceutical representative defendant is fraudulently joined. Joinder of a non-diverse defendant is fraudulent where there is "no reasonable possibility" that the plaintiff would be able to

4

establish a cause of action against a resident defendant. *See, e.g., Legg*, 428 F.2d at 1325; *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

Fraudulent joinder may be shown by a lack of a factual or legal basis for plaintiff's claims. *See Owens v. Life Ins. Co. of Georgia*, 289 F.Supp.2d 1319, 1323-24 (M.D.Ala. 2003) (Fuller J) (denying remand and finding no possibility that plaintiff could establish a cause of action against the resident defendant and thus resident was fraudulently joined). "In considering *possible* state law claims, possible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role." *Legg*, 428 F.3d at 1325 n.5 *(quoting Braden v. Wyeth,* CV-04-PT-235-E, 2005 U.S. Dist LEXIS 25243) (N.D. Ala. June 30, 2004).

The thrust of Plaintiff's argument in his Motion to Remand is that numerous unnamed pharmaceutical representatives in Alabama made fraudulent and negligent misrepresentations and failed to disclose that Bextra causes heart attacks, the injury of which Plaintiff complains. *Brief in Support of Motion to Remand*, at 11-21 (focusing strictly on claims of misrepresentation, fraud and suppression as it relates to other pharmaceutical representatives).

As the Eleventh Circuit recently explained in *Legg*, Plaintiff cannot assert fraud or negligent misrepresentation claims against Pollard because Plaintiff fails to specifically allege knowledge or bad faith on his part. In *Legg*, as here, plaintiffs asserted numerous claims against the pharmaceutical companies and pharmaceutical representatives, including claims for fraud based on allegations that the defendants made misrepresentations and suppressed certain facts related to the prescription medication, Redux. Defendants removed the case

5

on diversity grounds, arguing fraudulent joinder of the three named non-diverse pharmaceutical representatives. The defendants submitted a sworn affidavit from one of the defendant pharmaceutical representatives that she had promoted the drug in question to licensed healthcare providers and answered their questions based on information provided to her by her employer. *Id.* at 1321. The affidavit stated, in pertinent part:

- My knowledge of the drugs I detailed was derived exclusively from education provided to me by Wyeth.

- I had no involvement in the development or preparation of package inserts for any of the drugs, and had no control over content or other written warnings.

- I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so.

- I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Wyeth.

*Legg*, 428 F.3d at 1321.

In response to defendants' submission, plaintiffs offered as evidence voluminous training materials used by the pharmaceutical companies and its sales representatives in marketing Redux, as well as affidavits from several physicians stating that the pharmaceutical representatives had made misrepresentations to them. *Id.* at 1322 & n.4. Plaintiffs argued that the training materials established that pharmaceutical representatives had knowledge of adverse events associated with Redux. *See id.* at 1322-25. Plaintiffs further argued that the professional representatives learned disingenuous detailing strategies to be used in detailing Redux, including withholding information from physicians. *See id.*

Applying Alabama law, the Eleventh Circuit court found "no reasonable possibility" that the named pharmaceutical representatives could be found liable on plaintiffs' claims. *See*

6

*Legg*, 428 F.3d at 1324-1325 & n. 5 (stating the potential for legal liability "must be reasonable, not merely theoretical") (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). The Eleventh Circuit held that "[q]uite simply, there is no reasonable basis to predict that an Alabama court would find [the pharmaceutical representative] as an individual employee, personally liable for any wrongful action by Wyeth in absence of evidence that [the individual pharmaceutical representative] either knew or should have known of Redux's allegedly dangerous effects." *Id.* at 1324-25.

The Court explained that when a defendant presents evidence "the court cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint. *Id.* at 1323.

Here, as in *Legg*, Defendant Pollard has submitted a declaration stating:

- As a detailer, I visit physicians and healthcare providers' offices and provide them FDA-approved package inserts and other FDA-approved information about Pfizer's products, which is referred to as "detailing." My job is to make the physician aware of certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.

- I am not a physician or pharmacist. I have no specialized medical or pharmacological education. All of the information and material I use to detail Pfizer's drugs, including Bextra, is derived exclusively from education provided to me by Pfizer. Pfizer provides me with the FDA-approved package inserts and other FDA-approved information for the medications I detail.

- I was not aware of, and did not detail physicians with, any additional information regarding the risks or benefits of Bextra other than what was provided to me by Pfizer and in the FDA-approved labeling.

- I have no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

- At no time did I have any involvement with the design, manufacture, development or testing of the prescription medication Bextra, nor did I have any involvement in the FDA-approved package insert for Bextra.

7

- At no time did I ever sell, offer to sell, or take orders for the sale of Bextra to health care providers, physicians or patients.

- I have never made any presentations to the general public concerning Bextra.

*Pollard Affidavit*, at 1-3.

In response, plaintiff attaches various portions of call notes from Alabama pharmaceutical representatives other than Pollard. Indeed, Plaintiff concedes that the call notes are "from various *other* Pfizer Defendant sales representatives in Alabama. . ." and are not call notes or other documentation regarding any alleged misrepresentations made by Pollard. *Brief in Support of Motion to Remand*, at 11 (emphasis added). Plaintiff fails to provide any evidence or even make any specific allegations related to any specialized knowledge by Rod Pollard. Rather, Plaintiff's Complaint and Motion to Remand contain conclusory allegations and deductions:

- As evidenced by the call notes from various other Pfizer Defendant sales representatives in Alabama, the Plaintiff *has alleged and anticipates* he will be able to show that . . . Rod Pollard, fraudulently suppressed material information . . . and misrepresented the safety and efficacy of Bextra.

- Plaintiff also *anticipates* that he will be able to show that [Rod Pollard] participated in an aggressive marketing campaign. . .

- Plaintiff *anticipates* that discovery will show that [Rod Pollard's] knowledge concerning Bextra was superior to the knowledge held by the physicians to whom he made sales calls.

- Plaintiff also *anticipates* that discovery will show that the Plaintiff, as a physician who took Bextra, relied on information provided by Defendants.

*Id.* at 11-14 (emphasis added). The Eleventh Circuit has explained that such "unsupported allegations" do not provide a basis for remand: "*We do not, however, in the absence of any proof assume that the nonmoving party [plaintiff] could or would prove the necessary facts.*"

8

*Legg*, F.3d at 1323 (internal quotation omitted and emphasis original).

Plaintiff also seeks to bolster his claims by referencing documents by a separate pharmaceutical company involving a separate prescription medication. *Id.* at 22 (describing detailing material allegedly from VIOXX litigation). Plaintiff speculates that he "expects that he will be able to obtain similar documents in the present case once he has had an opportunity to conduct discovery." *Id.* at 23. Plaintiff's arguments are without merit because in determining a motion to remand, a court looks to the allegations in the complaint, rather than Plaintiff's wishful speculation about what factual allegations could be made following discovery. *See Legg*, 428 F.3d at 1323 (in light of defendant's affidavits, plaintiff cannot support its motion to remand with "unsupported allegations"); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) (holding that court should determine jurisdiction based on the plaintiff's pleadings at the time of removal).

The plaintiff also provides his own affidavit in which he states:

- I rely on the information that the sales representatives provide to me concerning the safety of their drugs. This information is a strong factor in whether I decide to prescribe a medication to a particular patient or to take it myself.

- Rod Pollard . . . visited my office on a few occasions in order to promote the drug Bextra. During each visit, Mr. Pollard provided me with a several months supply of Bextra for my personal use.

- In promoting the drug Bextra, Mr. Pollard discussed the strong safety and effacacy of Bextra. Mr. Pollard also shared positive information concerning the overall safety of Bextra.

- At no time did Mr. Pollard ever inform me of any potential cardiovascular risks associated with Bextra.

- Based on Mr. Pollard's representations of the effacacy and safety of Bextra, I prescribed Bextra to my patients. Additionally, I used the samples that Mr.

9

Pollard provided to me for my personal use.

*Gotdon Affidavit*, at 1-2. This language provides no evidence that Pollard either knew or should have known about any alleged risk of Bextra. Further, this language does not provide evidence or even make any allegations related to any specified knowledge by Pollard other than what was provided by his employer and in the FDA-approved labeling.

Without any competent evidence that Pollard made knowing misrepresentations or acted in bad faith – and particularly in light of Pollard's statement that he had no specialized knowledge about Bextra and relied entirely on information provided to him by Pfizer – there is "no reasonable possibility" that an Alabama court would conclude that he is liable for fraud or misrepresentation. *See, e.g., Legg*, 428 F.3d at 1324; (*citing Fisher v. Comer Plantation, Inc.*, 772 So.2d 455 (Ala. 2000)) ("those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith"); *see also Montgomery Rubber and Gasket Co. v. Belmont Machinery Co.*, 308 F.Supp. 2d 1293, 1298 (M.D. Ala. 2004) (finding agent defendant was, at most, an innocent conduit and thus plaintiff could not maintain fraud claim against him when plaintiff did not allege agent "made any representations whatsoever to [plaintiff]" or "had any knowledge of the [alleged misrepresentation]"); *Bloodsworth*, 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005); *In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1 (applying Alabama law and concluding that pharmaceutical representatives were fraudulently joined and not liable under either AEMLD or non-AEMLD claims).

Plaintiff's fraud and misrepresentation claims also lack the specificity required to satisfy Rule 9(b). *See* Fed. R. Civ. P. 9(b) (requiring that allegations of fraud be stated with

10

particularity), Ala. R. Civ. P. 9(b), Comment (stating that the Alabama Rule is identical to the federal rule). Thus, Plaintiff cannot maintain any of his fraud-based claims against Pollard. To maintain a cause of action based on fraud or negligent misrepresentation, Plaintiff must prove that: 1) the defendant made a false representation to the plaintiff; 2) the representation concerned a material fact; 3) the plaintiff relied on the representation; and 4) the plaintiff incurred damage as a proximate result of the reliance. *Reeves Cedarhurst Dev. Corp. v. First American Federal Sav. and Loan Ass'n*, 607 So.2d 180 (Ala.1992); *see also* Ala. Code §§ 6-5-101 & 6-5-103 (2002). As stated, averments of fraud must be stated with particularity under either federal or Alabama law. Fed. R. Civ. Pro. 9(b); Ala. R. Civ. P. 9(b), Comment. Particularity "requires plaintiff in pleading fraud to distinguish among defendants and specify their respective role in the alleged fraud." *McAllister Towing & Transp. Co. v. Thorn's Diesel Serv. Inc.*, 131 F.Supp.2d 1296, 1302 (M.D. Ala. 2001). The pleading requirements are not satisfied if plaintiff fails to "distinguish among defendants and specify their respective role in the alleged fraud." *Id.* Thus, a plaintiff must allege the time, place, content and speaker of the allegedly fraudulent misrepresentations. *Id.*; *accord In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1 (applying Alabama law and concluding that pharmaceutical representatives were fraudulently joined where plaintiff's fraud-based claims lacked specificity).

Here, Plaintiff's allegations fail to allege the essential elements of fraud and misrepresentation. Plaintiff alleges in his Complaint:

> Defendants recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical, pharmaceutical and/or scientific communities, and user and/or consumers of the drug, including Plaintiff, the safety and efficacy of the drug ....

*Complaint* ¶ 73.

11

The Complaint fails to specify time, place, content or speaker of <u>any</u> particular representations by Pollard. Such general allegations fail to meet the requirements of Rule 9(b).

### B. Plaintiff fails to state legally cognizable claims against Pollard for violation of the AEMLD or for breach of express or implied warranty.

To the extent Plaintiff asserts products liability claims against Pollard for violation of the AEMLD or for breach of express or implied warranty not already addressed above, there is no reasonable basis to predict that he can prevail as these claims apply only to "sellers" and "manufacturers" and Pollard is not a "seller" or "manufacturer" of Bextra. *See Pollard Affidavit* ¶¶ 2, 5, 6. Plaintiff's negligence claims, although not denominated as AEMLD violations, are as a practical matter AEMLD claims or otherwise fail. *See, e.g., In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1 (applying Alabama law and concluding that pharmaceutical representatives were fraudulently joined and not liable under either AEMLD or non-AEMLD based-claims); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 287 (applying Alabama law and finding resident pharmaceutical representatives fraudulently joined in claims for product liability under AEMLD, negligence, wantonness, fraudulent misrepresentation, and fraudulent suppression).

To establish liability under the AEMLD, a plaintiff must prove defendants manufactured or sold the allegedly defective product. *Turner v. Azalea Box Co.*, 508 So.2d 253, 254 (Ala. 1987). But, under Alabama law, pharmaceutical representatives under Alabama law are not considered to be sellers or suppliers of the prescription drugs they represent. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 287. Moreover, Pollard's

affidavit constitutes affirmative proof through his declaration that he is not a "seller" or "manufacturer." To the contrary, he is simply a "detailer" on behalf of his employer, Pfizer. Therefore, he cannot be held liable under product liability causes of action.

Further, Plaintiff fails to allege any underlying facts establishing that Pollard acted outside the scope of his employment such that he can be held personally liable under the AEMLD. Alabama law requires that a corporate employee personally participate in the alleged corporate wrongdoing to be liable under the AEMLD. *See, e.g., Turner v. Hayes,* 719 So.2d 1184, 1188 (Ala. Civ. App. 1997) ("corporate employees are liable personally for the wrongful action of the company or its other employees only if they personally participate in the tort.") *rev'd in part on other grounds sub nom. Ex parte Atmore Cmty. Hosp.,* 719 So. 2d 1190 (Ala. 1998); *Mills v. Wex-Tex Indus.* 991 F. Supp. 1370, 1381-82 (M.D. Ala.1997) (employee not individually liable absent allegation of personal participation in alleged tortious conduct). Because Pollard neither manufactured, sold, designed, tested nor participated in the development of Bextra, there is no possibility that Plaintiff can state a viable negligence and/or AEMLD claim against him.

As to Plaintiff's breach of warranty claims, Alabama law likewise precludes any possibility that Plaintiff can hold Pollard liable for breach of warranty claims. *See, e.g.,* Ala. Code §§ 7-2-313(1) & 7-2-314(1) (2002) (both express and implied warranty claims refer to the creation of warranties by the "seller"); *Rezulin I,* 133 F. Supp. 2d at 286 ("seller" who makes warranties about a prescription medicine is the "pharmaceutical manufacturer," and not the professional representative). Plaintiff alleges:

> Defendants Searle, Pharmacia, Monsanto, Pfizer and Pollard...made express

13

> representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Bextra.

Complaint ¶ 54.

> At the time that Defendants designed, tested, inspected, manufactured, assumed, developed, labeled, sterilized, licenses, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Bextra (Valdecoxib), Defendants knew of the intended, reasonably foreseeable and/or ordinary use of Bextra (Valdecoxib) and impliedly warranted the drug to be of merchantable quality and safe and fit for such use.

*Id.* at ¶ 63.

Plaintiff does not attempt to offer a factual basis for his warranty claims. Yet even if he had, he cannot maintain an action for breach of warranty against Pollard who (as explained above) is not a seller and thus, cannot be liable as a warrantor of a product. Under breach of express warranty, plaintiff must prove that a manufacturer or seller of a product made "[a]ny affirmation of fact or promise . . . which relates to the goods and becomes part of the basis of the bargain . . " Ala. Code §7-2-213(1)(a) (2002). An implied warranty arises when a "seller is a merchant with respect to goods of that kind." Ala. Code §7-2-314(1) (2002). Both breach of express and implied warranty claims require a finding that a seller or manufacturer breached a warranty. Here, Pollard is not considered a "seller" under Alabama law. *Bowman v. Coleman Co., Inc.*, No. 96-0448-P.-C, Slip Op. at 8 (S.D. Ala. Sept 3, 1996) (retail store manager is not a "seller"); *see also Johnson v. Parke-Davis*, 114 F. Supp.2d 522, 525 (S.D. Miss. 2000) ("Plaintiffs have not cited any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as a warrantor of the product."); *see also* Section 20, comment g, Restatement (Third) of Torts: Product Liability §20, cmt. g. (1998) (in defining

14

one who sells or otherwise distributes stating that "[p]ersons assisting or providing services to product distributors . . . are not subject to liability under the rules of this Restatement. . . . Sales personnel and commercial auctioneers are also outside the rules of this Restatement.").[2]

Accordingly, as with Plaintiff's AEMLD and negligence claim, because pharmaceutical representatives are not considered sellers or distributors under Alabama law, Pollard cannot be liable as a warrantor of Bextra under claims for breach of warranty.

C.   **Failure to warn.**

Under Alabama law, a prescription drug manufacturer satisfies its duty to warn under a AEMLD and negligent failure to warn theory, by distributing an adequate warning to the prescribing physician. *Stone v. Smith, Kline & French Labs., et al.*, 447 So.2d 1301, 1305 (Ala. 1984) (holding that an adequate warning to the prescribing physician, but not to the ultimate consumer, is sufficient as a matter of law to avoid liability under the AEMLD in the case of a prescription drug); *id.* at 1304 (holding that the prescribing physician is best suited to evaluate the characteristics of the medication vis-à-vis the needs and background of the patient); *Gurley v. American Honda Motor Co.*, 505 So.2d 358, 361 (Ala. 1987) (holding that a manufacturer fulfills its negligent failure to warn cause of action, as a matter of law, by distributing the product with reasonable warnings); *Purvis v. PPG Indus., Inc.*, 502 So.2d 714 (Ala 1987).

---

[2] Significantly, even if Pollard were considered to be a "seller," which he is not, mere delivery by a seller to a buyer of the manufacturer's express warranty is not sufficient to make the manufacturer's express warranty become an express warranty by the seller. *Courtesy Ford Sales, Inc. v. Farrior*, 298 So.2d 26 (Ala. App. 1974), *superseded by statute on other grounds, Arnold v. Campbell*, 398 So.2d 301 (Ala. App. 1981).

15

Plaintiff summarily argues that Pollard called upon Plaintiff and that Plaintiff allegedly ingested samples of Bextra. *Brief in Support of Motion to Remand*, at 23-24. Plaintiff contends that Pollard voluntarily assumed a duty to warn. Plaintiff's argument is without merit. *See, e.g., In re Prempro Prods. Liab. Litig.*, 2006 WL 617981, at *1; *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 287. Plaintiff fails to allege any facts indicating that Pollard had any unique or specialized knowledge or information and warnings contained in the FDA approved physician package insert that he had an obligation to disclose to prescribing physicians. Moreover, Pollard submitted affirmative proof in his declaration that he had no knowledge about the risks and benefits of Bextra other than what was provided to him by Defendants. *Pollard Affidavit*, ¶ 4. Pollard further presented uncontested proof that he is not a physician or pharmacist and does not have any specialized medical or pharmacological education. *Id.* Thus, Plaintiff cannot state a viable cause of action against Pollard for failure to warn.

### D. Design Defect.

Plaintiff can also make no viable claim against Pollard for defective design. Pollard's affidavit states that he had no involvement with the design or manufacturing of Bextra and therefore has no possible connection to this claim. *Pollard Affidavit*, ¶ 5. In order to establish a design defect claim, Plaintiff must prove that a safer, more practical alternative design was available to the *manufacturer* at the time it manufactured the product. *See General Motors Corp. v. Edwards*, 482 So.2d 1176 (Ala. 1985)(emphasis added). As such, this claim is plainly targeted at the manufacturer, not the detailer and Plaintiff cannot maintain an action for design defect against Pollard.

16

### III. RECOMMENDATION

As there is "no reasonable possibility" that the plaintiff would be able to establish a cause of action against defendant Pollard, it is **RECOMMENDED** that the motion to remand be **DENIED**, and that defendant Pollard be **DISMISSED with prejudice**. It is also recommended that the motion to stay be granted, pending transfer to multidistrict litigation.

DONE this 10th day of May, 2006.

*/s/ Robert R. Armstrong*
Robert R. Armstrong, Jr.
United States Magistrate Judge